IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

JAMES HARPER                          :
                                      :     CIVIL ACTION NO.: 1:20-cv-00771
                                      :
                Plaintiff,            :     COMPLAINT
                                      :
        v.                            :     JURY TRIAL DEMANDED
                                      :
CHARLES P. RETTIG,                    :
IN HIS OFFICIAL CAPACITY AS           :
COMMISSIONER                          :
INTERNAL REVENUE SERVICE,             :
                                      :
            &                         :
                                      :
INTERNAL REVENUE SERVICE,             :
                                      :
            &                         :
                                      :
JOHN DOE IRS AGENTS 1-10,             :
                                      :
                                      :
                Defendants.           :

## COMPLAINT

    The Framers of the Constitution would hardly recognize the unbridled power that the

Internal Revenue Service regularly exerts to seize innocent Americans' private financial

information. "The Fourth Amendment refers to 'papers' because the Founders understood the

seizure of papers to be an outrageous abuse distinct from general warrants." Donald A. Dripps,

*"Dearest Property": Digital Evidence and the History of Private "Papers" As Special Objects*

*of Search and Seizure*, 103 J. Crim. L. & Criminology 49, 52 (2013). Thus, "[i]f one goes back

to the early Republic … it is difficult to find any federal executive body that could bind subjects

to appear, testify, or produce records." Philip Hamburger, *Is Administrative Law Unlawful?* 221

(2014). Indeed, it was so well established at common law that "[p]apers are the owner's goods

and chattels" and "are his dearest property" that "it may be confidently asserted that [these] propositions were in the minds of those who framed the fourth amendment to the constitution, and were considered as sufficiently explanatory of what was meant by unreasonable searches and seizures." *Boyd v. United States*, 116 U.S. 616, 638 (1886) (quoting *Entick v. Carrington*, 19 How. St. Tr. 1029 (1765)). The Supreme Court therefore recognized that "a compulsory production of a man's private papers" is the same as "[b]reaking into a house and opening boxes and drawers," and constitutes an unlawful "invasion of his indefeasible right of personal security, personal liberty and private property[.]" *Id*. at 622, 630.

Yet, given changes in technology, business and social practices, the law has departed from these cherished principles and the fundamental understanding that informed the Constitution's protections. Where once it lacked the authority to peek into a person's private papers even *with* the use of a subpoena, the Internal Revenue Service has now acquired the power to demand access to anyone's private information *without any* judicial process. IRS demands access even when a person has entered into a contract with a third party that promises to protect his private information from such intrusion.

This case presents the opportunity to correct the course of constitutional law. Where a person, like Mr. Harper, contracts with a third party to hold his private financial information private and against government intrusion, he does not "voluntarily assume the risk of [the party] turning over" the data. *Carpenter v. United States*, 138 S.Ct. 2206, 2219 (2018). Indeed, he expects the opposite—that the third party *and* the government will respect his contractual rights. Defendants have unlawfully violated those expectations, in defiance of the Fourth and Fifth Amendments and statutory protections.

## PARTIES

1.      Plaintiff James Harper is a natural person and a resident of the State of New Hampshire.

2.      On August 9, 2019, Mr. Harper received a letter from Defendant Internal Revenue Service (IRS) informing him that his financial records related to ownership of bitcoin had been obtained by Defendant IRS without any particularized suspicion of wrongdoing.

3.      Defendant Charles R. Rettig is the agency head of IRS and is sued in his official capacity as Commissioner of IRS.

4.      Defendant IRS is an agency of the United States, which obtained Mr. Harper's private financial information.

5.      Defendant John Doe IRS Agents 1 through 10 are fictitious names for the person or persons who authorized and conducted the search of Mr. Harper's private financial records.

6.      Defendants Doe are sued in their personal capacities.

## JURISDICTION AND VENUE

7.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

8.      This Court has the authority to grant declaratory and injunctive relief in this matter pursuant to 28 U.S.C. §§ 2201 and 2202.

9.      Venue for this action properly lies in this district pursuant to 28 U.S.C. §§ 1391(b)(2), (e)(1)(C) because Mr. Harper resides in this judicial district, a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, and because the property at issue in this action is situated in this judicial district.

## STATEMENT OF FACTS

### I. IRS's Statutory Subpoena Power

10.  26 U.S.C. § 7602(a), purports to give IRS the statutory authority to issue administrative summonses.

11.  That code section says that IRS may issue summonses for the purposes of "ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or ... collecting any such liability." 26 U.S.C. § 7602(a).

12.  Where IRS issues a summons to a third-party recordkeeper to gather information about a taxpayer, IRS must notify the taxpayer of the summons pursuant to 26 U.S.C. § 7609(a).

13.  Taxpayers may petition to quash such summonses, and IRS may petition to enforce them. 26 U.S.C. §§ 7604, 7609.

14.  "Regardless of who initiates the action, the court follows a familiar structured analysis in a summons enforcement proceeding." *Sugarloaf Funding, LLC v. U.S. Dep't Of The Treasury*, 584 F.3d 340, 345 (1st Cir. 2009). "The IRS must first make a prima facie showing [1] that the investigation will be conducted pursuant to a legitimate purpose, [2] that the inquiry may be relevant to the purpose, [3] that the information sought is not already within the Commissioner's possession, and [4] that the administrative steps required by the Code have been followed." *Id*. (citation omitted). Once the IRS has made this showing, the burden shifts to the taxpayer to disprove one or more of the requirements, or to show that enforcement would be "an abuse of process, e.g., that the summons was issued in bad faith for an improper purpose." *Id*. at 346 (citation omitted).

15.     Sometimes, however, the IRS seeks information "where the IRS *does not know* the identity of the taxpayer under investigation[.]" *Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 317 (1985). In such cases, the IRS must comply with 26 U.S.C. § 7609(f). *Id.*

16.     "Congress passed section 7609(f) specifically to protect the civil rights, including the privacy rights, of taxpayers subjected to the IRS's aggressive use of third-party summonses." *United States v. Gertner*, 65 F.3d 963, 971 (1st Cir. 1995). "Section 7609(f) accomplishes this goal by providing that a John Doe summons is not valid unless and until it is authorized by a judicial officer after a hearing" where the IRS must establish that:

> (1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,
>
> (2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and
>
> (3) the information sought to be obtained from the examination of the records (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.

*Id.* at 971-72 (citing 26 U.S.C. § 7609(f)).

17.     "This requirement of judicial preapproval is an important component of the statutory scheme; it permits the district court to act as a surrogate for the unnamed taxpayer and to 'exert a restraining influence on the IRS.'" *Id.* (quoting *Tiffany Fine Arts, Inc.*, 469 U.S. at 321). "The statutory protections cannot be cavalierly cast aside by either the executive or the judicial branch." *Id.*

## II. MR. HARPER'S USE OF BITCOIN

18.     In 2013 Mr. Harper opened an account with Coinbase, a non-party digital currency exchange that facilitates transactions in virtual currencies such as bitcoin.

19.     Through the opening of his account, Mr. Harper and Coinbase contracted according to Coinbase's Terms of Service. (Exhibit 1.)

20.     Section 9.4 of the agreement "incorporated by reference" Coinbase's "Privacy Policy." (Exhibits A, B (privacy policy).)

21.     Coinbase's 2013 Privacy Policy applied to "personal information," which Coinbase defined as "information that can be associated with a specific person [that] can be used to identify that person."  (Exhibit 1.)

22.     Coinbase said it would "store and process [Mr. Harper's] personal and transactional information, including certain payment information, such as [his] encrypted bank account and/or routing numbers, on our computers in the United States and elsewhere in the world where Coinbase facilities or our service providers are located[.]" (Exhibit 2.)

23.     Coinbase also provided, "We store our customers' personal information securely throughout the life of the customer's Coinbase Account. Coinbase will retain your personal information for a minimum of five years or as necessary to comply with our legal obligations or resolve disputes." (Exhibit 2.)

24.     Coinbase also contracted to protect this personal information. (Exhibit 2.)

25.     The agreement said, "Coinbase takes reasonable precautions, as described herein, to protect your personal information from loss, misuse, unauthorized access, disclosure, alteration, and destruction." (Exhibit 2.)

26.     Coinbase said it would "protect" personal information "by maintaining physical, electronic and procedural safeguards in compliance with applicable US federal and state regulations" and by using "computer safeguards such as firewalls and data encryption," "physical access controls to our buildings and files," including "authoriz[ing] access to personal

information only for those employees who require it to fulfill their job responsibilities" and

storing "[f]ull credit card data "hosted off-site by a payment vendor in compliance with

Payment Card Industry Data Security Standards (PCI DSS)." (Exhibit 2.)

27.     Coinbase said:

Our primary purpose in collecting personal information is to provide you with a secure, smooth, efficient, and customized experience. We may use your personal information to:

Provide Coinbase Services and customer support you request;

Process transactions and send notices about your transactions;

Resolve disputes, collect fees, and troubleshoot problems;

Prevent and investigate potentially prohibited or illegal activities, and/or violations of our posted user terms;

Customize, measure, and improve Coinbase Services and the content and layout of our website and applications;

Deliver targeted marketing, service update notices, and promotional offers based on your communication preferences; and

Compare information for accuracy and verify it with third parties.

We will not use your personal information for purposes other than those purposes we have disclosed to you, without your permission.

(Exhibit 2.)

28.     Coinbase said:

We may share your personal information with:

Service providers under contract who help with parts of our business operations such as fraud prevention, bill collection, marketing and technology services. Our contracts dictate that these service providers only use your information in connection with the services they perform for us and not for their own benefit.

Financial institutions with which we partner.

Companies that we plan to merge with or be acquired by. (Should such a combination occur, we will require that the new combined entity follow this Privacy Policy with respect to your personal information. You will receive prior notice of any change in applicable policy.)

Law enforcement, government officials, or other third parties when:

We are compelled to do so by a subpoena, court order or similar legal procedure; or
We believe in good faith that the disclosure of personal information is necessary to prevent physical harm or financial loss, to report suspected illegal activity or to investigate violations of our User Agreement.

Other third parties with your consent or direction to do so.

(Exhibit B.)

29.     During 2013 and 2014 Mr. Harper made a series of deposits of bitcoin in his Coinbase account—primarily as income from consulting work.

30.     Mr. Harper declared these transactions on a 2013 tax return for a consulting entity and declared all appropriate income from bitcoin payments.

31.     Mr. Harper also reported and paid capital gains tax on his bitcoin income for that tax year.

32.     Mr. Harper continued to receive consulting income in bitcoin in 2014, which he deposited in his Coinbase account through monthly purchases of approximately $3,500.

33.     Mr. Harper's consultancy also reported this income on his 2014 tax return and reported a capital loss for his bitcoin holdings for that tax year.

34.     In 2015 Mr. Harper stopped accumulating new bitcoin and began liquidating his investments via Coinbase.

35.     During the fall of 2015 Mr. Harper began transferring his remaining holdings in Coinbase to a hardware wallet.

36.     By early 2016 Mr. Harper no longer held bitcoin on Coinbase's platform.

37.     Mr. Harper reported and paid appropriate capital gains on any bitcoin income for tax years 2015 and 2016.

38.     In 2016 IRS filed an *ex parte* "John Doe" administrative summons on Coinbase in the U.S. District Court for the Northern District of California pursuant to 26 U.S.C. § 7609(h). *See United States v. Coinbase, Inc.*, No. 17-cv-1431, 2017 WL 5890052, at *1 (N.D. Cal. 2017) (Scott Corley, U.S.M.J.).

39.     The Initial Summons sought "information regarding United States persons who at any time during the period January 1, 2013 through December 31, 2015 conducted transactions in a convertible virtual currency as defined in IRS Notice 2014-21." *Id.*

40.     The summons requested nine categories of documents including: complete user profiles, know-your-customer due diligence, documents regarding third-party access, transaction logs, records of payments processed, correspondence between Coinbase and Coinbase users, account or invoice statements, records of payments, and exception records produced by Coinbase's AML system. *Id.*

41.     Coinbase opposed the summons, and IRS narrowed it slightly. *Id.* at *2.

42.     As modified, IRS sought information regarding accounts "with at least the equivalent of $20,000 in any one transaction type (buy, sell, send, or receive) in any one year during the 2013-2015 period." *Id.*

43.     The Narrowed Summons "d[id] not include users: (a) who only bought and held bitcoin during the 2013-15 period; or (b) for which Coinbase filed Forms 1099-K during the 2013-15 period." *Id.*

44.     According to Coinbase, the Narrowed Summons requested information regarding 8.9 million transactions and 14,355 account holders. *Id*. at *4.

45.     For those accounts, IRS sought the following records:

• Request 1: Account/wallet/vault registration records for each account/wallet/vault owned or controlled by the user during the period stated above limited to name, address, tax identification number, date of birth, account opening records, copies of passport or driver's license, all wallet addresses, and all public keys for all accounts/wallets/vaults.

• Request 2: Records of Know-Your-Customer diligence.

• Request 3: Agreements or instructions granting a third-party access, control, or transaction approval authority.

• Request 4: All records of account/wallet/vault activity including transaction logs or other records identifying the date, amount, and type of transaction (purchase/sale/exchange), the post transaction balance, the names or other identifiers of counterparties to the transaction; requests or instructions to send or receive bitcoin; and, where counterparties transact through their own Coinbase accounts/wallets/vaults, all available information identifying the users of such accounts and their contact information.

• Request 5: Correspondence between Coinbase and the user or any third party with access to the account/wallet/vault pertaining to the account/wallet/vault opening, closing, or transaction activity.

• Request 6: All periodic statements of account or invoices (or the equivalent).

*Id*. at 2.

46.     Coinbase refused to comply with the summons, and IRS petitioned to enforce the summons against Coinbase pursuant to 26 U.S.C. § 7402(b) and 7604(a). *Id*. at *1.

47.     After the Narrowed Summons was issued, at least one target of the summons learned of its existence and sought permission to intervene as a John Doe. *See Coinbase, Inc.*, 3:17-cv-1431, Doc. 40, at 4-5 (July 18, 2017).

48.     The reviewing United States Magistrate Judge granted the John Doe leave to intervene, but only to the extent the John Doe presented argument that the summons violated the standard applicable to direct summonses under 26 U.S.C. § 7602. *Id*. at 7.

49.     The Magistrate Judge noted that it had already determined IRS met the standard applicable to John Doe summonses set out in 26 U.S.C. § 7609(f) in an *ex parte* hearing and did not revisit that decision. *See id.* at 5.

50.     Mr. Harper was not provided notice of the summons or provided an opportunity to directly intervene in the petition to enforce.

51.     Mr. Harper did, however, participate as an expert in an amicus filing accepted by the Magistrate Judge in its consideration of the petition to enforce.

52.     After a hearing, the Magistrate Judge upheld Requests 1, 4 and 6 based on the standard announced in *United States v. Powell*, 379 U.S. 48 (1964). *Coinbase, Inc.*, 2017 WL 5890052 at * 8-9.

53.     The Magistrate Judge did not apply the heightened John Doe summons standard set out in 26 U.S.C. § 7609(f). *See id*.

54.     Specifically, the Magistrate Judge ordered Coinbase "to produce" "for accounts with at least the equivalent of $20,000 in any one transaction type (buy, sell, send, or receive) in any one year during the 2013 to 2015 period:

(1) the taxpayer ID number,

(2) name,

(3) birth date,

(3) address,

(4) records of account activity including transaction logs or other records identifying the date, amount, and type of transaction (purchase/sale/exchange), the post transaction balance, and the names of counterparties to the transaction, and

(5) all periodic statements of account or invoices (or the equivalent).

*Id*.

55.      Neither party appealed to a higher court.

56.      From 2016 to present, Mr. Harper and his wife liquidated bitcoin through either Abra or Uphold digital exchanges.

57.      Abra and Uphold, which are nonparties to this action, both contractually incorporated privacy policies into their terms of service. (Exhibits C (Abra Terms of Service), D (Uphold Terms of Service).)

58.      Abra defined "personal information" as "any information relating to an identified or identifiable natural person (each, a 'Data Subject'); an identifiable natural person is one who can be identified, directly or indirectly, by reference to an identifier such as a name, an identification number, location data, or an online identifier or to one or more factors specific to the physical, economic, cultural or social identity of that natural person." (Exhibit 3.)

59.      Abra's policy said,

We take the protection and storage of your personal data very seriously and take all reasonable steps to ensure the ongoing confidentiality, integrity, and availability of your personal data. We protect your personal data by using reasonable security safeguards against loss or theft, unauthorized access, disclosure, copying, use, or modification. Your personal data is stored behind secured networks and is accessible by a limited number of persons who have special access rights to such systems and are required to keep the personal data confidential. We implement a variety of security measures, such as encryption and anonymization when users enter, submit, or access their personal data to maintain the safety of their personal data.

(Exhibit 3.)

60. Abra provided that it "may, under certain circumstances and in its sole discretion, disclose your information if we believe that it is reasonable to do so. Such disclosure or transfer is limited to situations where the personal data are required for the purposes of (1) provision of the services, (2) pursuing our legitimate interests, (3) law enforcement purposes, or (4) if you provide your prior explicit consent." (Exhibit 3.)

61. Abra said that such reasonable disclosure cases may include:

- Satisfying any local, state, or Federal laws or regulations;

- Responding to requests, such as discovery, criminal, civil, or administrative process, subpoenas, court orders, or writs from law enforcement or other governmental or legal bodies;

- Bringing legal action against a user who has violated the law or violated our Terms of Use;

- As may be necessary for the operation of Abra;

- Generally cooperating with any lawful investigation about our users; or

- If we suspect any fraudulent activity or have noticed any activity which may violate our Terms of Use or other applicable rules.

(Exhibit 3.)

62. Uphold agreed that it "may also release your information to certified and authorized law enforcement officials when we believe release is appropriate to comply with the law, enforce our terms or policies, or protect the rights, property, or safety of Uphold, our members, or others." (Exhibit 4.)

63. In a separate provision, Uphold set out the circumstances where it would comply with "United States Law Enforcement" requests for information:

We disclose records in accordance with our Membership Agreement and applicable law, including the federal Stored Communications Act ("SCA"), 18 U.S.C. § 2701 *et seq*.

A. We require a valid subpoena issued in connection with an official criminal investigation for the disclosure of basic subscriber records (defined in 18 U.S.C. § 2703(c)(2)), which may include: name, length of service, credit card information, email address(es), and recent IP address(es), if available.

B. We require a court order issued under 18 U.S.C. § 2703(d) for the disclosure of certain records or other information pertaining to the account, not including any contents of communications, which may include message headers and IP addresses, in addition to the basic subscriber records identified above.

C. We require a search warrant issued under the procedures described in the Federal Rules of Criminal Procedure or equivalent state warrant procedures upon a showing of probable cause for the disclosure of any stored content, which may include available messages sent with a transfer, if any.

D. We interpret the national security letter provision as applied to us to require the production of only: name and length of service.

(Exhibit 5.)

64.     Mr. Harper declared capital gains for his bitcoin holdings for tax years 2016, 2017, 2018 and 2019.

65.     Mr. Harper has paid all applicable taxes for those gains.

66.     On August 9, 2019, Mr. Harper received a letter titled "Reporting Virtual Currency Transactions" from IRS. (Exhibit 6.)

67.     The letter said, "We have information that you have or had one or more accounts containing virtual currency but may not have properly reported your transactions involving virtual currency, which include cryptocurrency and non-crypto virtual currencies." (Exhibit 6.)

68.     The letter warned that if Mr. Harper had not "accurately report[ed his] virtual currency transactions" he "may be subject to future civil and criminal enforcement activity." (Exhibit 6.)

69.     Mr. Harper has no significant financial records related to accounts containing bitcoin or other virtual currency transactions other than those related to his accounts with Abra, Coinbase or Uphold.

70.     Mr. Harper has accurately reported his virtual currency transactions for all applicable tax years.

71.     Upon information and belief, John Doe IRS Agents 1 through 10 issued an informal demand for Mr. Harper's financial records to Abra, Coinbase and/or Uphold, with which one or more of the exchanges complied.

72.     John Doe IRS Agents 1 through 10 and IRS lacked any particularized suspicion that Mr. Harper had violated any law prior to obtaining Mr. Harper's financial records referenced in its August 9, 2019 letter.

73.     John Doe IRS Agents 1 through 10 and IRS did not obtain a judicial warrant prior to obtaining Mr. Harper's financial records referenced in its August 9, 2019 letter.

74.     John Doe IRS Agents 1 through 10 and IRS did not obtain a subpoena prior to obtaining Mr. Harper's financial records referenced in its August 9, 2019 letter.

75.     Abra, Coinbase and/or Uphold violated their respective terms of service in providing Mr. Harper's financial records referenced in IRS's August 9, 2019 letter by disclosing Mr. Harper's records without a valid subpoena, court order, or judicial warrant based on probable cause.

76.     Mr. Harper never received any notice of a third-party summons from IRS pursuant to 26 U.S.C. § 7609(a).

77.     IRS issued "more than 10,000" similar letters to taxpayers concerning their virtual currency transactions. Press Release, *IRS has begun sending letters to virtual currency owners*

*advising them to pay back taxes, file amended returns; part of agency's larger efforts*, IR-2019-132 (July 26, 2019), *available at* https://www.irs.gov/newsroom/irs-has-begun-sending-letters-to-virtual-currency-owners-advising-them-to-pay-back-taxes-file-amended-returns-part-of-agencys-larger-efforts. (Exhibit 7.)

78.     As with Mr. Harper, upon information and belief, IRS obtained private financial records for the targeted taxpayers without first obtaining a judicial warrant or a lawful subpoena or other court order.

79.     IRS continues to hold Mr. Harper's private financial records that it obtained from Abra, Coinbase and Uphold.

## COUNT I: VIOLATION OF THE FOURTH AMENDMENT OF THE U.S. CONSTITUTION (*BIVENS* AND DECLARATORY ACTION)— THE DEFENDANTS CONDUCTED AN UNLAWFUL SEARCH AND SEIZURE OF MR. HARPER'S PRIVATE FINANCIAL INFORMATION (ALL DEFENDANTS)

80.     Plaintiff incorporates by reference all of the preceding material as though fully set forth under Count I.

81.     The Fourth Amendment to the U.S. Constitution protects "the right of the people to be secure in their … papers … against unreasonable searches and seizures."

82.     "Papers are the owner's goods and chattels; they are his dearest property, and are so far from enduring a seizure, that they will hardly bear an inspection; and though the eye cannot by the laws of England be guilty of a trespass, yet where private papers are removed and ferried away the secret nature of those goods will be an aggravation of the trespass, and demand more considerable damages in that respect." *Boyd v. United States*, 116 U.S. 616, 638 (1886) (quoting *Entick v. Carrington*, 19 How. St. Tr. 1029 (1765)).

83.     A "compulsory production of a man's private papers" is no different than "[b]reaking into a house and opening boxes and drawers." *Id*. at 622, 630. Both involve "the

invasion of his indefeasible right of personal security, personal liberty. and private property[.]"
*Id*. at 630.

84. Mr. Harper retained a property right in his information pursuant to his contractual agreements with Abra, Coinbase and Uphold.

85. Mr. Harper retained ownership of the personal information he provided to Abra, Coinbase and Uphold and permitted those exchanges to use his information only according to the terms of service agreements.

86. Mr. Harper had a reasonable expectation of privacy in the financial records held by Abra, Coinbase and Uphold related to his accounts containing bitcoin or other virtual currency transactions.

87. Mr. Harper had a subjective expectation of privacy in the financial records held by Abra, Coinbase and Uphold related to his accounts containing bitcoin or other virtual currency transactions.

88. Mr. Harper reasonably expected that Abra, Coinbase and Uphold would abide by the contractual provisions set out in their respective terms of service.

89. Specifically, Mr. Harper reasonably and subjectively expected that Abra would abide by its terms of service, including its agreement that it took "the protection and storage of [Mr. Harper's] personal data very seriously," and thus would limit its disclosures to law enforcement to "administrative process, subpoenas, court orders, or writs from law enforcement or other governmental or legal bodies[.]"

90. Mr. Harper also reasonably and subjectively expected that Coinbase would abide by its terms of service, including its agreement to "protect [his] personal information from loss, misuse, unauthorized access, disclosure, alteration, and destruction," and its promise to only turn

the information over to "law enforcement [or] government officials" when it was "compelled to do so by a subpoena, court order or similar legal procedure[.]"

91.     Mr. Harper also reasonably and subjectively expected that Uphold would abide by its terms of service, including its agreement that it would only disclose his private information to law enforcement pursuant to "a valid subpoena issued in connection with an official criminal investigation for the disclosure of basic subscriber records," "a court order issued under 18 U.S.C. § 2703(d)," or "a search warrant" issued upon "probable cause."

92.     Upon information and belief IRS obtained Mr. Harper's financial records referenced in its August 9, 2019 letter from Abra, Coinbase and/or Uphold.

93.     Mr. Harper has no significant financial records related to accounts containing bitcoin or other virtual currency transactions other than those related to his accounts with Abra, Coinbase or Uphold.

94.     Mr. Harper has accurately reported his virtual currency transactions for all applicable tax years.

95.     Upon information and belief, John Doe IRS Agents 1 through 10 issued an informal demand for Mr. Harper's financial records to Abra, Coinbase and/or Uphold, with which one or more of the exchanges complied.

96.     John Doe IRS Agents 1 through 10 and IRS lacked any particularized suspicion that Mr. Harper had violated any law prior to obtaining Mr. Harper's financial records referenced in IRS's August 9, 2019 letter.

97.     John Doe IRS Agents 1 through 10 and IRS did not obtain a judicial warrant prior to obtaining Mr. Harper's financial records referenced in IRS's August 9, 2019 letter.

98.     John Doe IRS Agents 1 through 10 and IRS did not obtain a subpoena prior to obtaining Mr. Harper's financial records referenced in IRS's August 9, 2019 letter.

99.     Abra, Coinbase and/or Uphold violated their respective terms of service in providing Mr. Harper's financial records referenced in IRS's August 9, 2019 letter by disclosing Mr. Harper's records without a valid subpoena, court order or judicial warrant based on probable cause.

100.    Mr. Harper never received any notice of a third-party summons from IRS pursuant to 26 U.S.C. § 7609(a).

101.    John Doe IRS Agents 1 through 10 and IRS violated the Fourth Amendment by seizing Mr. Harper's private financial information from Abra, Coinbase and/or Uphold without first acquiring a warrant based on probable cause.

102.    To the extent that 26 U.S.C. § 7602(a), *et seq.*, allowed John Doe IRS Agent(s) and IRS to seize Mr. Harper's private financial information without first acquiring a warrant based on probable cause, the statute is unconstitutional as applied to Mr. Harper under the Fourth Amendment.

103.    IRS continues to hold Mr. Harper's private financial records that it obtained from Abra, Coinbase and Uphold.

104.    Unless ordered to expunge Mr. Harper's private financial records, IRS will continue to hold that information unlawfully.

105.    Upon information and belief John Doe IRS Agents 1 through 10 and IRS have conducted similar unlawful seizures related to more than 10,000 taxpayers who were sent notices similar to Mr. Harper's.

106.    Unless enjoined, John Doe IRS Agents 1 through 10 and IRS will continue to conduct unlawful seizures of private financial information related to virtual currencies held by virtual currency exchanges, including those relying on the purported authority set out by 26 U.S.C. § 7602(a), *et seq*.

107.    John Doe IRS Agents 1 through 10 are personally liable for damages for their Fourth Amendment violations. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971).

WHEREFORE, Plaintiff, Mr. Harper demands judgment for compensatory damages against Defendants for such sums as would reasonably and properly compensate him for injuries together with delay damages, interest, costs, and attorneys' fees and declaratory and injunctive relief, including an order expunging Mr. Harper's private financial information from IRS's records.

### COUNT II: VIOLATION OF THE FIFTH AMENDMENT OF THE U.S. CONSTITUTION (*BIVENS* AND DECLARATORY ACTION)— THE DEFENDANTS VIOLATED DUE PROCESS PROTECTIONS IN SEIZING MR. HARPER'S PRIVATE FINANCIAL INFORMATION (ALL DEFENDANTS)

108.    Plaintiff incorporates by reference all of the preceding material as though fully set forth under Count II.

109.    The Fifth Amendment to the United States Constitution provides that "[n]o person shall" "be deprived of life, liberty, or property, without due process of law."

110.    Mr. Harper retained a property right in his personal information pursuant to his contractual agreements with Abra, Coinbase and Uphold.

111.     Mr. Harper retained ownership of the personal information he provided to Abra, Coinbase and Uphold and permitted those exchanges to use his information only according to the terms of service agreements.

112.     Pursuant to those contracts Mr. Harper expected Abra, Coinbase and Uphold to abide by the contractual provisions set out in their respective terms of service.

113.     Specifically, Mr. Harper expected that Abra would abide by its terms of service, including its agreement that it took "the protection and storage of [Mr. Harper's] personal data very seriously," and thus would limit its disclosures to law enforcement to "administrative process, subpoenas, court orders, or writs from law enforcement or other governmental or legal bodies[.]"

114.     Mr. Harper also expected that Coinbase would abide by its terms of service, including its agreement to "protect [his] personal information from loss, misuse, unauthorized access, disclosure, alteration, and destruction," and its promise to only turn the information over to "law enforcement [or] government officials" when it was "compelled to do so by a subpoena, court order or similar legal procedure[.]"

115.     Mr. Harper also expected that Uphold would abide by its terms of service, including its agreement that it would only disclose his private information to law enforcement pursuant to "a valid subpoena issued in connection with an official criminal investigation for the disclosure of basic subscriber records," "a court order issued under 18 U.S.C. § 2703(d)," or "a search warrant" issued upon "probable cause."

116.     Upon information and belief IRS obtained Mr. Harper's financial records referenced in its August 9, 2019 letter from Abra, Coinbase and/or Uphold.

117.     Mr. Harper has no significant financial records related to accounts containing bitcoin or other virtual currency transactions other than those related to his accounts with Abra, Coinbase or Uphold.

118.     Mr. Harper has accurately reported his virtual currency transactions for all applicable tax years.

119.     Upon information and belief, John Doe IRS Agents 1 through 10 issued an informal demand for Mr. Harper's financial records to Abra, Coinbase and/or Uphold, with which one or more of the exchanges complied.

120.     John Doe IRS Agents 1 through 10 and IRS did not obtain a judicial warrant prior to obtaining Mr. Harper's financial records referenced in IRS's August 9, 2019 letter.

121.     John Doe IRS Agents 1 through 10 and IRS did not obtain a subpoena prior to obtaining Mr. Harper's financial records referenced in IRS's August 9, 2019 letter.

122.     Mr. Harper never received any notice of a third-party summons from IRS pursuant to 26 U.S.C. § 7609(a).

123.     Abra, Coinbase and/or Uphold violated their respective terms of service in providing Mr. Harper's financial records referenced in IRS's August 9, 2019 letter by disclosing Mr. Harper's records without a valid subpoena, court order or judicial warrant based on probable cause.

124.     John Doe IRS Agents 1 through 10 and IRS violated the Due Process Clause of the Fifth Amendment by seizing Mr. Harper's intangible property rights in his private financial information from Abra, Coinbase and/or Uphold without first providing him of notice and an opportunity to challenge the seizure of his property.

125.    To the extent that 26 U.S.C. § 7602(a), *et seq.*, allowed John Doe IRS Agents 1 through 10 and IRS to seize Mr. Harper's intangible property rights in his private financial information without first providing direct notice and an opportunity to challenge the seizure of his property, the statute is unconstitutional as applied to Mr. Harper under the Fifth Amendment's Due Process Clause.

126.    IRS continues to hold Mr. Harper's private financial records that it obtained from Abra, Coinbase and Uphold.

127.    Unless ordered to expunge Mr. Harper's private financial records, IRS will continue to hold that information unlawfully.

128.    Upon information and belief John Doe IRS Agents 1 through 10 and IRS have conducted similar unlawful seizures of intangible property rights in private financial information related to more than 10,000 taxpayers who were sent notices similar to Mr. Harper's.

129.    Unless enjoined, John Doe IRS Agents 1 through 10 and IRS will continue to conduct unlawful seizures of intangible property rights in private financial information related to virtual currencies held by virtual currency exchanges, including those relying on the purported authority set out by 26 U.S.C. § 7602(a), *et seq*.

130.    John Doe IRS Agents 1 through 10 are personally liable for damages for their Fifth Amendment violation. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971).

WHEREFORE, Plaintiff, Mr. Harper demands judgment for compensatory damages against Defendants for such sums as would reasonably and properly compensate him for injuries together with delay damages, interest, costs, and attorneys' fees and declaratory and injunctive

relief, including an order expunging Mr. Harper's private financial information from IRS's records.

## COUNT III: VIOLATION OF 15 U.S.C. § 7609(f) (DECLARATORY ACTION)— THE DEFENDANTS OBTAINED MR. HARPER'S FINANCIAL RECORDS THROUGH AN UNLAWFUL JOHN DOE SUBPOENA (ALL DEFENDANTS)

131.    Plaintiff incorporates by reference all of the preceding material as though fully set forth under Count III.

132.    26 U.S.C. § 7609(f) authorizes IRS to issue John Doe summonses for financial records only if the Secretary establishes that "(1) the summons relates to the investigation of a particular person or ascertainable group or class of persons, (2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and (3) the information sought to be obtained from the examination of the records (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources." *United States v. Gertner*, 65 F.3d 963, 971-72 (1st Cir. 1995).

133.    Upon information and belief IRS obtained Mr. Harper's financial records referenced in its August 9, 2019 letter from Abra, Coinbase and/or Uphold.

134.    Mr. Harper has no financial records related to accounts containing bitcoin or other virtual currency transactions other than those related to his accounts with Abra, Coinbase or Uphold.

135.    Mr. Harper has accurately reported his virtual currency transactions for all applicable tax years.

136.     Upon information and belief, John Doe IRS Agents 1 through 10 issued a John Doe subpoena under 26 U.S.C. § 7602(a) *et seq.* to Abra, Coinbase and/or Uphold, with which one or more of the exchanges complied.

137.     Mr. Harper never received any notice of a third-party summons from IRS pursuant to 26 U.S.C. § 7609(a).

138.     The John Doe summons issued to Abra, Coinbase and/or Uphold did not relate to a particular person or ascertainable group or class of persons as required by statute, but to all owners of virtual currencies based only on a gross judgment that some virtual currency holders may not comply with their tax obligations.

139.     John Doe IRS Agents 1 through 10 and IRS lacked a reasonable basis for believing that Mr. Harper failed to comply with any provision of any internal revenue law and instead John Doe IRS Agents 1 through 10 and IRS issued a John Doe summons to all innocent owners of virtual currencies.

140.     Upon information and belief John Doe IRS Agents 1 through 10 and IRS have conducted similar unlawful seizures of private financial information related to more than 10,000 taxpayers who were sent notices similar to Mr. Harper's following similarly unlawful John Doe summonses.

141.     IRS continues to hold Mr. Harper's private financial records that it obtained from Abra, Coinbase and Uphold.

142.     Unless ordered to expunge Mr. Harper's private financial records, IRS will continue to hold that information unlawfully.

143.    Unless enjoined, John Doe IRS Agents 1 through 10 and IRS will continue to conduct unlawful seizures of private financial information related to virtual currencies held by virtual currency exchanges in violation of the limits set out in 26 U.S.C. § 7609(f).

WHEREFORE, Plaintiff, Mr. Harper demands a declaratory judgment and injunctive relief against Defendants, including an order expunging Mr. Harper's private financial information from IRS's records.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all triable issues in the present matter.

July 15, 2020

Respectfully submitted.

**Jared Bedrick**
Douglas, Leonard & Garvey, P.C.
14 South Street
Concord, NH 03301
N.H. Bar No. 20438
(603)224-1988
jbedrick@nhlawoffice.com

**Caleb Kruckenberg***
Litigation Counsel
**Aditya Dynar***
Litigation Counsel
New Civil Liberties Alliance
1225 19th St. NW, Suite 450
Washington, DC 20036
(202) 869-5230
caleb.kruckenberg@ncla.legal
adi.dynar@ncla.legal
*Applications for Admission *Pro Hac Vice* to be filed