IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


JAMES HARPER,                                )
                                             )    Case No. 1:20-cv-771-JD
             Plaintiff,                      )
                                             )
      v.                                     )
                                             )
CHARLES P. RETTIG, in his official           )
capacity as COMMISSIONER OF THE,             )
INTERNAL REVENUE SERVICE, ET AL.,            )
                                             )
             Defendants.                     )
_____)

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

THOMAS PETER COLE
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C. 20044
202-514-9611 (v)
202-514-5238 (f)
Thomas.P.Cole@usdoj.gov

<strong>TABLE OF CONTENTS</strong>

# Contents

TABLE OF CONTENTS.................................................................................................................ii

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS ..................................................1

INTRODUCTION .......................................................................................................................1

FACTS .........................................................................................................................................2

    A.    Plaintiff's bitcoin holdings with Coinbase. ......................................................................2

    B.    The IRS John Doe summons served on Coinbase and subsequent summons-enforcement proceeding.......................................................................................................3

    C.    Plaintiff's virtual currency activities, 2016-present. .......................................................4

    D.    The IRS's August 9, 2019 letter to Plaintiff...................................................................5

    E.    Plaintiff seeks injunctive relief and damages against government officials. ...................5

ARGUMENT—THE ACTION MUST BE DISMISSED...........................................................7

    A.    A motion to dismiss may seek dismissal based on an absence of jurisdiction or seek dismissal because the complaint fails to state a claim upon which relief can be granted...........7

    B.    The lawsuit is in substance a lawsuit against the United States for which there has been no waiver of sovereign immunity. ...........................................................................................8

    C.    The Anti-Injunction Act, 26 U.S.C. § 7421(a), prohibits the relief the action seeks. .....10

        1.    The Anti-Injunction Act bars an action that seeks relief related to the assessment or collection of taxes. .................................................................................................................10

        2.    Plaintiff cannot demonstrate the applicability of an exception to the Anti-Injunction Act.    11

    D.    The Declaratory Judgment Act, 28 U.S.C. § 2201, does not confer jurisdiction upon the court.  14

    E.    Damages cannot be awarded because Plaintiff has not exhausted his administrative remedies. .....................................................................................................................................15

    F.    Plaintiff cannot maintain a *Bivens* claim for alleged constitutional violations committed by IRS employees. .....................................................................................................................16

    G.    Even if jurisdiction exists, the action must be dismissed because the allegations do not assert an actionable constitutional violation. ...........................................................................20

        1.    The complaint does not assert an actionable Fourth Amendment violation..............21

        2.    The complaint does not state an actionable Fifth Amendment violation. .................23

CONCLUSION...........................................................................................................................25

# MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

## INTRODUCTION

Plaintiff received, stored, and sold bitcoin, which is a virtual currency. The IRS advised Plaintiff that it had obtained information related to him from a virtual-currency exchange, which is a type of business that holds traditional and virtual currencies, and allows for third parties to engage in virtual-currency transactions. In response, Plaintiff seeks injunctive relief ordering the expungement of that information and barring IRS efforts to obtain related information going forward, and damages against federal officials—named and unidentified, in their official and individual capacities—for alleged constitutional violations. He also seeks comparable relief on behalf of thousands of other unnamed taxpayers.

Jurisdiction does not exist for this action. Where a person seeks to challenge the actions through which the IRS determines and collects taxes, Congress has waived the United States' sovereign immunity for specific remedies that may be pursued under narrowly defined circumstances, and barred all other types of actions. An action that seeks a declaratory judgment and injunction demanding the destruction of virtual currency transaction information that the IRS has obtained is not an action for which Congress has waived the United States' sovereign immunity, and furthermore is expressly barred under the Anti-Injunction Act of 26 U.S.C. § 7421. Pursuant to these principles, sovereign immunity also bars this action to extent that it is brought against any government employee acting in an official capacity. Lastly, the courts do not permit such an action against the government employees sued in their individual capacities for purported constitutional violations. The action must be dismissed.

**FACTS**

**A.  Plaintiff's bitcoin holdings with Coinbase.**

Definitions of virtual currency vary depending on how technical they attempt to be, but the IRS has said that virtual currency is "a digital representation of value that functions as a medium of exchange, a unit of account, and/or a store of value."  Notice, 2014-16 I.R.B. 938 (2014).  In some environments, it operates like "real" currency -- *i.e.*, the coin and paper money of the United States or of any other country that is designated as legal tender, circulates, and is customarily used and accepted as a medium of exchange in the country of issuance -- but it does not have legal tender status in any jurisdiction. *Id.*

Plaintiff alleges that in 2013, he opened an account with Coinbase, a "non-party digital currency exchange that facilitates transactions in virtual currencies such as bitcoin."  (First Amended Complaint, ECF No. 3, ¶ 18.) (For a further explanation as to what bitcoin is and the role virtual currency exchanges such as Coinbase play in handling bitcoin transactions, see *United States v. Gratkowski*, 964 F.3d 307, 309 (5th Cir. 2020); and *Zietzke v. United States*, 426 F. Supp. 3d 758, 761 (W.D. Wash. 2019).)  He alleges that his agreement with Coinbase contained a "Privacy Policy," under which his personal and transactional information would be stored on Coinbase computers and protected through "electronic and procedural safeguards in compliance with applicable US federal and state regulations."  (ECF No. 3, ¶¶ 20-26.)  Plaintiff alleges that under the Privacy Policy, Coinbase could share Plaintiff's personal and transactional information with "[l]aw enforcement, government officials, or other third parties when," "compelled to do so by a subpoena, court order or similar legal procedure."  (*Id.* ¶ 28, & Ex. 2.)

Plaintiff alleges that during 2013 and 2014, he "made a series of deposits of bitcoin in his Coinbase account—primarily as income from consulting work."  (ECF No. 3, ¶ 29.)  He alleges that he "declared these transactions on a 2013 tax return for a consulting entity and declared all

appropriate income from bitcoin payments" and that he "reported and paid capital gains tax on his bitcoin income" for the 2013 year.  (ECF No. 3, ¶¶ 30-31.)  Plaintiff alleges that he continued to receive income in bitcoin in 2014, which he also reported on his 2014 tax return.  (ECF No. 3, ¶¶ 32-33.)  Plaintiff alleges that in 2015, he began liquidating his bitcoin holdings, and that by 2016, he "no longer held bitcoin on Coinbase's platform."  (ECF No. 3, ¶¶ 34-36.)  Plaintiff does not identify the amounts of the bitcoin income or deposits.

### B.  The IRS John Doe summons served on Coinbase and subsequent summons-enforcement proceeding.

In 2014, the IRS set forth its position on the tax consequences of cryptocurrency, or virtual currency, transactions in IRS Notice 2014-21, 2014-16 I.R.B. 938. Notice 2014-21 states, "[V]irtual currency is treated as property. General tax principles applicable to property transactions apply to transactions using virtual currency."  As a practical matter, that means that gains upon cryptocurrency transactions are taxed, just as gains upon the sale of shares of stock or other forms of property are taxed.  IRS enforcement efforts to learn more about cryptocurrency transactions, and the people who engage in them, followed.

In 2016, the United States filed an *ex parte* "John Doe" administrative summons on Coinbase pursuant to 26 U.S.C. § 7609(h).  (ECF No. 3, ¶ 38.)  (The John Doe summons proceeding was filed in the United States District Court for the Northern District of California, and has docket number 16-cv-6658.)  Section 7609(f) & (h) of the Internal Revenue Code, Title 26, United States Code, allows the IRS to seek *ex parte* judicial approval to serve administrative summonses upon third parties without identifying the taxpayers whose information may be sought; such summonses are called "John Doe" summonses.  On November 30, 2016, the court entered an order allowing the IRS to serve the John Doe administrative summons on Coinbase.  (U.S.D.C. N.D. Cal, No. 16-cv-6658, ECF No. 7.)  After Coinbase refused to comply with the

John Doe summons, the IRS petitioned to enforce the summons against Coinbase pursuant to 26 U.S.C. §§ 7402(b) and 7604(a); see *United States v. Coinbase*, U.S.D.C. N.D. Cal., No. 17-cv-1431.  (ECF No. 3, ¶ 46.)

Plaintiff alleges that he was not provided with notice of the John Doe summons or provided an opportunity to directly intervene in the petition to enforce the summons.  (ECF No. 3, ¶ 50).  Although not a party, Plaintiff made an amicus filing in that proceeding.  (*Id.* ¶ 52.)  The court sustained the summons for some categories of documents but did not order the enforcement of the summons for other categories of documents, see 2017 WL 5890052.  (*Id.* ¶¶ 52-54.)  Neither party appealed the district court decision entered in the summons enforcement proceeding.  (*Id.* ¶ 55.)

Plaintiff alleges that he properly reported his income and Coinbase-related transactions on his 2013 and 2014 income tax returns. (*Id.* ¶¶ 30, 33.)  But he does not deny having bitcoin stored with Coinbase during those years or using Coinbase to engage in bitcoin transactions during those years.

### C.  Plaintiff's virtual currency activities, 2016-present.

Plaintiff alleges that from 2016 to the present, he and his wife "liquidated bitcoin through either Abra or Uphold" digital exchanges.  (ECF No. 3, ¶ 56.)  Plaintiff alleges that, like Coinbase, Abra and Uphold have privacy policies incorporated into their terms of service and which contain provisions allowing the disclosure to law enforcement entities under certain circumstances. (*Id.* ¶¶ 57-58, 60-64 Exs. 3-4.)  Plaintiff alleges that he "declared capital gains for his bitcoin holdings for tax years 2016, 2017, 2018 and 2019," and that he "has paid all applicable taxes for those gains."  (*Id.* ¶¶ 64-65.)

**D. The IRS's August 9, 2019 letter to Plaintiff.**

Plaintiff alleges that on August 9, 2019, he received a letter titled "Reporting Virtual Currency Transactions" from the IRS. (ECF No. 3, ¶ 67, copy of letter attached as Ex. 6.) The letter said: "We have information that you have or had one or more accounts containing virtual currency but may not have properly reported your transactions involving virtual currency, which include cryptocurrency and non-crypto virtual currencies." (ECF No. 3, ¶ 68, Ex. 6.) The letter also warned that if Plaintiff had not "accurately report[ed his] virtual currency transactions" he "may be subject to future civil and criminal enforcement activity." (ECF No. 3, ¶ 69, Ex. 6.)

**E. Plaintiff seeks injunctive relief and damages against government officials.**

Plaintiff alleges that he has no significant financial records related to accounts containing bitcoin or other virtual currency transactions other than those related to his accounts with Abra, Coinbase, or Uphold. (ECF No. 3, ¶ 70.) Plaintiff alleges that representatives of Uphold have told him that Uphold has no record of any information related to him "having been directly disclosed" to the IRS. (ECF No. 3, ¶¶ 71-74.) Plaintiff alleges that he has "accurately reported his virtual currency transactions for all applicable tax years." (ECF No. 3, ¶ 75.)

Plaintiff alleges—"[u]pon information and belief"—that one or more unidentified IRS agents issued an informal demand for Plaintiff's financial records to Abra and/or Coinbase, and one or both of those exchanges complied with the request. (ECF No. 3, ¶ 76.) He alleges that the IRS did not obtain a judicial warrant or subpoena prior to obtaining the financial records referenced in the IRS's August 9, 2019 letter. (ECF No. 3, ¶ 77-79.) Plaintiff alleges that he never received any notice of a third-party summons from the IRS pursuant to 26 U.S.C. § 7609(a). (ECF No. 3, ¶ 81.) Plaintiff alleges that the IRS has issued "more than 10,000" letters similar to the August 9, 2019 letter to taxpayers, and that the IRS obtained private financial

records of those taxpayers without first obtaining a judicial warrant, lawful subpoena, or other court order. (*Id.* ¶ 82.) Plaintiff alleges that the IRS continues to hold Plaintiff's private financial records that it obtained from Abra, Coinbase, or some other entity or person.

The First Amended Complaint (ECF No. 3) alleges three causes of action:

- In Count 1, Plaintiff alleges that the IRS conducted an unlawful search and seizure of Plaintiff's private financial information in violation of the Fourth Amendment of the United States Constitution, and seeks an injunction requiring the expungement of Plaintiff's private records held by the IRS and against continued efforts to obtain similar information. Count 1 also seeks damages against IRS employees in their individual capacities (a so-called *Bivens* claim) for damages related to alleged Fourth Amendment violations that have already occurred. (ECF No. 3, ¶¶ 85-112.)

- In Count 2, Plaintiff alleges that the IRS violated his due process protections under the Fifth Amendment to the United States Constitution in obtaining his private financial information without first providing him notice and an opportunity to challenge the seizure of his property. (ECF No. 3, ¶¶ 113-129.) Count 2 alleges that to the extent that 26 U.S.C. § 7601(a) allows the IRS to obtain private financial information without first "providing direct notice and an opportunity to challenge the seizure of his property, the statute is unconstitutional as applied to [Plaintiff] under the Fifth Amendment's Due Process Clause." (ECF No. 3, ¶ 130.) Count 2 seeks similar injunctive and damages relief to Count 1. Count 2 also seeks damages against the individual IRS employees, on a *Bivens*

theory, for damages related to the alleged Fifth Amendment violations that have already occurred.

- Count 3 alleges that the IRS obtained Plaintiff's private financial records through an unlawful John Doe subpoena. (ECF No. 3, ¶¶ 136-148.) Seeking only a declaratory judgment and injunctive relief, Count 3 seeks an order expunging Plaintiff's private financial information from the IRS's records.

## ARGUMENT—THE ACTION MUST BE DISMISSED

### A. A motion to dismiss may seek dismissal based on an absence of jurisdiction or seek dismissal because the complaint fails to state a claim upon which relief can be granted.

Fed. R. Civ. P. Rule 12(b) allows a defendant to move to dismiss a complaint based on a lack of subject matter jurisdiction (Rule 12(b)(1)), or based on a failure to state a claim upon which relief can be granted (Rule 12(b)(6)). This motion is brought under Rule 12(b)(1), as there is no jurisdiction for it, and in the alternative, Rule 12(b)(6), as it fails to state a claim upon which relief can be granted, even assuming that jurisdiction exists.

With respect to Rule 12(b)(1), Plaintiff has the "burden to prove the existence of subject matter jurisdiction." *Aversa v. United States*, 99 F.3d 1200, 1209 (1st Cir. 1996). "In ruling on a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." *Id.* at 1209–10. "A plaintiff, however, may not rest merely on 'unsupported conclusions or interpretations of law.'" *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995) (quoting *Washington Legal Found. v. Massachusetts Bar Found.*, 993 F.2d 962, 971 (1st Cir.1993)). "While the court generally may not consider materials outside the pleadings on a Rule 12(b)(6) motion, it may consider such materials on a Rule 12(b)(1) motion." *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002); *White v.*

*Comm'r of Internal Revenue*, 899 F.Supp. 767, 771 (D.Mass.1995) ("The Court can look beyond the pleadings—to affidavits and depositions—in order to determine jurisdiction.")

With respect to Rule 12(b)(6), a court must take "the complaint's well-pleaded facts as true," and "draw all reasonable inferences in the plaintiffs' favor." *Barchock v. CVS Health Corp.*, 886 F.3d 43, 48 (1st Cir. 2018). The court may consider "implications from documents attached to or fairly incorporated into the complaint." *Arturet-Vélez v. R.J. Reynolds Tobacco Co.*, 429 F.3d 10, 13 n.2 (1st Cir. 2005). "To survive dismissal, however, the complaint must 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Barchock*, 886 F.3d at 48 (quoting *SEC v. Tambone*, 597 F.3d 436, 437 (1st Cir. 2010)).

With these standards established, this motion will next explain why there is no jurisdiction for this action, in which case a dismissal under Rule 12(b)(1) is required, and even if there is jurisdiction, the First Amended Complaint fails to state a claim upon which relief can be granted, which would require a dismissal under Rule 12(b)(6).

## B. The lawsuit is in substance a lawsuit against the United States for which there has been no waiver of sovereign immunity.

When suing the United States, a showing of jurisdiction includes a requirement that there has been a waiver of sovereign immunity. "[A]s the sovereign, the United States is immune from suit without its consent." *Muirhead v. Mecham*, 427 F.3d 14, 17 (1st Cir. 2005). Such consent "usually takes the form of an express waiver of its sovereign immunity," which "cannot be implied but must be unequivocally expressed." *Id.* (quoting *United States v. King*, 395 U.S. 1, 4 (1969)). Statutes waiving sovereign immunity are strictly construed in favor of the United States. *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995). "In the absence of an applicable waiver, courts lack jurisdiction to entertain claims against the United States." *Muirhead,* 427 F.3d at 17 (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)).

Even though the action has been brought against a federal official—the Commissioner of Internal Revenue—and arguably a series of unidentified federal agents in their official capacities, sovereign immunity still bars the action. Sovereign immunity also bars an action against a federal official sued in an official capacity. *Dugan v. Rank*, 372 U.S. 609, 620 (1963). The First Circuit has ruled that where "a plaintiff brings suit against a federal employee rather than against the government itself, an inquiring court must analyze the claim to ascertain whether, despite the nomenclature, the suit is, in reality, a suit against the United States." *Muirhead*, 427 F.3d at 18. The First Circuit has called this "a unitary test" but one under which "both the conduct challenged and the relief sought may have a bearing on its outcome." *Id.* "As for conduct, 'if the [challenged] actions of an officer do not conflict with the terms of his valid statutory authority, then they are the actions of the sovereign' and come under the protective umbrella of sovereign immunity." *Id.* (quoting *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 695 (1949)). "As for relief, a suit, although nominally aimed at an official, will be considered one against the sovereign 'if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act.'" *Id.* (quoting *Dugan*, 372 U.S. at 620). "When a plaintiff seeks specific performance, the answer to the inquiry about relief hinges on whether the redress obtained against the officer will, in practical effect, be obtained through the sovereign." *Id.*

Although nominally brought against the Commissioner of Internal Revenue, this lawsuit in essence is one against the United States. Plaintiff really seeks a two-prong injunction against the IRS: first, he seeks an injunction against the IRS barring its employees from taking further action to obtain information from virtual currency exchanges; second, he seeks an injunction

against the IRS directing the expungement of the virtual currency exchange information related to Plaintiff that the IRS may have already obtained.  To the extent Plaintiff also seeks damages against federal officials in their official capacities related to their actions in obtaining the virtual currency exchange information, that is relief sought against a federal agency that is performing its duties, and is barred absent a waiver of sovereign immunity.  *See, e.g.*, *Watts v. I.R.S.*, 925 F. Supp. 271, 275 (D.N.J. 1996) (claim against "individual defendants as agents of the IRS in imposing tax liens and attempting to levy upon plaintiffs' property" dismissed as barred by sovereign immunity.)[1]  Substantively, Plaintiff's action is an action against the United States for which there is no waiver of sovereign immunity.  It must be dismissed.

## C.  The Anti-Injunction Act, 26 U.S.C. § 7421(a), prohibits the relief the action seeks.

### 1.  *The Anti-Injunction Act bars an action that seeks relief related to the assessment or collection of taxes.*

Commonly known as the Anti-Injunction Act, Section 7421(a), Title 26, United States Code, provides that, except for situations not applicable here, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person."  When applicable, Section 7421 constitutes a "jurisdictional prohibition" to a court exercising jurisdiction.  *Lane v. United States*, 727 F.2d 18, 21 (1st Cir. 1984).

The "main purpose" of the Anti-Injunction Act is "the protection of the Government's need to assess and collect taxes as expeditiously as possible with a minimum of pre-enforcement judicial interference, 'and to require that the legal right to the disputed sums be determined in a suit for refund.'"  *McCarthy v. Marshall*, 723 F.2d 1034, 1037 (1st Cir. 1983) (quoting *Bob*

---

[1]      To the extent Plaintiff seeks damages against federal officials in their individual capacities for constitutional violations pursuant to the theory of *Bivens v Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971), the action is also barred, but for the reasons discussed in sections F and G, *infra*.

*Jones University v. Simon*, 416 U.S. 725, 736 (1974) and *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962)). "Claims seeking to restrain the assessment or collection of taxes are prohibited by the [Anti-Injunction Act], 'notwithstanding that plaintiffs have couched [them] in constitutional terms.'" *Rivera v. Internal Revenue Serv.*, 708 F. App'x 508, 512 (10th Cir. 2017) (quoting *We the People Found., Inc. v. United States*, 485 F.3d 140, 143 (D.C. Cir. 2007)).

The First Amended Complaint seeks a two-part injunction: first, it seeks an injunction ordering the IRS to expunge the virtual currency exchange information it has obtained that relates to Plaintiff; second, it seeks an injunction barring the IRS from, in the future, unlawfully collecting virtual currency exchange information, related to Plaintiff or anyone else. An injunction ordering the IRS to destroy information that it has obtained from a virtual currency exchange is exactly the type of injunction that is barred by the Anti-Injunction Act. Suits seeking to interfere with the IRS's "information gathering process" are barred under the Anti-Injunction Act. *Kemlon Prod. & Dev. Co. v. United States*, 638 F.2d 1315, 1320 (5th Cir.), *modified*, 646 F.2d 223 (5th Cir. 1981) (collecting cases). This suit seeks an injunction forcing the IRS to expunge from its records information obtained from potentially thousands of taxpayers, and seeks to stop that information gathering going forward. It is barred by the Anti-Injunction Act.

> ### 2. *Plaintiff cannot demonstrate the applicability of an exception to the Anti-Injunction Act.*

The Supreme Court has crafted two equitable exceptions to the Anti-Injunction Act. A plaintiff claiming the burden of an exception to the Anti-Injunction Act bears the burden of pleading and proving that one of the exceptions exists. *Batt v. United States*, 976 F. Supp. 1095, 1098 (N.D. Ohio 1997). The First Amended Complaint does not even mention the Anti-

Injunction Act, much less explain why any exception to it bars this suit. Nevertheless, we will explain below why Plaintiff cannot show why the Anti-Injunction does not bar this suit.

Under the first exception, the Anti-Injunction Act will not apply in "a case in which it is shown that the government could, under no circumstances, prevail on the merits of the underlying dispute" and that there will be irreparable injury absent an injunction. *McCarthy*, 723 F.2d at 1038 (citing *Bob Jones University*, 416 U.S. at 742–46, and *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. at 7). Frequently known as the *Williams Packing* exception, to invoke it, a plaintiff must prove two elements: 1) that he will suffer irreparable injury absent an injunction, and (2) that "under no circumstances (can) the Government ultimately prevail." *Colangelo v. United States*, 575 F.2d 994, 996–97 (1st Cir. 1978).

Plaintiff cannot meet either prong of the *Williams Packing* exception. First, the First Amended Complaint itself provides a ready explanation as to how the government could prevail: that would be if the information contained in the August 9, 2019 letter related to Plaintiff were to be information that the IRS obtained from the John Doe summons served upon Coinbase. It is possible that all the information related to Plaintiff came from the John Doe summons served upon Coinbase, in which case Plaintiff could not show that any of it was unlawfully obtained. Second, the irreparable injury prong cannot be met, given that the Plaintiff would have a remedy in a later proceeding on the merits regarding his tax liability. *Wyoming Trucking Ass'n, Inc. v. Bentsen*, 82 F.3d 930, 935 (10th Cir. 1996) (saying "plaintiffs have an adequate remedy at law via a tax suit filed in accordance with I.R.S. procedures, and that prevents equity jurisdiction in this case."). Plaintiff could seek review of a proposed deficiency in Tax Court or bring a refund action in a district court or the Court of Federal Claims after complying with the requirements for the commencement of a refund suit.

Under the second exception to the Anti-Injunction Act, a plaintiff may seek injunctive relief only if no other remedy is available. *South Carolina v. Regan*, 465 U.S. 367, 378 (1984). In *Regan*, the Supreme Court held that the State of South Carolina did not have a remedy to Congress's actions in making the interest earned from certain state-issued bonds taxable under certain conditions, because as a non-taxpayer, it could not avail itself of the remedies afforded taxpayers under the Internal Revenue Code. *Id.* at 378. Thus, the Anti-Injunction Act did not bar the action, which challenged the constitutionality of the statute that made interest earned on state-issued bonds taxable under certain conditions. *Id.*

The *Regan* exception to the Anti-Injunction Act does not apply here. Should the IRS conclude that Plaintiff has a tax liability, Plaintiff has multiple potential actions challenging the IRS conclusion described in the preceding paragraph. In *McCarthy*, decided a few months before *Regan*, the First Circuit said that the Anti-Injunction Act barred an action that sought review of a revocation of tax-exempt status, with the court saying as an apparent alternative to its *Williams Packing* holding that its "disposition of the case does not deprive the appellants of a remedy." *McCarthy v. Marshall*, 723 F.2d 1034, 1040 (1st Cir. 1983). The First Circuit said that if plaintiffs' "tax exempt status is revoked," they could "obtain review of the revocation in the Tax Court by complying with the provisions of 26 U.S.C. § 7476; [or] wait until a deficiency is assessed against them and contest the deficiency in the Tax Court, or they may pay the tax and sue for a refund." *Id.* Plaintiff can seek comparable judicial review here.

That Plaintiff has framed his claim as a constitutional violation also does not place it within any of the exceptions to the Anti Injunction Act. See *Rivera v. Internal Revenue Serv.*, 708 F. App'x 508, 511 (10th Cir. 2017) (action seeking "an order enjoining the IRS' investigations, audits and notices of deficiency towards [return preparers] and a declaration that

[the investigations] are unconstitutional and in violation of federal law, fall within the

prohibitions stated in [26 U.S.C. § 7421 and 28 U.S.C. § 2201] and therefore outside" any waiver

of sovereign immunity).

### D. The Declaratory Judgment Act, 28 U.S.C. § 2201, does not confer jurisdiction upon the court.

Plaintiff contends that this Court has the authority to grant declaratory and injunctive

relief in this matter pursuant to 28 U.S.C. §§ 2201 and 2202.  (ECF No. 3, ¶ 8.)  "Under the

Declaratory Judgment Act, a federal district court may grant declaratory relief '[i]n a case of

actual controversy within its jurisdiction, *except* with respect to Federal taxes'" *McCarthy v.*

*Marshall*, 723 F.2d 1034, 1036–37 (1st Cir. 1983) (quoting 28 U.S.C. § 2201)(emphasis added).

The Declaratory Judgment Act does not confer jurisdiction upon this Court for two

reasons.  First, the Declaratory Judgment Act does not confer jurisdiction upon a court, but

merely grants a remedy in cases where jurisdiction already exists.  *Skelly Oil Co. v. Phillips*

*Petroleum Co.*, 339 U.S. 667, 671-72 (1950); *McCarthy v. Marshall*, 723 F.2d 1034, 1037 (1st

Cir. 1983) (Section 2201 "neither provides nor denies a jurisdictional basis for actions under

federal law, but merely defines the scope of available declaratory relief.");  *Nickerson v. United*

*States*, 513 F.2d 31, 33 (1st Cir. 1975) (saying "the Declaratory Judgment Act, 28 U.S.C. § 2201,

does not confer jurisdiction but merely grants an additional remedy in cases where jurisdiction

already exists").  Plaintiff does not identify an independent basis for this action against the

United States employees in their official capacities.

Second, the Declaratory Judgment Act, by its terms, does not apply in cases "with respect

to federal taxes," other than a limited category of cases not applicable here.  28 U.S.C.

§ 2201(a).  The First Circuit has recognized that "there is no dispute that 'the federal tax

exception to the Declaratory Judgment Act is at least as broad as the Anti-Injunction Act.'"

*McCarthy*, 723 F.2d at 1037 (quoting *Bob Jones University*, 416 U.S. at 732 n. 7). Jurisdiction is lacking under the Declaratory Judgment Act for the same reasons it is lacking under the Tax Anti-Injunction Act: it is a lawsuit seeking to enjoin the tax-administration process, and there are no equitable exceptions to that statutory prohibition that would allow it to proceed.

### E. Damages cannot be awarded because Plaintiff has not exhausted his administrative remedies.

Section 7433 of the Internal Revenue Code, Title 26, United States Code, provides for a limited damages remedy to taxpayer who have sustained damages through collection conduct of the IRS that is alleged to be unlawful. Section 7433 is a waiver of sovereign immunity that "like any other, 'must be strictly observed.'" *Gonsalves v. I.R.S.*, 975 F.2d 13, 15 (1st Cir. 1992) (quoting *Soriano v. United States*, 352 U.S. 270, 276 (1957)).

To comply with Section 7433's waiver of sovereign immunity, a plaintiff must exhaust his administrative remedies. 26 U.S.C. § 7433(d)(1) ("A judgment for damages shall not be awarded ... unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service"); *see also Nogueras–Cartagena v. United States*, 125 F. App'x 323, 327 (1st Cir.2005) ("section 7433 claims may only be brought after exhaustion of administrative remedies"). The First Circuit has ruled that compliance with Section 7433's exhaustion requirement is jurisdictional. *Tempelman v. Beasley*, 43 F.3d 1456, 1994 WL 708145, *2 (1st Cir. Dec. 21, 1994) (saying failure to comply with exhaustion requirement "deprives the court of jurisdiction."); *see also Gass v. U.S. Dep't of Treasury*, 216 F.3d 1087, 2000 WL 743671 at *2 (10th Cir. 2000) ("Section 7433 constitutes a limited waiver of federal sovereign immunity. Consequently, allegations falling outside the scope of the statute do not merely fail to state a claim on the merits, but fail to invoke the subject matter jurisdiction of the courts.").

15

Plaintiff does not allege that he pursued any administrative remedies with the IRS prior to the filing of his lawsuit. Plaintiff thus has failed to exhaust administrative remedies and he is not entitled to civil damages from the IRS, even if they were due.

### F. Plaintiff cannot maintain a *Bivens* claim for alleged constitutional violations committed by IRS employees.

Sovereign immunity bars an action against a federal official sued in an official capacity. *Dugan v. Rank*, 372 U.S. 609, 620 (1963). Suits against such officials in their individual capacities likewise were prohibited historically, until the Supreme Court in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, "held that an individual complaining of a Fourth Amendment violation by federal officers acting under color of their authority may bring a suit for money damages against the officers in federal court." *Shreiber v. Mastrogiovanni*, 214 F.3d 148, 151 (3rd Cir. 2000) (citing *Bivens v Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971)). Put another way, "*Bivens* gives an individual a federal common law basis to sue federal government actors if they violate the individual's constitutional rights." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). "So-called '*Bivens* actions' for money damages against federal officers have subsequently been permitted under [28 U.S.C.] § 1331 for violations of the Due Process Clause of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228 (1979), and the Cruel and Unusual Punishments Clause of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14 (1980)." *Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988) (parallel citations omitted). "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017).

The *Bivens* claims asserted here cannot survive because: 1) they constitute a new context of *Bivens* claims disallowed under *Ziglar* as being different from or an extension of previously

allowed *Bivens* claims; and 2) the existence of the Internal Revenue Code, and its comprehensive scheme governing taxpayer remedies, constitutes the type of "special factor" prohibiting a *Bivens* remedy under even pre-*Ziglar* law.

First, a court presented with a *Bivens* claim must consider whether the claim presents a new or different context for applying *Bivens*. *Ziglar,* 137 S. Ct. at 1859-60. "The proper test for determining whether a case presents a new *Bivens* context is" whether it is "different in a meaningful way from previous *Bivens* cases decided by" the Supreme Court. *Ziglar*, 137 S. Ct. at 1859. "A meaningful difference may include the Constitutional right at issue, the statutory or other legal mandate under which the officer was operating, or the presence of potential special factors that previous *Bivens* cases did not consider. *Canada v. United States*, 950 F.3d 299, 307 (5th Cir. 2020). The presumption against a new *Bivens* type of action is consistent with the Supreme Court's "observation that it has 'consistently refused to extend *Bivens* to any new context or new category of defendants'" and "has refused to do so for the past 30 years." *Ziglar,* 137 S. Ct. at 1857 (quoting *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)). The "proper test is whether the case differs in a meaningful way from *Bivens*, *Davis*, or *Carlson*." *Canada*, 950 F.3d at 307 (5th Cir. 2020). Other than the claims allowed in those three actions, "[v]irtually everything else is a 'new context'" that is barred under *Ziglar*. *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020) (quoting *Ziglar*, 137 S. Ct. at 1865). "[E]xtending Bivens to new contexts is a 'disfavored judicial activity'" because "'even a modest extension' of the Bivens trilogy 'is still an extension.'" *Id.* (quoting *Ziglar*, 137 S. Ct. at 1857).

The purported *Bivens* claims asserted here are vastly different from any type of *Bivens* claim that has ever been permitted by the Supreme Court. The *Bivens* claims here seek damages against employees of the IRS for violations of the internal revenue laws. The Supreme Court has

never recognized *Bivens* claims against IRS employees, or for violations of the internal revenue laws, making both the nature of the defendant and of the claim new and different contexts of purported *Bivens* claims. Given that in *Ziglar* the Supreme Court barred the extension of *Bivens* claims into new contexts, the *Bivens* claims here are barred. *See Canada*, 950 F.3d at 307 (dismissing as purported *Bivens* action "claims that IRS agents intentionally manipulated a penalty assessment to ensure he could not pay the amount and sue for a refund" because it bore "'little resemblance to the three *Bivens* claims the Court has approved in the past.'") (quoting *Ziglar*, 137 S. Ct. at 1860); *see also Loumiet v. United States*, 948 F.3d 376, 382 (D.C. Cir. 2020) (action against employees of Office of Comptroller of the Currency enforcing banking laws dismissed under new-context prohibition; claim was brought under a different type of law (banking laws) against a new category of defendant (banking regulators)); *Oliva*, 973 F.3d at 443 (purported *Bivens* claim against Veterans Affairs police officer related to physical altercation at a metal detector at hospital entrance disallowed under *Ziglar* as being "'different conduct by different officers from a different agency'" (quoting *Cantu v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019))).

Second, the Internal Revenue Code constitutes a comprehensive statutory scheme prohibiting the viability of a *Bivens* remedy. Even prior to *Ziglar v. Abassi*, the existence of a comprehensive statutory scheme was deemed to be a "special factor" "counselling hesitation" against the creation of a new *Bivens* right. The First Circuit has found that the complexity of a federal program, including the existence of a comprehensive remedial scheme, bars the creation of a *Bivens* remedy. *Harvey v. U.S. Postal Serv.*, 52 F.3d 309, 1995 WL 238672 (1st Cir. April 25, 1995) (barring *Bivens* action because Civil Service Reform Act's "comprehensive scheme is designed to provide the exclusive remedy for most government employee complaints of

prohibited personnel practices."); *Elgin v. U.S. Dep't of Treasury*, 641 F.3d 6, 11 (1st Cir. 2011), *aff'd sub nom. Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012) (saying "this circuit has been firm in treating the CSRA remedy as exclusive as to equitable constitutional claims as well.).

Although it has not yet expressly so held, the First Circuit long has opined that *Bivens* actions against IRS employees likely cannot be pursued. In *McMillen v. U.S. Dep't of Treasury*, 960 F.2d 187, 190–91 (1st Cir. 1991), the First Circuit examined the remedies that Congress had provided taxpayers alleging injuries from IRS conduct, and said that "the remedies Congress has created may not be perfectly comprehensive, but they do supply 'meaningful safeguards or remedies for the rights of persons situated'" "and establish 'that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the [administration of the tax laws].'" *Id.* at 190-91 (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 425 (1988)). Thus, while the case in *McMillen* was dismissed due to the absence of a constitutional violation—making the purported *Bivens* claim moot—the First Circuit said that, "[e]ven if the behavior described in the complaint did constitute some sort of constitutional violation, moreover, we doubt that the creation of a *Bivens* remedy would be an appropriate response." *Id.* at 190.

Consistent with *McMillen's* approach, trial courts within the First Circuit have rejected attempts to allow *Bivens* actions against IRS employees for a wide variety of conduct. In *Barron v. United States*, 998 F. Supp. 117, 121 (D.N.H. 1998), this Court dismissed a case that sought a *Bivens* remedy against an IRS employee who was alleged to have engaged in abusive collection practices, with the Court finding that, "[e]ven if, as the plaintiff has alleged, [the defendant's ] alleged constitutional violations go beyond the scope of the remedial scheme, the comprehensiveness of the scheme suggests that Congress intended it to be exclusive." *Id.* at 121.

*See also Merchia v. United States*, 2019 WL 2501883, at *8 (D. Mass. June 17, 2019) (denying motion to amend complaint seeking damages for unlawful collection practices, because "[i]nsofar as the proposed amended complaint alleges that these actions rise to the level of constitutional violations and purport to raise a *Bivens* action, the comprehensive statutory scheme of the IRC provides adequate remedies for such transgressions and therefore precludes a remedy under *Bivens*."); *Tobin v. I.R.S. Com'r*, 2007 WL 2908819, at *5 (D. Me. Sept. 26, 2007), *report and recommendation adopted*, 2007 WL 3094754 (D. Me. Oct. 19, 2007) (denying *Bivens* actions "against individual IRS agents based on their conduct in relation to private letter rulings.").

The First Amended Complaint seeks damages under a *Bivens* theory against unnamed IRS agents who are alleged to have collected taxpayer information from virtual currency exchanges. The allegations are made without any specific facts that any unlawful conduct occurred; thus, the complaint only alleges that IRS agents made demands for information from virtual currency exchanges without complying with the John Doe summons procedure "upon information and belief." (ECF No. 3, ¶¶ 76, 83, 97, 100, 110, 121, 124, 133, 138, 141.) These allegations, even if true, are not sufficient to sustain a *Bivens* action against an IRS employee.

### G. Even if jurisdiction exists, the action must be dismissed because the allegations do not assert an actionable constitutional violation.

Even if jurisdiction exists, Plaintiff's claim fails, because the allegations do not assert an actionable constitutional violation against the United States. Plaintiff's First Amended Complaint contends that there have been violations of two amendments to the United States Constitution: Count 1 contends that there has been a violation of the Fourth Amendment, because the IRS's efforts in obtaining Plaintiff's financial information from a virtual currency exchange constitutes an unlawful search and seizure (ECF No. 3, at ¶¶ 86-112); Count 2

contends that there has been a violation of the Fifth Amendment's due-process clause, because the IRS's efforts in obtaining Plaintiff's financial information from a virtual currency exchange without being given notice of an opportunity to challenge the IRS's efforts to obtain that information constitutes a violation of the Fifth Amendment's due-process clause. Both claims are without merit.

*1. The complaint does not assert an actionable Fourth Amendment violation.*

Although there have been only a handful of cases to address purported Constitutional violations related to virtual currency and virtual currency exchanges, they all have declined to find Constitutional violations with respect to the government's efforts to get information concerning virtual currency from virtual currency exchanges.[2] The Constitution's framework for analyzing alleged Constitutional violations can be readily applied to the virtual currency relationships described in the complaint. That analysis requires a conclusion that Plaintiff does not have an expectation of privacy in his financial information stored with a virtual currency exchange that is sufficient to sustain a claim that an unreasonable search in violation of the Fourth Amendment has occurred.

For the Government to have infringed upon an individual's Fourth Amendment protection against unreasonable searches, the person must have had a "reasonable expectation of privacy" in the items at issue. *United States v. Jones*, 565 U.S. 400, 406 (2012). Under the third-party doctrine, a person generally "has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith v. Maryland*, 442 U.S. 735, 743–44 (1979). Thus, the Supreme Court has held that bank records are not subject to Fourth Amendment protection,

---

[2]     For a "[b]rief primer[] on bitcoin," the type of virtual currency at issue in this case, see *United States v. Harmon*, 2020 WL 4251347, at *1 (D.D.C. July 24, 2020)

*United States v. Miller*, 425 U.S. 439-40 (1976), and that telephone call logs are also not subject to Fourth Amendment protection, *Smith v. Maryland*, 442 U.S. 735, 742 (1979).

Although the Supreme Court in *Carpenter v. United States*, 138 S. Ct. 2206 (2018) ruled that a person did have a privacy interest in cell phone location records held by a third party that was sufficient to sustain a claim of a Fourth Amendment violation, *Id.* at 2219, that holding was an extension of prior rulings stating "that individuals have a reasonable expectation of privacy in the whole of their physical movements." Thus, the Court held that the nature of the cell-phone location data sought went far beyond the information that was allowed to be previously obtained without a warrant. *Id.* at 2217. Thus, the warrantless acquisition of the cell-phone location data constituted an invasion of the defendant's "reasonable expectation of privacy in the whole of his physical movements." *Carpenter,* 138 S. Ct. at 2219.

Any notion, however, that *Carpenter* opens the door to allegations that users have an expectation of privacy in their virtual currency records has already been rejected by every court to have considered the issue. In *United States v. Gratkowski*, 964 F.3d 307 (5th Cir. 2020), federal agents served a grand jury subpoena on Coinbase that sought information on customers that had sent bitcoin to Coinbase. *Id.* at 309. In a subsequent search of the house of one of those customers, agents found a hard drive containing child pornography. Seeking exclusion, defendant contended that the original subpoena to Coinbase violated the Fourth Amendment. *Id.* at 310. Rejecting that contention, the Fifth Circuit held that the Coinbase data was more like the bank records and telephone logs, which were not subject to Fourth Amendment claims, than cell-phone location data. *Id.* at 313. The court found that "Coinbase records are limited," and did not provide agents with the "intimate window of a person's life" that formed the basis of the *Carpenter* ruling. *Id.* at 312. The court also said that "Bitcoin users have the option to maintain

a high level of privacy by transacting without a third-party intermediary," and that a user "may elect to sacrifice some privacy by transacting through an intermediary such as Coinbase." *Id.* at 312. Having made that election, defendant "thus lacked a privacy interest in the records of his Bitcoin transactions on Coinbase." *Id.* at 312.

The Constitutional claims likewise have been rejected by two district courts addressing the issue in proceedings contesting IRS administrative summonses. *Zietzke v. United States*, 2020 WL 264394, *12-13 (N.D. Cal. Jan. 17, 2020), *report and recommendation adopted*, 2020 WL 6585882 (N.D. Cal. Nov. 10, 2020) (saying "*Carpenter* is not applicable here because *Carpenter's* holding is narrowly limited to facts different from this case, because location data is not at issue here, and because it is undisputed that Petitioner voluntarily exposed the requested data to Coinbase."); *Zietzke v. United States*, 426 F. Supp. 3d 758, 768-69 (W.D. Wash. 2019) (court concluded that "*Carpenter* does not apply here.").

Like the defendant in *Gratkowski*, Plaintiff has elected to conduct his bitcoin transactions through virtual currency exchanges such as Bitcoin, Abra, and Uphold. In doing so, he has placed his information in the hands of a third party, and in the type of relationship that courts have said does not give rise to an expectation of privacy. Thus, he cannot claim a violation under the Fourth Amendment based on an allegation that the government obtained that information without a search warrant.

### 2. The complaint does not state an actionable Fifth Amendment violation.

Plaintiff fails to show that there has been a violation of the due-process clause of the Fifth Amendment to the United States Constitution. The First Amended Complaint alleges that the IRS may have obtained Plaintiff's private information from Abra and/or Coinbase without obtaining a judicial warrant or subpoena. (ECF No. 3, ¶¶ 114-135.) But the complaint also appears to admit that Plaintiff kept financial information with Coinbase, and that such

information may have been responsive to the judicially approved John Doe summons that were served upon Coinbase. The First Amended Complaint also alleges that to the extent that the John Doe summons procedures of 26 U.S.C. § 7609 allowed the IRS to obtain his private financial information without first providing him direct notice and opportunity to challenge the seizure of his property, the statute is unconstitutional as applied to Plaintiff under the Fifth Amendment.

The constitutionality of the John Doe summons procedure allowed by 26 U.S.C. § 7609(f) is beyond reproach. Typically, when the IRS serves an administrative summons upon a third-party, the taxpayer under investigation is entitled to notice of the issuance of the summons and given an opportunity to challenge that summons through the commencement of petition to quash summons procedure under 26 U.S.C. § 7609(a)&(b). Sometimes, however, the IRS seeks to serve a summons upon a party without having any particular taxpayer under examination. Referred to as "John Doe summonses," under 26 U.S.C. § 7609(f) the IRS cannot serve a summons seeking information on the tax liability of such unnamed taxpayers without obtaining prior judicial approval at an *ex parte* proceeding. *Tiffany Fine Arts, Inc., et al. v. United States*, 469 U.S. 310, 313 (1985). Here, the IRS did obtain judicial approval for the John Doe summons served upon Coinbase. (*See* U.S.D.C. N.D. Cal. No. 16-cv-6658, ECF No. 7.)

The First Amended Complaint does not challenge the propriety of the John Doe summons procedure followed here, but merely alleges that its application as to the Plaintiff is a violation of his constitutional rights. But the Supreme Court recognized the viability of a John Doe summons before Congress even added the John Doe summons procedure to the Internal Revenue Code. *See also United States v. Bisceglia*, 420 U.S. 141, 150 (1975) (allowing John Doe IRS summons issued even before enactment of Section 7609(f)). And even after the enactment of Section 7609(f), the Supreme Court has accepted its viability, with the Court saying

"[i]n the case of a John Doe summons, where the IRS does not know the identity of the taxpayer under investigation, advance notice to that taxpayer is, of course, not possible." *Tiffany Fine Arts, Inc.* 469 U.S. at 316–17. Thus, the Supreme Court has recognized that § 7609(f) "provides no opportunity for the unnamed taxpayers to assert any 'personal defenses,' such as attorney-client or Fifth Amendment privileges that might be asserted under §§ 7609(a) and (b)." *Id.* at 321. The Supreme Court has never been troubled by that lack of an opportunity, saying "[w]hat § 7609(f) does is to provide some guarantee that the information that the IRS seeks through a summons is relevant to a legitimate investigation, albeit that of an unknown taxpayer." *Id.* at 321. Plaintiff cannot state a Fifth Amendment claim based upon the John Doe summons that was issued to Coinbase.

## CONCLUSION

For the reasons set forth herein, this Court should enter an order dismissing this action as against all defendants.

Respectfully submitted,

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

*/s/ Thomas Peter Cole*
THOMAS PETER COLE
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C. 20044
202-514-9611 (v)
202-514-5238 (f)
Thomas.P.Cole@usdoj.gov