IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| JAMES HARPER, | ) |
| | ) Case No. 1:20-cv-771-JD |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CHARLES P. RETTIG, in his official | ) |
| capacity as COMMISSIONER OF THE, | ) |
| INTERNAL REVENUE SERVICE, ET AL., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**

THOMAS P. COLE
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C. 20044
202-514-9611 (v)
202-514-5238 (f)
Thomas.P.Cole@usdoj.gov

# TABLE OF CONTENTS

# Contents

TABLE OF CONTENTS ................................................................................................................ ii
REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS ..................................... 1
INTRODUCTION ......................................................................................................................... 1
ARGUMENT—THE ACTION MUST BE DISMISSED. ............................................................ 1
    A.    The Administrative Procedure Act is not applicable because the relief sought is barred under the Anti-Injunction Act, 26 U.S.C. § 7421. ....................................................................... 1
        1.    The APA does not waive sovereign immunity where other statutes limit judicial review or where another adequate remedy exists. ................................................................. 1
        2.    The Anti-Injunction Act limits judicial review here within the context of 5 U.S.C. § § 701(a)(1) and 702. ........................................................................................................... 2
        3.    Judicial review is prohibited here, where another adequate remedy exists. ................. 3
        4.    Due process is satisfied with a requirement that challenges to tax administration be conducted through post-payment review proceedings. ............................................................ 6
    B.    The purported *Bivens* claims are barred under Supreme Court precedent because each purported claim arises in a new and impermissible context. ..................................................... 7
    C.    The government has not made any concessions in seeking to resolve this case through a motion to dismiss. ................................................................................................................. 10
CONCLUSION ............................................................................................................................ 10

# REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
## INTRODUCTION

Searching for a waiver of sovereign immunity, Plaintiff cites to the judicial-review provisions of the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.*  The APA, however, does not override the Anti-Injunction Act's prohibition on pre-enforcement challenges to the administration of tax laws.  Then, in an effort to articulate an allowable *Bivens* action, Plaintiff ignores recent Supreme Court precedent requiring this Court, as an initial matter, to determine whether the proposed *Bivens* causes of action constitute impermissible extensions of the *Bivens* doctrine.  Because Plaintiff's purported *Bivens* claims constitute impermissible extensions of previously allowed *Bivens* claims, his *Bivens* claims cannot proceed here.  This Court should dismiss Plaintiff's action.

## ARGUMENT—THE ACTION MUST BE DISMISSED.

### A. The Administrative Procedure Act is not applicable because the relief sought is barred under the Anti-Injunction Act, 26 U.S.C. § 7421.

#### 1. *The APA does not waive sovereign immunity where other statutes limit judicial review or where another adequate remedy exists.*

Plaintiff's contention that the judicial-review provisions of the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.*, ("APA") provide a waiver of sovereign immunity for this action is mistaken.  The Anti-Injunction Act, 26 U.S.C. § 7421(a), prohibits the action, thus removing it from the category of cases that the APA might otherwise permit.

The APA "generally waives the Federal Government's immunity from a suit 'seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority.'" *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (quoting 5 U.S.C. § 702).  Three APA provisions, however, operate, to prohibit most lawsuits related to

tax administration, including the instant lawsuit.  First, the APA's judicial-review provisions do not apply "to the extent that--(1) statutes preclude judicial review." 5 U.S.C. § 701(a)(1). Second, the APA does not "confer[] authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702.  Third, to be reviewable under the APA, the agency action must be action "for which there is no other adequate remedy in a court." 5 U.S.C. § 704.

> 2. The Anti-Injunction Act limits judicial review here within the context of 5 U.S.C. §§ 701(a)(1) and 702.

The Internal Revenue Code has provisions precluding judicial review within the meaning of the APA, thus placing most tax-administration challenges outside the scope of the APA.  The Anti-Injunction Act provides in relevant part "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." 26 U.S.C. § 7421(a).  "Among other things, the Act generally bars pre-enforcement challenges to certain tax statutes and regulations." *Fla. Bankers Ass'n v. U.S. Dep't of the Treasury*, 799 F.3d 1065, 1066 (D.C. Cir. 2015).  Instead, the Act requires that a plaintiff "raise such challenges in refund suits after the tax has been paid, or in deficiency proceedings." *Id.* The Act "thus creates a narrow exception to the general administrative law principle that pre-enforcement review of agency regulations is available in federal court." *Id.* The Act "protects the Government's ability to collect a consistent stream of revenue, by barring litigation to enjoin or otherwise obstruct the collection of taxes." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 543 (2012).  The Act's "broad and mandatory language," *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 12 (2008), "could scarcely be more explicit" in precluding pre-payment suits. *Bob Jones Univ. v. Simon*, 416 U.S. 725, 736 (1974). *See also Alexander v. Americans United Inc.*, 416 U.S. 752, 759 (1974) (saying "decisions of this Court make it unmistakably clear that the constitutional

nature of a taxpayer's claim, as distinct from its probability of success, is of no consequence under the Anti-Injunction Act.").

The Anti-Injunction Act, and the companion tax exception to the Declaratory Judgment Act, 28 U.S.C.§ 2201(a), are statutory limitations on judicial review incorporated into Sections 701(a)(1) and 702(1). *Fostvedt v. United States*, 978 F.2d 1201, 1204 (10th Cir. 1992) (saying "[i]t is clear that the Anti–Injunction Act and the Declaratory Judgment Act are part of a specific statutory framework intended by Congress as limitations not negated by the APA."); *Lonsdale v. United States*, 919 F.2d 1440, 1444 (10th Cir. 1990) (saying Section 702 "by its very terms disclaims any 'authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.'" (quoting 5 U.S.C. § 702)).[1] Plaintiff cannot assert a waiver of sovereign immunity under the APA, because the Anti-Injunction Act constitutes a limitation upon the judicial review the APA otherwise allows.

   3. *Judicial review is prohibited here, where another adequate remedy exists.*

Moreover, the APA does not authorize judicial review where "[an]other adequate remedy in a court" exists. 5 U.S.C. § 704. *See, e.g.*, *Am. Sci. & Eng'g, Inc. v. Califano*, 571 F.2d 58, 62 (1st Cir. 1978) ("review by the Court of Claims has consistently been held to provide an adequate remedy for an alleged breach of contract by a federal agency" thus precluding an APA challenge); *Sarit v. DEA*, 987 F.2d 10, 17 (1st Cir.1993) (holding that federal forfeiture statutes generally provide adequate legal remedies for claimants challenging sufficiency of notice to forfeiture proceedings, thus precluding APA review).

---

[1] Courts have found that the injunction provisions of the Anti-Injunction Act and the tax exception to the Declaratory Judgment Act) are "coterminous." *Fla. Bankers Ass'n v. U.S. Dep't of the Treasury*, 799 F.3d 1065, 1074 (D.C. Cir. 2015).

An available lawsuit under the Internal Revenue Code constitutes an adequate alternative remedy barring a waiver of sovereign immunity under the APA.  *Larson v. United States*, 888 F.3d 578, 588 (2d Cir. 2018) (taxpayer assessed penalties under 26 U.S.C. § 6707 could not bring APA action because he had "an adequate remedy instead of APA review: follow Congress's established scheme by paying his penalties and then filing a tax-refund claim pursuant to § 1346(a)(1).").  Pursuant to these principles, the Anti-Injunction Act also precludes judicial review of revenue-related regulations, and other guidance issued by the IRS.  *CIC Servs., LLC v. Internal Revenue Serv.*, 925 F.3d 247, 257 (6th Cir. 2019), *cert. granted*, 140 S. Ct. 2737 (2020) (Anti-Injunction Act barred action "seeking to enjoin the enforcement" of an IRS notice identifying certain types of transactions as reportable transactions that could be subject to a penalty if not reported)[2]; *McCarthy v. Marshall*, 723 F.2d 1034, 1040 (1st Cir. 1983) (challenge to Department of Labor regulation barred where regulation in substance was a revenue regulation, with review of agency action available through a Tax Court or refund proceeding).

The cases Plaintiff cites in support of his proposition that the APA provides a waiver of sovereign immunity do not refute these principles. In *Z St. v. Koskinen*, 791 F.3d 24, 31 (D.C. Cir. 2015), the court said that the Anti-Injunction Act "does not apply at all where the plaintiff has no other remedy for its alleged injury," with the instant alleged injury there stemming from the IRS's internal review procedures used to consider applications for tax-exempt status.  *Id.* at 31.  The court in *Z St.* ruled that plaintiff had no other remedy for its alleged injury—an "allegedly unconstitutional delay in processing Z Street's section 501(c)(3) application"— because the Internal Revenue Code's provisions regarding pre or post assessment review of tax

---

[2]  The *CIC Servs.* case was argued before the United States Supreme Court on December 1, 2020.  The Supreme Court has not yet issued an opinion in the case.

4

assessments would not provide a sufficient remedy. *Id.* at 32. *Z St.* is an outlier in the Anti-Injunction Act jurisprudence, with its reach being limited even in its own circuit. *See Fla. Bankers Ass'n*, 799 F.3d at 1067 (bank that wanted to challenge regulation requiring the reporting of interest paid to foreign account-holders could "decline to submit a required report, pay the penalty, and then sue for a refund," thus giving a remedy that made the Anti-Injunction Act applicable). Plaintiff's remedy here is the same as the remedy available in *Fla. Bankers Ass'n*: if the IRS contends Plaintiff owes a tax, Plaintiff can challenge the IRS's actions prior to assessment in Tax Court or, after assessment, through a refund proceeding.

The Supreme Court's decision in *Direct Marketing Ass'n v. Brohl*, 575 U.S. 1 (2015), does not narrow the scope of the Anti-Injunction Act. In *Direct Marketing*, the Court considered the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, which restricts federal courts' ability to "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law . . . ." It held that the TIA did not bar federal court consideration of a suit seeking to ban enforcement of Colorado's "penalty" on noncollecting out-of-state retailers who did not follow notice-and-reporting requirements for sales to Colorado residents – requirements designed to help Colorado collect use taxes from its residents. The Court found that the TIA's grouping of "restrain" with "enjoin" and "suspend" supported giving "restrain" a narrow, secondary meaning (equivalent to "enjoin") rather than its primary meaning of "to hold back" or "inhibit." *Direct Marketing*, 575 U.S. at 14. Applying that narrow meaning, the Court concluded the TIA only prohibits enjoining actual acts of assessment, levy, or collection, and did not bar enjoining the penalty at issue. The TIA's tripartite grouping of the verbs "restrain" with "enjoin" or "suspend," which prompted the Court in *Direct Marketing* to give "restrain" its narrow meaning, is not present in the Anti-Injunction Act. Rather, the Anti-Injunction Act refers only to "restraining" which, consistent

with longstanding Anti-Injunction Act precedent, is more reasonably given its primary meaning as barring suits that inhibit assessment or collection. The Supreme Court did not cite, let alone repudiate or overrule, *Bob Jones*, *Americans United*, or any of the many other cases holding that the Anti-Injunction Act prohibits such suits. *See Alabama v. North Carolina*, 560 U.S. 330, 335-36 (2010) (declining to find a case was implicitly overruled by subsequent decisions that did not mention that case and did not directly address the issue it presented). Accordingly, *Bob Jones* and *Americans United* remain controlling authority here.

Furthermore, writing for the majority in *Florida Bankers*, now-Justice Kavanaugh explained that the "penalty in *Direct Marketing* was not itself a tax, or at least it was never argued or suggested that the penalty in that case was itself a tax," and that the Anti-Injunction Act applied to the Florida Bankers Association's challenge to the regulations at issue there. In contrast, the TIA did not apply in *Direct Marketing* as the case ultimately did not involve a tax. *Fla. Bankers Ass'n*, 799 F.3d at 1069.

In sum, nothing about *Direct Marketing* undermines the argument made in our moving brief (ECF No. 12-1, at ECF p. 13), that suits seeking to interfere with the IRS's "information gathering process" are barred under the Anti-Injunction Act. *Kemlon Prod. & Dev. Co. v. United States*, 638 F.2d 1315, 1320 (5th Cir.), *modified*, 646 F.2d 223 (5th Cir. 1981) (collecting cases). It is enough that Plaintiff seeks an injunction asking the IRS to expunge information it has gathered to bring his case within the prohibition of the Anti-Injunction Act.

> 4. *Due process is satisfied with a requirement that challenges to tax administration be conducted through post-payment review proceedings.*

Plaintiff has framed his allegations that his due process rights have been violated as potential *Bivens* claims (and this reply will address them in that context as well), but they are probably better addressed in the context of whether Plaintiff has a remedy for purported

6

violations of his due process rights. He does. It has been settled for more than a century that post-payment review satisfies due process. *See G.M. Leasing Corp. v. United States*, 429 U.S. 338, 352 n.18 (1977) (collecting cases); *see, e.g., Phillips v. Commissioner*, 283 U.S. 589, 595 (1931). "[M]ere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for the ultimate judicial determination of the liability is adequate." *Phillips*, 283 U.S. at 596-597. And the Supreme Court has long recognized that a refund suit to "recover the amount paid" is fully "adequate." *Id.* at 597, 601. *See also Kahn v. United States*, 753 F.2d 1208, 1218 (3d Cir. 1985) (noting that "[i]n the tax context, the constitutionality of a scheme providing for only post-assessment judicial review is well-settled.") It is also worth noting that in the underlying John Doe summons proceeding, although Plaintiff was not required to receive notice, he did in fact submit an *amicus* brief, which makes a due process claim related to the John Doe summons case disingenuous.

### B. The purported *Bivens* claims are barred under Supreme Court precedent because each purported claim arises in a new and impermissible context.

If a purported *Bivens* claim constitutes a new context for a claim beyond one of the three types of *Bivens* claims the Supreme Court has previously allowed, it constitutes an attempt to expand the scope of *Bivens* that is disfavored under current Supreme Court precedent. Moreover, that the Supreme Court previously has permitted *Bivens* actions to proceed under one of three amendments (Fourth, Fifth, and Eighth) does not mean that *all claims* asserted under any of those amendments automatically qualify as allowable Bivens claims. The claims made here, even though made under amendments (Fourth and Fifth) for which *Bivens* claims have previously been allowed, are entirely different from the types of claims that previously have been allowed, and thus barred under current Supreme Court precedent.

This Court must first determine whether each proposed *Bivens* claim constitutes a new context for such an action. "'The proper test for determining whether a case presents a new *Bivens* context is' whether it is 'different in a meaningful way from previous *Bivens* cases decided by' the Supreme Court." *Canada v. United States*, 950 F.3d 299, 307 (5th Cir. 2020) (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1859 (2017)). "A meaningful difference may include the Constitutional right at issue, the statutory or other legal mandate under which the officer was operating, or the presence of potential special factors that previous *Bivens* cases did not consider." *Canada*, 950 F.3d at 307. "[E]ven a modest extension is still an extension." *Ziglar*, 137 S. Ct. at 1864. *See also Loumiet v. United States,* 948 F.3d 376, 382 (D.C. Cir. 2020) (explaining that opinions where the D.C. Circuit has recognized a *Bivens* claim have been "overtaken" by *Ziglar's* "holding that the new-context analysis may consider only Supreme Court decisions approving *Bivens* actions."). A claim can be asserted under one of the amendments that previously supported a *Bivens* claim, but still constitute a "modest extension" that disqualifies it from the modern *Bivens* doctrine. *See, e.g.*, *Canada*, 950 F.3d at 307 (barring as new context purported *Bivens* claim that "IRS agents intentionally manipulated a penalty assessment to ensure he could not pay the amount and sue for a refund" because it bore "little resemblance to the three *Bivens* claims the Court has approved in the past."); *Loumiet*, 948 F.3d at 382 (attempt to bring *Bivens* action against banking regulators charged with "the enforcement of federal banking laws" constituted a disallowed new context.)

The purported *Bivens* claims identified here are impermissible. With respect to the purported Fourth Amendment violation, Plaintiff does not identity a single case explaining why the purported violation here would *not* constitute an extension of *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), which recognized a constitutional

8

claim against federal officers based upon allegations that Bivens's Fourth Amendment rights had been violated. The differences between the instant facts and those of *Bivens* are stark: *Bivens* itself involved a warrantless entry of plaintiff's apartment, by officers who "manacled petitioner in front of his wife and children, and threatened to arrest the entire family," subsequently "searched the apartment from stem to stern" and, lastly, subjected plaintiff to "a visual strip search." *Bivens*, 403 U.S. at 389. Our moving brief (ECF No. 12-001, at ECF pp. 23-25) argues why the alleged conduct here does not even constitute *any* violation of the Fourth Amendment. But, even if it does, it is not the sort of violation that has ever been found to be actionable under *Bivens*. To allow the *Bivens*-for-Bitcoin-violations claim against IRS officials articulated here to proceed under Plaintiff's Fourth Amendment theory would be a gross expansion of the *Bivens* doctrine, of the sort barred under *Ziglar*. *See, e.g., Attkisson v. Holder*, 925 F.3d 606, 621 (4th Cir. 2019) (denying creation of new Fourth Amendment *Bivens* claim for network news reporter whose computer was allegedly illegally accessed by government agents because "a claim based on unlawful electronic surveillance presents wildly different facts and a vastly different statutory framework from a warrantless search and arrest" of the type at issue in *Bivens*).

Likewise, any attempt to couch a *Bivens* claim in the context of a Fifth Amendment violation also constitutes a prohibited attempted extension of *Bivens*. *Davis v. Passman* allowed a *Bivens* claim to proceed based upon a Fifth Amendment "right to be free from illegal discrimination." *Davis v. Passman*, 442 U.S. 228, 236 (1979). Even before *Ziglar*, the First Circuit ruled that the *Davis* ruling stemmed from the equal-protection component of the Fifth Amendment, and questioned whether a *Bivens* claim was even cognizable under an alleged due process violation. *Air Sunshine, Inc. v. Carl*, 663 F.3d 27, 34 (1st Cir. 2011). No such doubt exists now: post *Ziglar*, such claims constitute extensions of previously permissible *Bivens*

claims that are no longer viable. *Tun-Cos v. Perrotte*, 922 F.3d 514, 525 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 2565 (2020) (purported Fifth Amendment *Bivens* claim made against ICE officials disallowed as extension of previously allowed claim); *Canada* 950 F.3d at 307 ("claims that IRS agents intentionally manipulated a penalty assessment to ensure he could not pay the amount and sue for a refund 'bear little resemblance to the three *Bivens* claims the Court has approved in the past,'" thus precluding *Bivens* remedy under Fifth Amendment's due process clause.) (quoting *Ziglar*, 137 S. Ct. at 1860.)

### C. The government has not made any concessions in seeking to resolve this case through a motion to dismiss.

Plaintiff's brief (ECF No. 14) erroneously claims that the government has made "concessions" or "admissions" about the subject matter of this lawsuit. The government's motion makes no such concessions or admissions. When deciding a motion made under Rule 12(b)(6), a court must take "the complaint's well-pleaded facts as true," and "draw all reasonable inferences in the plaintiffs' favor." *Barchock v. CVS Health Corp.*, 886 F.3d 43, 48 (1st Cir. 2018). Our brief only seeks to do what the Court must do when it rules on a Rule 12(b)(6) motion: explain why even if the allegations are true, the complaint must be dismissed. Should the motion be denied, the answer that must be filed under Rule 12(a)(1) will be the first place the government responds on the merits to the allegations made in the amended complaint.

### CONCLUSION

This Court should enter an order dismissing this action as against all defendants.

Respectfully submitted,

*/s/ Thomas P. Cole*
THOMAS P. COLE
Trial Attorney, Tax Division
Thomas.P.Cole@usdoj.gov

10