UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


James Harper

     v.                                      Civil No. 20-cv-771-JD
                                                Opinion No. 2021 DNH 056
Charles P. Rettig,
in his official capacity
as Commissioner of the
Internal Revenue Service,
et al.


O R D E R

     James Harper brought this civil rights suit against
Commissioner Charles Rettig, the IRS, and various unknown
officers of the IRS (John Does 1 through 10) (collectively, "the
government").  Harper alleges that the government violated the
Fourth Amendment, Fifth Amendment, and 26 U.S.C. § 7609(f) by
obtaining records of his financial transactions from third
parties.  The government moves to dismiss (doc. no. 12) Harper's
suit for lack of jurisdiction under Federal Rule of Civil
Procedure 12(b)(1) and for failure to state a claim upon which
relief can be granted under Federal Rule of Civil Procedure
12(b)(6).  Harper objects.


Standard of Review

     When resolving a challenge to the court's subject-matter
jurisdiction under Rule 12(b)(1) or determining whether a claim

upon which relief can be granted has been stated under Rule
12(b)(6), the court construes the allegations in the complaint
liberally, treats all well-pleaded facts as true, and resolves
inferences in the plaintiff's favor.  Jalbert v. U.S. Securities
& Exchange Comm'n, 945 F.3d 587, 590-91 (1st Cir. 2019); Hamann
v. Carpenter, 937 F.3d 86, 88 (1st Cir. 2019).  The court,
however, disregards conclusory allegations that simply parrot
the applicable legal standard.  Manning v. Boston Med. Ctr.
Corp., 725 F.3d 34, 43 (1st Cir. 2013).

When addressing subject-matter jurisdiction, in addition to
the complaint, the court may consider other evidence submitted
by the parties without objection.  Hajdusek v. United States,
895 F.3d 146, 148 (1st Cir. 2018).  The plaintiff, as the party
invoking federal jurisdiction, bears the burden of showing that
subject matter jurisdiction exists when challenged.  Lujan v.
Defenders of Wildlife, 504 U.S. 555, 561 (1992).


## Background

In 2013, Harper opened an account with "Coinbase," an
entity that "facilitates transactions in virtual currencies such
as bitcoin."  Doc. 3 ¶ 18.  Coinbase provided terms of agreement
alongside its account, stating, in relevant part, that "Coinbase
takes reasonable precautions, as described herein, to protect

your personal information from loss, misuse, unauthorized access, disclosure, alteration, and destruction." Id. ¶ 25.

In 2013 and 2014, Harper deposited bitcoin into his Coinbase account.  Harper primarily received the bitcoin as income from consulting work.  Harper alleges that he declared the transactions on his 2013 and 2014 tax returns and states that he declared all "appropriate income from bitcoin payments," including capital gains tax.  Id. ¶¶ 30-33.  Harper states that he also paid "appropriate capital gains on any bitcoin income for tax years 2015 and 2016."  Id. ¶ 37.  In 2015, Harper liquidated his holdings in the Coinbase account and by 2016 Harper no longer held any bitcoin in the Coinbase account.  Harper also held bitcoin in accounts with "Abra" and "Uphold".  Harper and his wife liquidated those accounts from 2016 through the date of the Amended Complaint (August 2020).

In 2016, the IRS sought to enforce an ex parte third-party "John Doe" administrative summons under 26 U.S.C. §§ 7602,[1]

---

[1] Section 7602 generally authorizes the IRS to issue administrative summonses "[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability . . . ."

7609(f),[2] and 7609(h)(2) against Coinbase in the Northern District of California.  Coinbase opposed enforcement of the summons.  Ultimately, the court ordered Coinbase to comply with a narrowed version of the summons.  United States v. Coinbase, Inc., 2017 WL 5890052, at *1 (N.D. Cal. Nov. 28, 2017) (finding that the narrowed IRS summons "serves the IRS's legitimate

---

[2] Section 7609(f) details special prerequisites the IRS must satisfy before enforcing an ex parte "John Doe" third-party summons.  It says:

Any summons described in subsection (c)(1) which does not identify the person with respect to whose liability the summons is issued may be served only after a court proceeding in which the Secretary establishes that—

**(1)** the summons relates to the investigation of a particular person or ascertainable group or class of persons,

**(2)** there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and

**(3)** the information sought to be obtained from the examination of the records or testimony (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.

The Secretary shall not issue any summons described in the preceding sentence unless the information sought to be obtained is narrowly tailored to information that pertains to the failure (or potential failure) of the person or group or class of persons referred to in paragraph (2) to comply with one or more provisions of the internal revenue law which have been identified for purposes of such paragraph.

purpose of investigating Coinbase account holders who may not have paid federal taxes on their virtual currency profits").

In 2019, the IRS sent Harper a letter entitled "Reporting Virtual Currency Transactions." Doc. 3 ¶ 67; see also doc. 3-6 at 1. As relevant, the IRS's letter told Harper the following:

> We have information that you have or had one or more accounts containing virtual currency but may not have properly reported your transactions involving virtual currency, which include cryptocurrency and non-crypto virtual currencies.

Doc. 3 ¶ 68; see also doc. 3-6 at 1. The IRS stated that if Harper had failed to properly report his "virtual currency transactions" then he "may be subject to future civil and criminal enforcement activity." Doc. 3 ¶ 69; see also doc. 3-6 at 1. Additionally, upon Harper's "information and belief," John Does 1 through 10 "issued an informal demand" to Abra and Coinbase for Harper's financial records. Harper believes that Abra or Coinbase complied with that demand.

Harper's Amended Complaint contains three counts: (I) violation of the Fourth Amendment; (II) violation of the Fifth Amendment; and (III) declaratory judgment/violation of 26 U.S.C. § 7609(f). As relief for the alleged violations of law stated in Counts I and II, Harper requests money damages from the defendants, as well as injunctive and declaratory relief. Specifically, Harper requests an order declaring § 7602, et

seq., unconstitutional as applied to him under the Fourth and
Fifth Amendments, requiring the IRS to expunge Harper's
financial records, and prohibiting the IRS and John Does 1
through 10 from seizing financial records from "virtual currency
exchanges" under § 7602, et seq., in the future.

In Count III, Harper requests a declaratory judgment that
the IRS is violating § 7609(f) and, like Counts I and II,
requiring the IRS to expunge his financial records and
prohibiting the IRS and John Does 1 through 10 from seizing
similar financial records through § 7609(f) in the future.
Commissioner Rettig is sued in his official capacity, while John
Does 1 through 10 are sued in their personal capacities.


Discussion

The government moves to dismiss Harper's suit for lack of
jurisdiction and for failure to state a claim upon which relief
can be granted.  Harper objects to dismissal.  The government
filed a reply.


A.   Jurisdiction (Sovereign Immunity)

The government argues that, while Harper's suit is
nominally against Commissioner Rettig and unidentified "John
Doe" IRS officers, the suit is, in function, a suit against the

United States, so that the United States's sovereign immunity bars the suit.  Harper does not contest that his claims against the IRS and Commissioner Rettig are functionally against the United States, but he argues that the Administrative Procedure Act ("APA") waives sovereign immunity to the extent he requests declaratory or injunctive relief.  Harper also suggests that Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), provides an exception to the United States's sovereign immunity for claims for money damages. In its reply, the government argues that the APA does not waive the United States's sovereign immunity because, 1) another statute – the Anti-Injunction Act, 26 U.S.C. § 7421 – precludes judicial review; 2) the APA does not waive sovereign immunity if another statute that grants consent to suit expressly or implicitly forbids the relief sought; and 3) the agency action complained of by Harper has another adequate court remedy.

"It is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Mitchell, 445 U.S. 535, 538 (1980) (alterations and quotation marks omitted).  The burden is on Harper to establish that a waiver of

sovereign immunity is applicable here.  In re Rivera Torres, 432 F.3d 20, 23 (1st Cir. 2005).

### 1.   Counts I and II (Relief in Form of Money Damages)

In Counts I and II, in part, Harper appears to request money damages from the IRS and Commissioner Rettig, who was sued only in his official capacity.  Contrary to Harper's apparent contention in his objection to the motion to dismiss, Bivens does not provide an exception to sovereign immunity for suits against the United States or official-capacity defendants for money damages.  Tapia-Tapia v. Potter, 322 F.3d 742, 746 (1st Cir. 2003) ("[T]he government's sovereign immunity does not vanish simply because government officials may be personally liable for unconstitutional acts.").  Harper asserts no other basis for his argument that the United States has waived its sovereign immunity for his claims for money damages brought against the IRS or Commissioner Rettig.  Therefore, Counts I and II are dismissed to the extent Harper seeks money damages from the IRS or Commissioner Rettig.  See id.

### 2.   Count I, II, and III (Relief in Form of Injunctions & Declaratory Judgments)

Harper also requests that the court declare § 7602, et seq., unconstitutional as applied to him and order Commissioner

Rettig, the IRS, and John Does 1 through 10 to expunge any
financial records they obtained about Harper's cryptocurrency
transactions via § 7602, et seq., and enjoin John Does 1 through
10 from violating the Fourth Amendment, Fifth Amendment, and
§ 7609(f) in the future.  In its motion to dismiss, the
government contends that these requests for relief are barred by
the United States's sovereign immunity and the Anti-Injunction
Act.  Harper objects, arguing that the APA waives the United
States's sovereign immunity and that the Anti-Injunction Act
does not prohibit the injunctive and declaratory relief he seeks
in this case.

　　　"The APA generally waives the Federal Government's immunity
from a suit 'seeking relief other than money damages and stating
a claim that an agency or an officer or employee thereof acted
or failed to act in an official capacity or under color of legal
authority.'" Match-E-Be-Nash-She-Wish Band of Pottawatomi
Indians v. Patchak, 567 U.S. 209, 215 (2012) (quoting 5 U.S.C.
§ 702).  That waiver, however, contains two exceptions: (1) if
another limitation on judicial review requires the court to deny
relief; or (2) "if any other statute that grants consent to suit
expressly or impliedly forbids the relief" sought by the
plaintiff.  5 U.S.C. § 702.

The Anti-Injunction Act provides such a limitation on judicial review, as it states, in relevant part, that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person[.]" 26 U.S.C. § 7421(a);[3] see also Nat'l Fed'n of Indep. Bus. v. Sebelius, 567 U.S. 519, 543 (2012) ("This statute protects the Government's ability to collect a consistent stream of revenue, by barring litigation to enjoin or otherwise obstruct the collection of taxes.  Because of the Anti-Injunction Act, taxes can ordinarily be challenged only after they are paid, by suing for a refund."); Fostvedt v. United States, 978 F.2d 1201, 1203-04 (10th Cir. 1992) ("Contrary to Petitioner's assertions, § 702 of the APA does not override the limitations of the Anti-Injunction Act and the Declaratory Judgment Act.").  If a claim "called in question a specific provision of the Internal Revenue Code, or to a ruling or regulation issued under the Code, the claim would clearly come under the general bars to jurisdiction and declaratory relief . . . ." McCarthy v. Marshall, 723 F.2d

---

[3] Harper does not argue that any of the enumerated statutory exceptions to the Anti-Injunction Act apply here.  See 26 U.S.C. § 7421(a) (stating that the act applies "[e]xcept as provided in sections 6015(e), 6212(a) and (c), 6213(a), 6232(c), 6330(e)(1), 6331(i), 6672(c), 6694(c), 7426(a) and (b)(1), 7429(b), and 7436").  Rather, he contends that the Anti-Injunction Act does not apply considering the circumstances of his claims.

1034, 1037 (1st Cir. 1983).  "Conversely, if jurisdiction were
otherwise established and the controversy concerned essentially
nontax matters, there would be no question of dismissing the
case merely because a decision on the merits might have some
collateral tax repercussions."  Id.

     The Anti-Injunction Act applies to Harper's claims for
declaratory and injunctive relief because they implicate
provisions of the Internal Revenue Code and would restrain the
assessment or collection of a tax.  See id.  Although Harper's
suit ostensibly challenges the validity of nontax activity – the
IRS's enforcement of a John Doe third-party summons – the effect
of Harper's requested declaratory and injunctive relief would be
to prevent the IRS from assessing Harper's or others' taxes
using the information it has obtained through the John Doe
third-party process.  Consequently, his suit, to the extent it
seeks injunctive and declaratory relief, is barred by the Anti-
Injunction Act.  See Bob Jones Univ. v. Simon, 416 U.S. 725, 738
(1974) (rejecting argument that suit was not intended to
restrain the assessment or collection of any tax because the
"complaint and supporting documents" revealed the plaintiff's
concern about how the challenged IRS action would affect its
future federal tax liability); Gulden v. United States, 287 F.
Appx. 813, 816 (11th Cir. 2008) ("[T]he Anti-Injunction Act bars

not only suits that directly seek to restrain the assessment or collection of taxes, but also suits that seek to restrain IRS activities 'which are intended to or may culminate in the assessment or collection of taxes.'"); Dickens v. United States, 671 F.2d 969, 971 (6th Cir. 1982) ("A suit designed to prohibit the use of information to calculate an assessment is a suit designed 'for the purpose of restraining' an assessment under the [Anti-Injunction Act]."). Therefore, the Anti-Injunction Act bars consideration of Harper's claims for injunctive and declaratory relief. See McCarthy, 723 F.2d at 1037; Breton v. I.R.S., 2013 WL 1788536, at *2 (D.N.H. Apr. 10, 2013) (finding that Anti-Injunction Act prohibited court from enjoining administrative tax levy when plaintiff argued the levy violated the Fourth and Fifth Amendments); see also Fostvedt, 978 F.2d at 1203-04 ("Although disguised as a procedural challenge, the essence of Petitioner's action is an attempt to delay and/or prevent the IRS from assessing and collecting the income tax . . . . Actions in the nature of Petitioner's suit are prohibited by the Anti-Injunction Act . . . .").[4]

---

[4] The federal declaratory judgment statute, 28 U.S.C. § 2201(a), includes a similar carve out for declaratory judgments "with respect to Federal taxes." Similar to the Anti-Injunction Act, that exception prevents Count III of Harper's complaint, which requests a declaratory judgment "with respect to Federal taxes," from moving forward. See 28 U.S.C. § 2201(a); Thompson/Center Arms Co. v. Baker, 686 F. Supp. 38,

In an attempt to evade that conclusion, Harper argues that,
because he alleged in the Amended Complaint that he has paid all
taxes that were due, his request for injunctive relief expunging
his financial records is not an attempt to preemptively stop
assessment or collection of his taxes and therefore does not
fall within the Anti-Injunction Act's scope.  Harper, however,
also alleged in his Amended Complaint that the IRS sent him a
letter informing him that it had information – information that
Harper wants the court to direct the IRS to expunge – that he
may have additional tax liability.  Therefore, Harper's
allegation that he paid all taxes that were due is an
unsupported conclusory statement and not well pled.  See A.G. ex
rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013)
(observing that a conclusory statement "presented as an ipse
dixit" and "unadorned by any factual assertions that might lend
it plausibility" need not be taken as true at the motion to
dismiss stage).

Moreover, in enforcing the IRS's summons on Coinbase that
resulted in the IRS's acquisition of Harper's financial records,
the court found that "the IRS's purpose is related to tax

---

41 (D.N.H. 1988) ("[A] finding that the plaintiff's claim is
barred by the Anti–Injunction Act necessitates a finding that
the claim is similarly barred by the Declaratory Judgment
Act.").

compliance, not research" and that the summons "serves the
legitimate investigative purpose of enforcing the tax laws
against those who profit from trading in virtual currency."
Coinbase, 2017 WL 5890052, at *6, *8.  Therefore, Harper's
argument that his proposed injunction and declaratory judgment
are not aimed at restraining the assessment or collection of
taxes is incorrect.  See McCarthy, 723 F.2d at 1037; Dickens,
671 F.2d at 971.

Harper also argues that, because he has no other remedy for
the IRS's constitutional or statutory violations, the Anti-
Injunction Act does not bar his suit even if it otherwise would
apply.  See South Carolina v. Regan, 465 U.S. 367, 378 (1984)
("In sum, the [Anti-Injunction] Act's purpose and the
circumstances of its enactment indicate that Congress did not
intend the Act to apply to actions brought by aggrieved parties
for whom it has not provided an alternative remedy.").  Harper,
however, had an alternative remedy to contest the third-party
summons at issue in this case: A taxpayer who is a target of a
John Doe third-party summons under § 7609(f) "may intervene and
challenge enforcement of the summons." United States v.
Ritchie, 15 F.3d 592, 597 (6th Cir. 1994); cf. United States v.
Coinbase, 2017 WL 3035164 (N.D. Cal. July 18, 2017) (pertaining
to the summons challenged by Harper in this case and granting

motion by John Doe to intervene as of right and permissively).
Furthermore, if the IRS determines that Harper does have
additional tax liability, additional processes are available to
challenge the IRS's actions.  See 26 U.S.C. §§ 6213, 7422.
Therefore, Harper has failed to demonstrate that he lacks an
adequate remedy for the violations he claims in this suit.

Because Harper has not demonstrated the applicability of
any exception to the United States's sovereign immunity and
because the Anti-Injunction Act prohibits the court from
granting any of the injunctive and declaratory relief sought by
Harper in this suit, Counts I and II, to the extent Harper seeks
injunctive or declaratory relief against any defendant or money
damages from Commissioner Rettig or the IRS, are dismissed for
lack of jurisdiction.  Count III of the Amended Complaint is
dismissed in its entirety for lack of jurisdiction.


B.   Personal Capacity Claims / Bivens

Harper's remaining unaddressed claims are Counts I and II,
to the extent he seeks money damages from John Does 1 through 10
in their individual capacities.  The government moves to dismiss
Harper's claims against the John Does in their individual
capacities on the ground that Harper seeks recognition of Bivens
claims in new contexts.  The government contends that "the

existence of the Internal Revenue Code, and its comprehensive scheme governing taxpayer remedies" is a special factor that prohibits extending <u>Bivens</u> to the new context here, such that Harper's claims do not state a claim upon which relief can be granted.  Doc. 12-1 at 17.  Harper objects, contending that his claims in Count I (Fourth Amendment violation) and Count II (procedural due process violation) are not applications of <u>Bivens</u> in a new context.  Harper adds that, even if Counts I and II do apply <u>Bivens</u> in a new context, <u>Bivens</u> should be extended to this new context.

A claim seeking money damages from federal officers in their individual capacities for alleged constitutional violations is cognizable only if it fits within the existing contexts in which the Supreme Court has applied <u>Bivens</u> or if there are no special factors that counsel against extending <u>Bivens</u> to a new context. <u>Ziglar v. Abbasi</u>, --- U.S. ---, 137 S. Ct. 1843, 1857-59 (2017).  A court examining a claim seeking a damages remedy under <u>Bivens</u> must first determine whether the claim applies <u>Bivens</u> in a new context.  <u>Id.</u> at 1859.  "If the case is different in a meaningful way from previous <u>Bivens</u> cases decided by [the Supreme Court], then the context is new." <u>Id.</u> <u>at 1859-60</u>.  "A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at

issue; the generality or specificity of the official action; the
extent of judicial guidance as to how an officer should respond
to the problem or emergency to be confronted; the statutory or
other legal mandate under which the officer was operating; the
risk of disruptive intrusion by the Judiciary into the
functioning of other branches; or the presence of potential
special factors that previous Bivens cases did not consider."
Id. at 1859-60.  Moreover, "[a] claim may arise in a new context
even if it is based on the same constitutional provision as a
claim in a case in which a damages remedy was previously
recognized." Hernandez v. Mesa, 140 S. Ct. 735, 743 (2020).

If the claim is in a new context, the court must then
consider whether any "special factors counsel[] hesitation" in
extending Bivens "in the absence of affirmative action by
Congress." Abbasi, 137 S. Ct. at 1857.  Only if there are no
such special factors may the court conclude that Bivens provides
a remedy for constitutional violations alleged by the plaintiff.
See id.

### 1.  Applicability of Bivens to Count I (Fourth Amendment)

The government argues that Harper's Fourth Amendment claim
is dissimilar to Bivens.  Harper responds that his claim in
Count I under the Fourth Amendment is not different in a

meaningful way from Bivens itself, which also involved a Fourth Amendment claim.

Harper's claim here, however, applies Bivens in a "new context."  Harper's lawsuit is a broad challenge "largely aimed at official IRS conduct and policy," while Bivens, in contrast, was a narrowly-focused suit that challenged the acts of a few individual officers.  Doc. 14 at 6; Bivens, 403 U.S. at 389 ("The agents manacled petitioner in front of his wife and children, and threatened to arrest the entire family.  They searched the apartment from stem to stern.  Thereafter, petitioner was taken to the federal courthouse in Brooklyn, where he was interrogated, booked, and subjected to a visual strip search.").  Additionally, the John Doe defendants here are alleged to have violated the Fourth Amendment because they obtained without a warrant Harper's electronically-stored financial records from a third party that Harper believes was contractually obligated to withhold those records.  By contrast, the Fourth Amendment claim in Bivens was based on federal agents' unlawful entrance and ransacking of a home, their threats to its occupants, and the strip search of the petitioner.  403 U.S. at 389.  These contextual differences are sufficient to differentiate Harper's case from Bivens under Abbasi.  See Attkisson v. Holder, 925 F.3d 606, 621 (4th Cir.

2019) ("The plaintiffs' Fourth Amendment <u>Bivens</u> claim . . .
differs meaningfully from the claim raised in <u>Bivens</u> in numerous
ways that are material under <u>Abbasi</u> . . . .  [A] claim based on
unlawful electronic surveillance presents wildly different facts
and a vastly different statutory framework from a warrantless
search and arrest.").

The existence of the Internal Revenue Code, which contains
a statutory remedial scheme covering the alleged wrongful
conduct here, as well as the inherent ability of a taxpayer who
is a target of a John Doe third-party summons to intervene in an
enforcement proceeding, is a "special factor" that counsels
against extending <u>Bivens</u> into the new context.  <u>See</u>, <u>e.g.</u>,
<u>Harvey v. U.S. Postal Serv.</u>, 52 F.3d 309, at *1 (1st Cir. Apr.
25, 1995) (per curiam) (declining to extend <u>Bivens</u> because a
"comprehensive scheme" provides an "exclusive remedy" for
wrongful personnel practices by the federal government);
<u>McMillen v. U.S. Dep't of Treasury</u>, 960 F.2d 187, 190-91 (1st
Cir. 1991) (per curiam) (observing that while the Internal
Revenue Code is not "perfectly comprehensive," Congress has
determined that it provides "adequate remedial mechanisms for
constitutional violations that may occur in the" enforcement of
tax laws).  For those reasons alone, the court declines to find
that <u>Bivens</u> extends to the new context asserted by Harper here.

Additionally, Harper's suit, as discussed above, implicates the federal government's power to assess and collect taxes. That is also a "special factor" that counsels against extending the Bivens remedy to this context.  Cf. Cameron v. I.R.S., 773 F.2d 126, 129 (7th Cir. 1985) ("Congress has given taxpayers all sorts of rights against an overzealous officialdom, including, most fundamentally, the right to sue the government for a refund if forced to overpay taxes, and it would make the collection of taxes chaotic if a taxpayer could bypass the remedies provided by Congress simply by bringing a damage[s] action against Treasury employees.  It is hard enough to collect taxes as it is; additional obstructions are not needed.").  As discussed above, Congress specifically exempted suits that implicate its taxing power from the Declaratory Judgment Act and, through the Anti-Injunction Act, affirmatively prohibited injunctions that restrain that power.  Considering Congress's limitations on injunctive and declaratory relief in tax suits like the one brought by Harper, as well as the statutory remedial scheme that includes processes to challenge the conduct complained of by Harper in this suit, the court declines to imply a money damages remedy under Bivens.

For the foregoing reasons, the court dismisses Count I to the extent Harper seeks money damages from the John Doe defendants named in their individual capacities.

2. Applicability of Bivens to Count II (Procedural Due Process)

As with Count I, the government argues that Count II, which raises a claim for violation of Harper's due process rights under the Fifth Amendment, extends Bivens to a new context and that special factors counsel against expansion.  Harper responds that, in Davis v. Passman, 442 U.S. 228 (1979), the Supreme Court recognized a Bivens remedy for Fifth Amendment violations such that his Fifth Amendment claim in Count II does not apply Bivens in a new context.

The circumstances of Harper's Fifth Amendment procedural due process claim are distinguishable from the Fifth Amendment claim in Davis.  In Davis, "the Court held that the Due Process Clause of the Fifth Amendment permitted a damages action where a staffer sued a Member of Congress for cashiering her because of her gender." Gonzalez v. Velez, 864 F.3d 45, 53 (1st Cir. 2017).  By contrast, here, Harper asserts that unidentified government agents deprived him of a property right that he held in his financial records or the privacy thereof by seizing those records without providing him sufficient notice and an

opportunity to challenge the seizure.  The equal-protection type
claim made in Davis was unlike the procedural due process claim
made by Harper here.  See Air Sunshine, Inc. v. Carl, 663 F.3d
27, 33-34 (1st Cir. 2011) ("While the Supreme Court has extended
Bivens to the Due Process Clause, it has only done so in the
context of '[t]he equal protection component' of that clause.")
(quoting Davis, 442 U.S. at 235).  Therefore, Davis does not
suffice to bring Harper's claim within an existing context in
which a Bivens action has been recognized.[5]

For the same reasons as discussed above as to Count I, the
court finds that special factors counsel against extending the
Bivens remedy.  Specifically, the existence of a remedial scheme
under the Internal Revenue Code for violations of the law and
Congress's hesitancy to allow injunctions or declaratory
judgments that would interfere with the collection of taxes
counsel against implying a money damages remedy under the same
circumstances.  Therefore, the court dismisses Count II of

---

[5] Harper also cites Abdelfattah v. U.S. Dep't of Homeland
Sec., 787 F.3d 524, 533-34 (D.C. Cir. 2015), in support of his
argument his claim does not extend Bivens into a new context.
Abdelfattah is not relevant to this issue, however, because it
rejected the plaintiff's damages claim under Bivens, while
allowing a claim for a declaratory relief requiring the
Department of Homeland Security to expunge certain information
it had collected.  See id.  The court addressed Harper's claims
for declaratory and injunctive relief above in Part A.

Harper's complaint to the extent it raises a claim for money damages against the John Doe defendants named in their individual capacities.

## Conclusion

For the foregoing reasons, the government's motion to dismiss (doc. no. 12) is granted.  Counts I and II, to the extent injunctive or declaratory relief is sought from any defendant or money damages are sought from Commissioner Rettig and the IRS, are dismissed for lack of jurisdiction.  Counts I and II, to the extent money damages are sought from John Does 1 through 10, are dismissed for failure to state a claim upon which relief can be granted.  Count III is dismissed for lack of jurisdiction.

Because all claims in this case have been dismissed, the Clerk of Court is directed to close the case.

SO ORDERED.

_Joseph A. DiClerico, Jr._
Joseph A. DiClerico, Jr.
United States District Judge

March 23, 2021

cc:   Counsel of Record