IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| JAMES HARPER, | ) | |
| | ) | Case No. 1:20-cv-771-JL |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHARLES P. RETTIG, in his official | ) | |
| capacity as COMMISSIONER INTERNAL | ) | |
| REVENUE SERVICE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**BRIEF IN SUPPORT OF
RENEWED MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Respectfully Submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General
U.S. Department of Justice,
Tax Division

/s/ Edward J. Murphy
EDWARD J. MURPHY
RYAN D. GALISEWSKI
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C.  20044
Tel: (202) 307-6064 / (202) 305-3719
Fax: (202) 514-5238
Edward.J.Murphy@usdoj.gov
Ryan.D.Galisewski@usdoj.gov

i

<u>TABLE OF CONTENTS</u>

I.      Introduction……………………………………………………………………...1

II.     Background…………………………………………………………………...2

    A.      The IRS John Doe Summons Procedures………………………………………2

    B.      The Coinbase John Doe Summons…………………………………………..4

    C.      The IRS's Review of the Coinbase Information and Letter to Plaintiff…..……5

    D.      The Allegations in Plaintiff's Complaint…………………………………………6

    E.       The First Motion to Dismiss and District Court Decision………………………..9

    F.      The Appeal and First Circuit Opinion……………………………………... 10

    G.      Proceedings on Remand………………….………………………………11

III.    Argument………………………………...………………………………… 11

    A.      The Court Can Take Judicial Notice of the *Coinbase* Proceedings and
         Need Not Credit Plaintiff's Speculative and Conclusory Allegations…………...11

    B.      Count I Fails to State a Claim of a Fourth Amendment Violation……………… 13

        1.      Probable Cause Was Not Required Before the IRS Obtained
             Information From Coinbase Regarding Plaintiff's Virtual
             Currency Transactions……………………………………………...13

        2.      The Third-Party Doctrine Precludes Any Privacy Right…………..……..15

        3.      Plaintiff's Contract with Coinbase Did Not Create a Reasonable
             Expectation of Privacy in the Information Obtained by the IRS………...18

        4.      Plaintiff's Property Rights Theory Is Meritless...………………………20

    C.      Count II Fails to State a Claim of a Fifth Amendment Violation………………..20

    D.      Count III Fails to State a Claim for a Violation of § 7609(f)……………………… 23

IV.     Conclusion…………………………………………………………………… 25

TABLE OF AUTHORITIES

Cases

*A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77 (1st Cir. 2013)…………………….……..10

*Air Sunshine, Inc. v. Carl*, 663 F.3d 27 (1st Cir. 2011)……………………………………….21

*Artuso v. Vertex Pharm., Inc.*, 637 F. 3d 1 (1st Cir. 2011)………………………….....……11-12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)……………………………………………………11, 13

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)………8

*Boaten v. InterAmerican Univ., Inc*, 210 F.3d 56 (1st Cir. 2000)………………………………..12

*Carpenter v. United States*, 138 S. Ct. 2206  (2018)………………………………...14, 17, 18, 20

*Dugan v. Rank*, 372 U.S. 609 (1962)……………………………………………………….1 n.2

*Florida v. Jardines*, 569 U.S. 1 (2013)……………………………………………….…..20

*Fritz v. Brown*, No. 06-cv-469-PB, 2007 WL 2585083 (D.N.H. Aug. 29, 2007)………..…….12

*Giragosian v. Ryan*, 547 F.3d 59 (1st Cir. 2008)……………………………………………...12

*Gonzalez-Droz v. Gonzalez-Colon*, 660 F.3d 1 (1st Cir. 2011)…………………………………23

*Harper v. Rettig*, 46 F.4th 1 (1st Cir. 2022)…………………………………………………..10-11

*In re Tax Liabilities of John Does, All Unknown Employees of Boundary Waters Restaurant v. United States*, 866 F.2d 1015 (8th Cir. 1989)……………………………………..25

*Isaacs v. Trustees of Dartmouth College*, Civil No. 17-cv-040-LM, 2018 WL 734182 (D.N.H. Feb. 5, 2018)……………………………………………………………....……13

*Johnson v. Duxbury, Mass.*, 931 F.3d 102 (1st Cir. 2019)………………………………..14, 16

*Maravelias v. Justices of N.H. Supreme Court*, Case No. 19-cv-487-SM, 2020 WL 4719659 (D.N.H. Aug. 13, 2020)……………………………………….…………12

*Mathews v. Eldridge*, 424 U.S. 319 (1976)…………………………………………....20, 21, 22

*Matter of Does*, 688 F.2d 144 (2d Cir. 1982)……………....………………………………… 24

*McCabe v. Life-Line Ambulance Serv., Inc.*, 77 F.3d 540 (1st Cir. 1996)………………….....14

*Pearce v. Miele*, No. 3:13-cv-01580, 2015 WL 4546114 (D. Conn. July 28, 2015)……………..…21

*Perrier-Bilbo v. United States*, 954 F.3d 413 (1st Cir. 2020)……………………………………..20, 21

*Phillips v. Comm'r*, 283 U.S. 589 (1931)……………………………………………………………..23

*Presley v. United States*, 895 F.3d 1284 (11th Cir. 2018)……………………………………………14

*Ruggers, Inc. v. United States*, 736 F. Supp. 2d 336 (D. Mass. 2010)…………………………..…13

*Smith v. Maryland*, 442 U.S. 735 (1979)…………………………………….……14, 15, 16, 17, 20, 21

*Sugarloaf Funding, LLC v. U.S. Dept. of Treas.*, 584 F.3d 340 (1st Cir. 2009)…………..…..2, 5

*Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310 (1985)…………………….……..……3, 22

*United States v. Allee*, 888 F.2d 208 (1st Cir. 1989)…………………………………………………14

*United States v. Arthur Young & Co.*, 465 U.S. 805 (1984)……………………………………..2, 15

*United States v. Bisceglia*, 420 U.S. 141 (1975)…………………………………….……15, 22

*United States v. Boruff*, 909 F.2d 111 (5th Cir. 1990)……………………………………………...19

*United States v. Coinbase, Inc.*, Case No. 3:17-cv-01431, 2017 WL 5890052
(N.D. Cal. Nov. 28, 2017)……………………………………………………....5, 14, 16, 22, 23

*United States v. Dorais*, 241 F.3d 1124 (9th Cir. 2001)…………………………………………....19

*United States v. Gertner*, 65 F.3d 963 (1st Cir. 1995)………………………….………..…..3, 22

*United States v. Gratkowski*, 964 F.3d 307 (5th Cir. 2020)…………………………………17-18

*United States v. Hood*, 920 F. 3d 87 (1st Cir. 2019)…………………………………………...17

*United States v. John G. Mutschler & Assocs., Inc.*, 734 F.2d 363 (8th Cir. 1984)………..……24

*United States v. Jones*, 565 U.S. 400 (2012)…………………………………….…………20

*United States v. Miller*, 425 U.S. 435 (1976)……………………………..…15, 16, 17, 18, 20, 21

*United States v. Pittsburgh Trade Exch. Inc.*, 644 F.2d 302 (3d Cir. 1981)…………………..…24

*United States v. Powell*, 379 U.S. 48 (1964)…………………………………...4, 5, 14, 15, 23, 24

*United States v. Samuels, Kramer & Co.*, 712 F.2d 1342 (9th Cir. 1983)……………………….24

*United States v. Schutterle*, 586 F.2d 1201 (8th Cir. 1978)…………………………..…………21

*United States v. Warshak*, 631 F.3d 266 (6th Cir. 2010)………………………………………...19

*United States v. William*, 603 F.3d 66 (1st Cir. 2010)……………………………………...…14

*Vander Luitgaren v. Sun Life Assur. Co. of Canada*, 765 F.3d 59 (1st Cir. 2014)……………...24

*Wilson v. First Gibraltar Bank, F S B, Arlington, Tex.*, 22 F.3d 1095 (Table),
1994 WL 199108 (5th Cir. 1994)…………………………………………………….…………21

*Zell v. Ricci*, 957 F.3d 1 (1st Cir. 2020)………………………………………………………12

*Zenon v. Guzman*, 924 F.3d 611 (1st Cir. 2019)……………………………………………12

*Zietzke v. United States*, 426 F. Supp. 3d 758 (W.D. Wash. 2019)……………………………...18

*Zietzke v. United States*, No. 19-CV-03761, 2020 WL 264394 (N.D. Cal. Jan. 17, 2020),
*report and recommendation adopted*, 2020 WL 6585882 (N.D. Cal. Nov. 10, 2020)…………..18

<u>Internal Revenue Code (26 U.S.C.)</u>

§ 7601(a)…………………………………………………………………………………....2

§ 7602(a)………………………………………………………………………………2, 15

§ 7602(b)…………………………………………………………………………………15

§ 7604(b)………………………………………………………………………………..23

§ 7609(a)……………………………………………………………………3, 21, 22, 23

§ 7609(a)(1)……………………………………………………………………………....3

§ 7609(b)………………………………………………………………………………..3

§ 7609(b)(1)……………………………………………………………………………...24

§ 7609(b)(2)………………………………………………………………………….....24

§ 7609(b)(2)(A)…………………………………………………………………………...3

§ 7609(c)………………………………………………………………………………..3

§ 7609(f)……………………………………………………………………………passim

§ 7609(f)(1)……………………………………………………………………..9, 24, 25

§ 7609(f)(2)……………………………………………………………...……25

§ 7609(f)(3)………………………………………………………………....25

§ 7609(h)(2)…………………………………………………………...………3, 22

<u>Other Authorities</u>

Fed. R. Civ. P. 12(b)(1)…………………………………………………..1, 9, 10 n.6, 11

Fed. R. Civ. P. 12(b)(6)………………………………...…1, 9, 10 & n.6, 11, 12, 13, 25

Fed. R. Civ. P. 17(d)……………………………………………………..1 n.2

Fed. R. Civ. P. 24………………………………………………...………23

Fed. R. Civ. P. 25(d)………………………………………………..…1 n.2

IR-2019-132, https://www.irs.gov/newsroom/irs-has-begun-sending-letters-to-virtual-currency-owners-advising-them-to-pay-back-taxes-file-amended-returns-part-of-agencys-larger-efforts [perma: https://perma.cc/9UPH-2MQ5]…………………………………………………….6

IRS Notice 2014-21……………………………………………………...25

U.S. Const. Amend. IV……………………………………………………..14

## I.    Introduction

Plaintiff James Harper ("Plaintiff") filed a three-count Complaint asserting violations of the Fourth Amendment, the Fifth Amendment, and § 7609(f),[1] and seeking damages and injunctive and declaratory relief, all in connection with the IRS's obtaining information about his virtual currency transactions. He named as defendants Charles P. Rettig, in his official capacity as Commissioner of the Internal Revenue Service, the IRS, and unknown IRS agents (John Does 1-10). The United States, as the real party in interest,[2] moved to dismiss under Fed. R. Civ. P. 12(b)(1) and (b)(6) for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. The District Court (DiClerico, J.) granted the motion, dismissing the damages claims against John Doe IRS agents for failure to state a claim and dismissing all other claims for lack of jurisdiction. The Court did not rule on the motion to dismiss the declaratory and injunctive relief claims under 12(b)(6). Plaintiff appealed the dismissal of the claims for injunctive and declaratory relief but not the dismissal of the damages claims. On August 18, 2022, the U.S. Court of Appeals for the First Circuit vacated the jurisdictional ruling and remanded to the District Court to decide in the first instance whether the claims for injunctive and declaratory relief state a claim. The United States now renews its 12(b)(6) motion.

Plaintiff's claims that the IRS violated his constitutional and statutory rights are meritless. The IRS obtained information about his transactions through a judicially enforced John Doe Summons served on Coinbase, Inc., a virtual currency exchange. Plaintiff's speculative

---

[1] All unaltered "§" references in this brief are to the Internal Revenue Code, 26 U.S.C.

[2] To the extent relief requested in a complaint, if granted, would restrain the federal government from action or interfere with public administration, the suit constitutes an action against the United States. *Dugan v. Rank*, 372 U.S. 609, 620 (1962). Also, Mr. Rettig is no longer the Commissioner of Internal Revenue. He has been replaced by Acting Commissioner Douglas O'Donnell. *See* Fed. R. Civ. P. 17(d) and 25(d). Further, the only claims against John Doe IRS agents 1-10 were previously dismissed and not appealed.

allegations that the IRS may have obtained information from elsewhere, or by other means, are entitled to no weight. Nor does Plaintiff have a protected property interest in the business records of Coinbase (or any other exchange) on which he can state a claim under the Fourth or Fifth Amendment. The Coinbase summons complied with all of the statutory procedures, which are constitutionally adequate. Accordingly, Plaintiff's remaining claims should be dismissed.

## II.     Background

## A.     The IRS John Doe Summons Procedures

The IRS is statutorily required to have its employees "proceed, from time to time, through each internal revenue district and inquire after and concerning all persons therein who may be liable to pay any internal revenue tax[.]" § 7601(a). To this end, the IRS has broad investigative powers "for the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . . , or collecting any such liability[.]" § 7602(a). The IRS "is authorized" as follows:

> (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
>
> (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and
>
> (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

*Id*. All told, "[t]he IRS has 'expansive information gathering authority' to determine tax liability under the Internal Revenue Code, including by issuance of summonses to taxpayers and third-party record holders." *Sugarloaf Funding, LLC v. U.S. Dept. of Treas.*, 584 F.3d 340, 345 (1st Cir. 2009) (quoting *United States v. Arthur Young & Co.*, 465 U.S. 805, 816 (1984)).

When issuing an administrative summons to a third party, the IRS generally must give notice to the taxpayer, who then has a right to file a petition in court seeking to quash the summons. § 7609(a)(1), (b)(2)(A). However, the third-party notice rules do not apply to certain summonses, including a so-called "John Doe summons," § 7609(c), defined as a summons that "does not identify the person with respect to whose liability the summons is issued," § 7609(f). Instead, a John Doe summons "may be served only after a court proceeding" establishing these three numbered elements:

> (1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,
>
> (2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and
>
> (3) the information sought to be obtained from the examination of the records or testimony (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.

§ 7609(f).[3] This proceeding is necessarily ex parte because the point of a John Doe summons is to allow the IRS to obtain information when the identity of the taxpayer is unknown. *See* § 7609(h)(2) (stating that the court's determination under § 7609(f) "shall be made ex parte and shall be made solely on the petition and supporting affidavits").

The court in this ex parte proceeding effectively serves the same function as a taxpayer in a § 7609(b)(2)(A) petition to quash. *See Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 317 (1985) ("As a substitute for the procedures of §§ 7609(a) and (b), Congress enacted § 7609(f)[.]"); *United States v. Gertner*, 65 F.3d 963, 965 n.1 (1st Cir. 1995) ("[T]he court in effect 'takes the place of the affected taxpayer' who, being unnamed, cannot herself be expected to know about—let alone to oppose—the summons even if it is irregular." (quoting *Tiffany Fine Arts*, 469 U.S. at 321)).

---

[3] As of 2019, § 7609(f)'s new flush language also requires that the summons be "narrowly tailored to information that pertains to the failure (or potential failure) of the person or group or class of persons referred to in paragraph (2) to comply with one or more provisions of the internal revenue law which have been identified for purposes of such paragraph." This requirement does not apply to the Coinbase John Doe summons at issue here, which was issued prior to the 2019 amendment.

B.       **The Coinbase John Doe Summons**

On November 17, 2016, the United States filed a petition in the U.S. District Court for

the Northern District of California requesting leave, pursuant to § 7609(f), to serve a John Doe

summons on the virtual currency exchange Coinbase, Inc. ("Coinbase"). Ex. 1. The case was

*United States v. John Doe*, Case No. 3:16-cv-06658-JSC (N.D. Cal.). The petition explained that

the IRS was trying "to determine the correct federal income tax liabilities for taxable years 2013-

2015 of United States taxpayers who have conducted transactions in a 'convertible virtual

currency,'" a group that had "not been or may not be complying with U.S. internal revenue laws

requiring the reporting of taxable income from virtual-currency transactions." Ex. 1. A brief in

support of the petition explained why the summons satisfied the § 7609(f) criteria. Ex. 2.

The court agreed and, by Order dated November 30, 2016, granted the United States'

petition for leave to serve the John Doe summons on Coinbase. Ex. 3. The Order stated that:

> the Court has determined that the 'John Doe' summons to Coinbase, Inc. relates
> to the investigation of an ascertainable group or class of persons, that there is a
> reasonable basis for believing that such group or class of persons has failed or
> may have failed to comply with any provision of any internal revenue laws, and
> that the information sought to be obtained from the examination of the records or
> testimony (and the identities of the persons with respect to whose liability the
> summons is issued) are not readily available from other sources.

The IRS then served the summons, and when Coinbase did not comply, the United States

filed a separate summons-enforcement petition on March 16, 2017. Ex. 4. That case was *United

States v. Coinbase, Inc.*, Case No. 17-cv-01431 (N.D. Cal.). The petition alleged that the United

States satisfied the four-factor test for enforcement of an IRS summons outlined in *United States

v. Powell*, 379 U.S. 48, 57-58 (1964), based on the declaration of an IRS Revenue Agent. Ex. 4,

¶ 15 and Declaration. Those four *Powell* factors are "[1] that the investigation will be conducted

pursuant to a legitimate purpose, [2] that the inquiry may be relevant to the purpose, [3] that the

information sought is not already within the Commissioner's possession, and [4] that the

administrative steps required by the Code have been followed." *Sugarloaf*, 584 F.3d at 345

(quoting *Powell*, 379 U.S. at 57-58). During the course of the summons enforcement proceeding,

the government agreed to limit the scope of some of its summons requests. Ex. 5.

Nonetheless, certain John Does moved to intervene in order to oppose enforcement of the

summons. Ex. 6. Intervention was allowed over the United States' objection. Ex. 7. Additionally,

multiple amicus briefs were filed in the case. The Plaintiff in this action, James "Jim" Harper, is

one of four attorneys who signed an amicus brief that was filed on behalf of the Competitive

Enterprise Institute in the summons-enforcement action. Ex. 8. That amicus brief argued that the

summons violated the privacy interests and due process rights of Coinbase users. *See id*.

On November 28, 2017, the court granted the enforcement petition in part and denied it

in part. *United States v. Coinbase, Inc.*, Case No. 3:17-cv-01431, 2017 WL 5890052 at *8-9

(N.D. Cal. Nov. 28, 2017). The Order required Coinbase to turn over "documents for accounts

with at least the equivalent of $20,000 in any one transaction type (buy, sell, send, or receive) in

any one year during the 2013 to 2015 period." For each account, the IRS was entitled to: (1) the

taxpayer ID number; (2) name; (3) birth date; (4) address; (5) records of account activity,

including transaction logs or other records identifying the date, amount, and type of transaction

(purchase/sale/exchange), the post transaction balance, and the names of counterparties to the

transaction; and (6) all periodic statements of account or invoices (or the equivalent). *Id*.

**C.     The IRS's Review of the Coinbase Information and Letter to Plaintiff**

The IRS reviewed information received from Coinbase pursuant to the summons.

With respect to Plaintiff, the transaction information showed that Plaintiff sold significant

amounts of the virtual currency bitcoin during 2013-15, but his tax returns did not

disclose the full proceeds of those transactions. Ex. 9: U.S. Interrogatory Responses.

Based on this review, IRS sent Plaintiff a form letter (Letter 6174-A) dated August 9,

5

2019, that said: "We have information that you have or had one or more accounts containing virtual currency but may not have properly reported your transactions[.]" ECF No. 3-6. The letter added, "if you believe you didn't accurately report your virtual currency transactions on a federal income tax return, you should file amended returns or delinquent returns. . . . If you do not accurately report your virtual currency transactions, you may be subject to future civil and criminal enforcement activity." *Id*.

Two weeks prior to the date of this letter, the IRS had announced in a news release dated July 26, 2019, that it had "begun sending letters to taxpayers with virtual currency transactions that potentially failed to report income and pay the resulting tax from virtual currency transactions or did not report their transactions properly." IR-2019-132, https://www.irs.gov/newsroom/irs-has-begun-sending-letters-to-virtual-currency-owners-advising-them-to-pay-back-taxes-file-amended-returns-part-of-agencys-larger-efforts [perma: https://perma.cc/9UPH-2MQ5]  "By the end of August," the release stated, "more than 10,000 taxpayers will receive these letters."

### D.     The Allegations in Plaintiff's Complaint

On July 15, 2020, Plaintiff filed a three-count complaint in this Court, alleging violations of the Fourth Amendment (Count I), the Fifth Amendment (Count II) and § 7609(f) (Count III). ECF No. 1. He filed an Amended Complaint on August 5, 2020, which is the currently operative pleading. ECF No. 3 (hereinafter, "Complaint").

According to the Complaint, Plaintiff received the IRS's letter of August 9, 2019, "informing him that his financial records related to ownership of bitcoin had been obtained." Complaint ¶ 2. Plaintiff alleges that he opened an account with Coinbase in 2013 and that Coinbase agreed to keep his information private. *Id*. ¶¶ 18-28. He quotes part of Coinbase's privacy policy that said it may share "personal information," including "information that can be

associated with a specific person and can be used to identify that person," with "[l]aw

enforcement, government officials, or other third parties" when Coinbase is "compelled to do so

by a subpoena, court order, or similar legal procedure." Complaint ¶¶ 21, 28 (quoting ECF Nos.

3-1 and 3-2). In addition, Coinbase's privacy policy allowed it to share "personal information" if

it believed "in good faith that the disclosure of personal information is necessary to . . . report

suspected illegal activity." *Id*. ¶ 28. Plaintiff claims he disclosed his Coinbase transactions on his

tax returns and paid the correct tax on them for the years 2013-2016, with 2016 the last year he

had any holdings with Coinbase. *Id*. ¶¶ 29-37.

Plaintiff complains that he "was not provided notice of the [Coinbase John Doe]

summons or provided an opportunity directly to intervene in the petition to enforce," though he

does acknowledge his participation in the amicus filing. *Id*. ¶¶ 50, 51. He contends that the

District Court there applied an incorrect legal standard in evaluating the summons. *Id*. ¶ 53.

After 2016, the Complaint alleges, Plaintiff "liquidated bitcoin through either Abra or

Uphold digital exchanges," which he says made contractual promises to keep his information

private. *Id*. ¶¶ 56-63.[4] As with Coinbase, Plaintiff asserts that he properly reported his virtual

currency transactions with Abra and Uphold for the tax years 2016-19 and paid the correct tax.

*Id*. ¶¶ 64-65. Because he allegedly did not engage in virtual currency transactions with anyone

other than these three exchanges, Plaintiff infers, "[o]n information and belief," that "Abra,

Coinbase and/or Uphold may have violated their respective terms of service in providing Mr.

Harper's financial records referenced in IRS's August 9, 2019 letter by disclosing Mr. Harper's

records without a valid subpoena, court order, or judicial warrant based on probable cause." *Id*.

---

[4] While some speculative allegations concerning Uphold remain in the Complaint, they have no
factual basis. When amending the complaint, Plaintiff added allegations and an affidavit from
Uphold's Secretary and Head of Legal and Regulatory Affairs stating that Uphold has no record
of any request by Defendants related to Plaintiff or any information relating to Plaintiff having
been disclosed to the Defendants. Complaint ¶¶ 71-74 and ECF No. 3-8.

¶ 80.[5] He further assumes, "[o]n information and belief," that "John Doe IRS Agents 1 through 10 issued an informal demand for Mr. Harper's financial records to Abra, and/or Coinbase, with which one or more of the exchanges complied." *Id.* ¶¶ 76, 100, 124.

Throughout his Complaint, Plaintiff alleges that he "has accurately reported his virtual currency transactions for all applicable tax years." *Id.* ¶¶ 75, 99, 123, 140. He also repeatedly claims that Coinbase's terms of service (*see* ECF Nos. 3-1 and 3-2) prohibited Coinbase from turning over his records unless "compelled to do so by a subpoena, court order or similar legal procedure." *Id.* ¶¶ 28, 95, 119. He asserts multiple times that the IRS "did not obtain a subpoena" prior to receiving the records of his transactions (*id.* ¶¶ 79, 103, 126), and that he "never received any notice of a third-party summons from IRS pursuant to 26 U.S.C. § 7609(a)" (*id.* ¶¶ 81, 105, 127, 142). He repeats, "[u]pon information and belief," that the IRS made "unlawful seizures related to more than 10,000 taxpayers." *Id.* ¶ 110; *see also id.* ¶¶ 133 and 145.

In Count I, Plaintiff alleges that the IRS "violated the Fourth Amendment by seizing Mr. Harper's private financial information from Abra and/or Coinbase without first acquiring a warrant based on probable cause." *Id.* ¶ 106. To the extent the summons statute "allowed" the IRS to obtain the information about Plaintiff's virtual currency transactions, he contends that "the statute is unconstitutional as applied to Mr. Harper under the Fourth Amendment." *Id.* ¶ 107. Count I seeks damages against unnamed IRS agents under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (Complaint ¶ 112), as well as "declaratory and injunctive relief, including an order expunging Mr. Harper's private financial information from IRS's records." *Id.*, prayer for relief after ¶ 112.

Count II alleges that the IRS "violated the Due Process Clause of the Fifth Amendment

---

[5] In ¶ 104, Plaintiff makes the same allegation without the "information and belief" or "may have" qualifiers, and omitting Uphold, saying "Abra and/or Coinbase violated their respective terms of service." Then ¶ 128 is identical to ¶ 104 except it adds back the "may have" qualifier.

by seizing Mr. Harper's intangible property rights in his private financial information from Abra, Coinbase and/or Uphold without first providing him notice and an opportunity to challenge the seizure of his property." *Id*. ¶ 129. As in Count I, Plaintiff asserts that, to the extent the summons statute "allowed" IRS to obtain information about his virtual currency transactions, "the statute is unconstitutional as applied to Mr. Harper under the Fifth Amendment's Due Process Clause." *Id*. ¶ 130. To remedy this alleged Fifth Amendment violation, Plaintiff again requests "damages" under *Bivens* (*id*. ¶ 135) and "declaratory and injunctive relief, including an order expunging Mr. Harper's private financial information from IRS's records." *Id*., prayer for relief after ¶ 135.

In Count III, alleging a violation of § 7609(f), Plaintiff says the IRS "obtained Mr. Harper's financial records through an unlawful John Doe subpoena." *Id*., p. 24 (Count III heading, capitalization omitted). His argument is that "[t]he John Doe summons issued to Abra and/or Coinbase did not relate to a particular person or ascertainable group or class of persons as required by statute" (*id*. ¶ 143), a reference to § 7609(f)(1). He criticizes the IRS for supposedly obtaining records of "innocent owners of virtual currencies" like himself, and doing so without "a reasonable basis for believing that Mr. Harper failed to comply with any provision of any internal revenue law." *Id*. ¶ 144. Count III again seeks "a declaratory judgment and injunctive relief against Defendants, including an order expunging Mr. Harper's private financial information from IRS's records," but no damages. *Id*., prayer for relief after ¶ 143.

### E.     The First Motion to Dismiss and District Court Decision

On December 4, 2020, the United States moved to dismiss Harper's suit for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). ECF Nos. 12, 12-1. Plaintiff opposed the motion, and the United States replied. ECF Nos. 14, 16.

On March 23, 2021, the Court granted the motion to dismiss. ECF No. 17. With respect

to the damages claims, the Court dismissed Counts I and II for lack of jurisdiction "to the extent Harper seeks money damages from the IRS or Commissioner Rettig" because "*Bivens* does not provide an exception to sovereign immunity for suits against the United States or official-capacity defendants for money damages" and Plaintiff identified no other exception allowing such claims. *Id*. at 8, 23. The Court separately analyzed Plaintiff's claims under *Bivens* in Counts I and II for damages against unknown IRS agents in their personal capacities. *Id*. at 15-23. The Court ultimately dismissed these claims against John Doe defendants for violations of the Fourth and Fifth Amendments "for failure to state a claim upon which relief can be granted." *Id*. at 23.

The Court also found that "[t]he Anti-Injunction Act applies to Harper's claims for declaratory and injunctive relief because they implicate provisions of the Internal Revenue Code and would restrain the assessment or collection of a tax." *Id*. at 11. In this regard, "Harper's allegation that he paid all taxes that were due is an unsupported conclusory statement and not well pled." *Id*. at 13 (citing *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013)). Accordingly, the Court dismissed the claims for injunctive and declaratory relief in all three counts for lack of jurisdiction, and it did not reach the alternative argument that these claims should be dismissed under Rule 12(b)(6). *See id*. at 23. Because these rulings disposed of all claims in the case, the Court entered a final judgment in the United States' favor. ECF No. 18.

## F.   The Appeal and First Circuit Opinion

Plaintiff appealed the dismissal of his claims for injunctive and declaratory relief, but not for damages. His Appellant Brief (Ex. 10, hereinafter "App. Br.") set forth his legal argument.[6]

The First Circuit panel issued its opinion and judgment on August 18, 2022. *Harper v.*

---

[6] Plaintiff clarified on appeal that he was not challenging "the district court's FRCP 12(b)(1) dismissal of Counts I and II to the extent money damages are sought from IRS and its Commissioner" or "the district court's FRCP 12(b)(6) dismissal of Counts I and II to the extent money damages are sought from John Doe IRS Agents 1 through 10." App. Br. at 6.

*Rettig*, 46 F.4th 1 (1st Cir. 2022). The panel concluded that the Anti-Injunction Act "does not bar appellant's suit and the district court's judgment of dismissal under Federal Rule of Civil Procedure 12(b)(1) must be vacated." *Id*. at 9. The opinion's final paragraph added that the panel declined to consider the government's alternative arguments for dismissal under Rule 12(b)(6) because they had not been addressed by the District Court. "We therefore vacate the judgment of dismissal for lack of subject matter jurisdiction and remand to the district court to consider, in the first instance, whether appellant has stated a claim on which relief can be granted." *Id*.

### G. Proceedings on Remand

On November 20, 2022, Plaintiff served interrogatories and document requests. By Order dated November 29, 2022, the Court required the United States to respond to seven interrogatories and five document requests selected by Plaintiff. By agreement of the parties, the United States is serving its responses upon Plaintiff simultaneously with this motion. While nothing in those responses is relevant to this motion, and the United States does not rely upon them, we note that the responses state (i) that the IRS obtained information about Plaintiff's virtual currency transactions from Coinbase only, and not from any other virtual currency exchange, and (ii) that the basis for the statement in the IRS's August 9, 2019 letter to Plaintiff that he may not have properly reported his virtual currency transactions was the IRS's review of information provided by Coinbase in response to the John Doe summons and Plaintiff's own tax return information. Ex. 9: U.S. Interrogatory Responses (response #1).

### III. Argument

### A. The Court Can Take Judicial Notice of the *Coinbase* Proceedings and Need Not Credit Plaintiff's Speculative and Conclusory Allegations

To avoid dismissal under Rule 12(b)(6), a claim must be "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must "accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Artuso v.*

*Vertex Pharm., Inc.*, 637 F. 3d 1, 5 (1st Cir. 2011). "In other words, the complaint must include well-pled (i.e., non-conclusory, non-speculative) factual allegations that, if assumed to be true, allow the court to draw the reasonable and plausible inference that the plaintiff is entitled to the relief sought." *Maravelias v. Justices of N.H. Supreme Court*, Case No. 19-cv-487-SM, 2020 WL 4719659 at *1 (D.N.H. Aug. 13, 2020). The First Circuit "has instructed that" courts "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements, then take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Zell v. Ricci*, 957 F.3d 1, 7 (1st Cir. 2020) (cleaned up).

In applying this standard, the Court is not writing on an entirely clean slate. Judge DiClerico previously found that Plaintiff's "allegation that he paid all taxes that were due is an unsupported conclusory statement and not well pled." ECF No. 17 at 13. The Court should thus not assume this allegation to be true in evaluating whether Plaintiff has stated a claim.

Further, the Court "may consider not only the complaint but also matters fairly incorporated within it and matters susceptible to judicial notice without converting the motion to dismiss into a motion for summary judgment." *Zenon v. Guzman*, 924 F.3d 611, 616 (1st Cir. 2019) (quotation omitted). Items "susceptible to judicial notice" include "matters of public record such as documents from prior court proceedings." *Fritz v. Brown*, No. 06-cv-469-PB, 2007 WL 2585083 at *1 (D.N.H. Aug. 29, 2007) (citing *Boaten v. InterAmerican Univ., Inc*, 210 F.3d 56, 60 (1st Cir. 2000)); *see also Giragosian v. Ryan*, 547 F.3d 59, 66 (1st Cir. 2008) ("A court may consider matters of public record in resolving a Rule 12(b)(6) motion to dismiss."). That means that materials from both prior *Coinbase* cases in the Northern District of California can be considered by the Court in evaluating the motion to dismiss.

Additionally, an allegation based on "information and belief," when not accompanied by

12

factual allegations to support that belief, is insufficient to meet the 12(b)(6) plausibility standard. *See Isaacs v. Trustees of Dartmouth College*, Civil No. 17-cv-040-LM, 2018 WL 734182 at *13 (D.N.H. Feb. 5, 2018); *see also Ruggers, Inc. v. United States*, 736 F. Supp. 2d 336, 343 (D. Mass. 2010) ("mere suspicion alone" is not enough). Therefore, the Court need not credit the Plaintiff's unsupported speculation that the IRS "issued an informal demand for Mr. Harper's financial records" to any virtual currency exchange. Complaint ¶¶ 76, 100, 124. Here, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (cleaned up). The only plausible inference based on Plaintiff's well-pleaded factual allegations is that the IRS's August 9, 2019 letter (which is the basis for the only factual allegations concerning information being in IRS's possession) was based on information received from Coinbase in response to the court-ordered John Doe summons.[7] For this reason, the Court should dismiss Plaintiff's claims that are not related to the Coinbase summons.

### B.    Count I Fails to State a Claim of a Fourth Amendment Violation

Plaintiff's claim that the IRS violated the Fourth Amendment lacks any merit. The Supreme Court has long held that no probable-cause standard applies to IRS summonses. Under the third-party doctrine, Plaintiff also lacked any Fourth Amendment privacy interest in Coinbase's records. Furthermore, and contrary to Plaintiff's claims, Coinbase's privacy policies expressly permitted disclosure to the IRS in response to the summons-enforcement order. That disclosure did not transgress Plaintiff's property rights either.

### 1.    Probable Cause Was Not Required Before the IRS Obtained Information From Coinbase Regarding Plaintiff's Virtual Currency Transactions

The Fourth Amendment protects "[t]he right of the people to be secure in their persons,

---

[7] The interrogatory response supports this inference as well. *See* Ex. 9 (responses #1 and #2).

houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV.

Its "basic purpose . . . is to safeguard the privacy and security of individuals against arbitrary

invasions by governmental officials." *Carpenter v. United States*, —U.S.—, 138 S. Ct. 2206,

2213 (2018) (quotation omitted). To determine if government action constitutes a search or

seizure, courts must assess whether the action invades "a justifiable, a reasonable, or a legitimate

expectation of privacy." *Smith v. Maryland*, 442 U.S. 735, 740 (1979) (cleaned up). Courts

consider whether an individual alleging a Fourth Amendment violation "exhibited an actual

(subjective) expectation of privacy," and, if so, whether that "subjective expectation of privacy is

one that society is prepared to recognize as reasonable." *Id.* (cleaned up); *see also Carpenter*,

138 S. Ct. at 2213; *Johnson v. Duxbury, Mass.*, 931 F.3d 102, 106, 107-08 (1st Cir. 2019).

Even if government action constitutes a search or seizure, it does not violate Fourth

Amendment rights if the action was reasonable. *See United States v. William*, 603 F.3d 66, 68

(1st Cir. 2010). Outside the context of a criminal investigation, reasonableness "depends on

balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests

against the importance of the governmental interests alleged to justify the intrusion." *McCabe v.*

*Life-Line Ambulance Serv., Inc.*, 77 F.3d 540, 546-47 (1st Cir. 1996) (cleaned up).

In the IRS summons-enforcement context, "[t]he Fourth Amendment is not violated as

long as the IRS has complied with the requirements of *United States v. Powell*." *United States v.*

*Allee*, 888 F.2d 208, 213 n.3 (1st Cir. 1989); *see also Presley v. United States*, 895 F.3d 1284,

1293 (11th Cir. 2018) ("[W]hen it comes to the IRS's issuance of a summons, compliance with

the *Powell* factors satisfies the Fourth Amendment's reasonableness requirement."). In this case,

the *Coinbase* court ordered a narrowed version of the Coinbase summons enforced after finding

that it satisfied the four *Powell* factors. *See Coinbase*, 2017 WL 5890052, at *4-*8. The IRS's

subsequent receipt of records from Coinbase regarding Plaintiff's virtual currency transactions

pursuant to the summons-enforcement order therefore did not violate the Fourth Amendment.

Plaintiff alleges that the IRS needed probable cause (Complaint ¶ 106)—a "particularized suspicion" that he violated the tax laws (*id*. ¶¶ 2, 77, 101)—before obtaining the information from Coinbase. But the Supreme Court has long held that the broad investigatory authority in § 7601 (to investigate and audit persons who may be liable for taxes) and § 7602(a) and (b) (to examine records and to issue summonses) "is not limited to situations in which there is probable cause, in the traditional sense, to believe that a violation of the tax laws exists." *United States v. Bisceglia*, 420 U.S. 141, 146 (1975); *see also Arthur Young*, 465 U.S. at 813 n.10 (declining to adopt a "probable cause" standard for IRS summonses); *Powell*, 379 U.S. at 57 ("[T]he Commissioner need not meet any standard of probable cause to obtain enforcement of his summons."). This is so because "[t]he purpose of the statutes is not to accuse, but to inquire." *Bisceglia*, 420 U.S. at 146. The IRS "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Powell*, 379 U.S. at 57.

In short, regardless of whether Plaintiff had a protected interest in the Coinbase information for Fourth Amendment purposes, no probable cause was required before the IRS could lawfully obtain that information, and the existing summons procedures, with which the IRS fully complied, satisfy the Fourth Amendment's reasonableness standard. This alone is dispositive of Count I and sufficient grounds for dismissal of the Fourth Amendment claim.

### 2. The Third-Party Doctrine Precludes Any Privacy Right

In any event, Plaintiff had no Fourth Amendment privacy interest in the financial information held by Coinbase (or any other exchange) relating to his transactions. That is because "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith*, 442 U.S. at 743-44 (citing *United States v. Miller*, 425 U.S. 435, 442-44 (1976)). This principle, known as the third-party doctrine, applies "even if the

information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." *Miller*, 425 U.S. at 443.

In *Miller*, the Supreme Court held that a person lacks a reasonable expectation of privacy in bank records. As part of a tax evasion investigation, the government subpoenaed bank records for Miller. 425 U.S. at 437-38. The Court found that the "depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government." *Id.* at 443; *see also Smith*, 442 U.S. at 741-44 (citing *Miller* and determining that use of a pen register, which records the phone numbers dialed from a particular phone, is not a Fourth Amendment search). The Court recognized that, in enacting the Bank Secrecy Act, Congress assumed individuals lacked "any legitimate expectation of privacy concerning the information kept in bank records." *Miller*, 425 U.S. at 442-43. The Court also observed that bank records were "not respondent's 'private papers'" but were instead "business records of the banks." *Id.* at 440; *see also Duxbury*, 931 F.3d at 107. As such, the Government could subpoena those records without infringing on an accountholder's Fourth Amendment rights. *Miller*, 425 U.S. at 444.

The Court should reach the same result here because the Coinbase information is not meaningfully different from the traditional banking information at issue in *Miller*. The *Coinbase* enforcement order directed the exchange to produce the same identifying information—name, date of birth, address, and tax ID number—that a traditional bank would collect from a customer when opening an account. *Coinbase*, 2017 WL 5890052, at *8. Coinbase was also required to produce "records of account activity including transaction logs or other records identifying the date, amount, and type of transaction (purchase/sale/exchange), the post transaction balance, and the names of counterparties to the transaction," and "periodic statements of account or invoices (or the equivalent)." *Id.* Information regarding the purchase, sale, or exchange of virtual currency is the sort of commercial information that *Miller* held does not implicate privacy interests.

*Miller*, 425 U.S. at 442. By any measure, Plaintiff voluntarily conveyed his information to Coinbase and thus had "no legitimate expectation of privacy" in it. *Smith*, 442 U.S. at 743-44.

Plaintiff incorrectly asserts that the third-party doctrine is no longer good law, writing: "Where a person, like Mr. Harper, contracts with a third party to hold his private financial information private including against government intrusion, he does not 'voluntarily assume the risk of [the party] turning over' the data." Complaint p. 2 (quoting *Carpenter*, 138 S. Ct. at 2219). But *Carpenter* does not support Plaintiff's position. Although *Carpenter* declined to extend the third-party doctrine to the obtaining of cell site location information ("CSLI") from mobile phone records that provided a comprehensive record of a person's location over more than three months, the Supreme Court made clear that its decision was a "narrow one" limited to CSLI and expressed no view "on matters not before" the Court. *Id.* at 2220. In fact, *Carpenter* did "not disturb the application of *Smith* and *Miller*." 138 S. Ct. at 2220. The First Circuit has declined to extend *Carpenter* beyond the "unusual concern" posed by CSLI. *See United States v. Hood*, 920 F. 3d 87, 92 (1st Cir. 2019) (no reasonable expectation of privacy in Internet Protocol (IP) address or online service subscriber information).

Plaintiff's argument that *Carpenter* opens the door to allegations that users have a reasonable expectation of privacy in their virtual currency records has been rejected by every court to have considered the issue. Most notably, in *United States v. Gratkowski*, 964 F.3d 307 (5th Cir. 2020), federal agents served a grand jury subpoena on Coinbase that sought information about customers that had sent bitcoin to Coinbase. *Id.* at 309. In a subsequent search of the house of one of those customers, agents found a hard drive containing child pornography. Seeking exclusion, defendant contended that the original subpoena to Coinbase violated the Fourth Amendment. *Id.* at 310. Rejecting that contention, the Fifth Circuit held that the Coinbase data was more like bank records and telephone logs, which were not subject to Fourth Amendment

17

claims, than cellphone location data. *Id*. at 313. The court found that "Coinbase records are limited" and did not provide agents with the "intimate window of a person's life" that formed the basis of the *Carpenter* ruling. *Id*. at 312. The court also said that "Bitcoin users have the option to maintain a high level of privacy by transacting without a third-party intermediary," and that a user "may elect to sacrifice some privacy by transacting through an intermediary such as Coinbase." *Id*. Having made that election, defendant "thus lacked a privacy interest in the records of his Bitcoin transactions on Coinbase." *Id*.

Two district courts likewise have held that customers have no protected privacy interest in information held by digital currency exchanges in cases involving IRS summonses to Coinbase and another digital currency exchange for records of a taxpayer's bitcoin transactions. *See Zietzke v. United States*, 426 F. Supp. 3d 758 (W.D. Wash. 2019); *Zietzke v. United States*, No. 19-CV-03761, 2020 WL 264394 (N.D. Cal. Jan. 17, 2020), *report and recommendation adopted*, 2020 WL 6585882 (N.D. Cal. Nov. 10, 2020). Similarly here, the Court should decline Plaintiff's invitation to extend *Carpenter* into this area because the third-party doctrine remains alive and well, and it applies with full force to the Coinbase summons.

### 3. Plaintiff's Contract with Coinbase Did Not Create a Reasonable Expectation of Privacy in the Information Obtained by the IRS

Plaintiff also errs in suggesting that the third-party doctrine does not apply "when a person has entered into a contract with a third party that promises to protect his private information from such intrusion." Complaint p. 2. He alleges that he "contracted" with Coinbase (*id*. ¶ 19) and that, under the terms of that contract, Coinbase was required to protect the privacy of information regarding his bitcoin transactions (*id.* ¶¶ 24-26). But the Supreme Court has held that there is no reasonable expectation of privacy in information shared with a third party even when the information is shared "on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." *Miller*, 425 U.S. at 443. Thus,

Coinbase's privacy policy is irrelevant (as are the policies of any other exchanges).

Even if Coinbase's privacy policy were relevant, it is not as robust as Plaintiff claims. The policy states that, in certain circumstances, Coinbase may share a customer's "personal information," including "information that can be associated with a specific person and can be used to identify that person," with "[l]aw enforcement, government officials, or other third parties" when Coinbase is "compelled to do so by a subpoena, court order, or similar legal procedure." Complaint ¶¶ 21, 28 (quoting Complaint Exs. 1 and 2, ECF Nos. 3-1 and 3-2). That is precisely what Coinbase was required to do under the summons enforcement order. It is not reasonable for Plaintiff to expect that his Coinbase information will remain private when Coinbase is ordered by a court to disclose that information to the government.[8]

In his brief in opposition to the original motion to dismiss (ECF No. 14 at 27, br. at 23), and again on appeal (App. Br. at 38), Plaintiff has relied on inapposite criminal cases to argue that contractual arrangements can create a privacy interest. *See United States v. Dorais*, 241 F.3d 1124, 1130 (9th Cir. 2001); *United States v. Boruff*, 909 F.2d 111, 117 (5th Cir. 1990). Neither case addresses the third-party doctrine or financial information. Instead, both address Fourth Amendment interests related to physical intrusions on property, which did not occur here. Similarly, *United States v. Warshak*, 631 F.3d 266 (6th Cir. 2010), also cited by Plaintiff (ECF No. 14 at 27, br. at 23; App. Br. at 38-39), is inapt, because the information the IRS obtained from Coinbase did not include "confidential communications" akin to the emails, letters, or phone calls held protected in that case. *See id.* at 288.

In sum, this Court should reject Plaintiff's argument that he had a Fourth Amendment

---

[8] In addition, Coinbase's privacy policy allowed it to share "personal information" if it believed "in good faith that the disclosure of personal information is necessary to . . . report suspected illegal activity." Complaint ¶ 28. Coinbase was therefore free to share Plaintiff's "personal information" with the IRS on its own initiative, or upon a request from the IRS, if it believed "in good faith" that disclosure was necessary to report suspected illegal behavior..

right in the Coinbase information based on his contract with Coinbase.

### 4.    Plaintiff's Property Rights Theory Is Meritless

Prior briefing on the original motion to dismiss and on appeal also suggest that Plaintiff is relying on Justice Gorsuch's lone dissent in *Carpenter*, in which he explained that he would have resolved that case by applying a "bailment" theory under a "traditional" property analysis that requires a warrant before the government may obtain an individual's property. *Carpenter*, 138 S. Ct. at 2268-69 (Gorsuch, J., dissenting). *See* ECF No. 14 at 22-23 (Br. at 18-19); App. Br. at 34-35, 39. But the majority in *Carpenter* did not adopt the bailment theory, and whatever merit Plaintiff believes the theory has, it cannot withstand the *Carpenter* majority's statement confirming the continuing vitality of *Miller* and *Smith*. 138 S. Ct. at 2220. Plaintiff's prior filings have also relied on *United States v. Jones*, 565 U.S. 400 (2012), and *Florida v. Jardines*, 569 U.S. 1 (2013) (*see* ECF No. 14 at 26, Br. at 22 n.4; App. Br. at 39-40), but those cases are no help to him. Both cases addressed only physical intrusions onto property and did not address acquisition of third-party account information. *See Jones*, 565 U.S. at 404; *Jardines*, 569 U.S. at 6-7. Indeed, *Jones* made clear that it did not reach that issue. 565 U.S. at 412-13.

### C.    Count II Fails to State a Claim of a Fifth Amendment Violation

The Court should dismiss the procedural due process claim in Count II because Plaintiff does not have a protected property interest in the Coinbase records and the John Doe summons procedure the IRS followed to obtain the Coinbase information is constitutionally adequate.

Generally, "some form of hearing is required before an individual is finally deprived of a property interest." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *accord Perrier-Bilbo v. United States*, 954 F.3d 413, 433 (1st Cir. 2020). The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333. In determining whether an administrative system affords a meaningful opportunity

to be heard, "due process is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334. Nonetheless, to state a procedural due process claim, a plaintiff must (1) identify a protected liberty or property interest, and (2) allege that the defendants deprived him of that interest without constitutionally adequate process. *Air Sunshine, Inc. v. Carl*, 663 F.3d 27, 34 (1st Cir. 2011). Plaintiff fails to satisfy either element of this test.

Plaintiff had no property interest in the information that Coinbase provided to the IRS pursuant to the summons. As noted above, account and transaction information held by a digital currency exchange is the kind of information covered by the third-party doctrine set forth in *Miller* and *Smith*. That information is not akin to Plaintiff's private papers but rather is part of the third party's own business records. Courts routinely reject procedural due process claims concerning financial records obtained from third parties like Coinbase because, in light of *Miller*, there is "no property interest in the business records" of the third party. *E.g.*, *United States v. Schutterle*, 586 F.2d 1201, 1204-05 (8th Cir. 1978) (rejecting due process claim related to IRS summons of bank records); *Wilson v. First Gibraltar Bank, F S B, Arlington, Tex.*, 22 F.3d 1095 (Table), 1994 WL 199108, at *3 (5th Cir. 1994); *Pearce v. Miele*, No. 3:13-cv-01580, 2015 WL 4546114, at *3 n.3 (D. Conn. July 28, 2015). Since Plaintiff had no protected interest in the Coinbase records in the first place, this Court need not determine "whether any deprivation occurred without constitutionally adequate process." *Perrier-Bilbo*, 954 F.3d at 434.

But even if a protected interest were at stake, Plaintiff's claim would still fail at the second step of the analysis because the John Doe summons procedures that IRS followed are constitutionally adequate. The gravamen of Plaintiff's claim is that the IRS should have provided him prior notice of the John Doe summons. Indeed, the only statutory provision Count II cites as having allegedly been violated is § 7609(a),[9] which requires that the IRS give notice to "any

---

[9] Count II makes no claim about a violation of § 7609(f), which is covered by Count III.

person . . . who is identified in the summons" prior to the summons being served. *See* Complaint ¶¶ 81, 105, 127, 142. But, as an unnamed person in the John Doe summons issued to Coinbase, Plaintiff was not "identified in the summons" and thus was not entitled to notice under § 7609(a).

This makes sense: prior notice to John Does is "not possible" because their identities are unknown to the IRS when it issues the summons. *Tiffany*, 469 U.S. at 317. Recognizing this, the Supreme Court in 1975 approved the use of the John Doe summons in *Bisceglia*, 420 U.S. 141, and then Congress created procedures for its issuance and enforcement with the enactment of § 7609(f) and (h). *See Tiffany*, 469 U.S. at 315-17 (describing Congressional response to *Bisceglia*). With those procedures, Congress provided safeguards to protect taxpayers whose identities are unknown to the IRS and entrusted district courts to enforce them. § 7609(f), (h)(2); *Tiffany*, 469 U.S. at 317; *Gertner*, 65 F.3d at 972. The Supreme Court has found that § 7609(f) "provide[s] some guarantee that the information that the IRS seeks through a summons is relevant to a legitimate investigation, albeit that of an unknown taxpayer." *Tiffany*, 469 U.S. at 321. The First Circuit has also found that judicial preapproval under § 7609(f) "permits the district court to act as a surrogate for the unnamed taxpayer and to exert a restraining influence on the IRS." *Gertner*, 65 F.3d at 972 (cleaned up). Aside from this virtually (if not totally) impossible suggestion that the IRS provide advance notice to unknown John Does, Plaintiff does not identify "additional or substitute procedural safeguards" to protect his alleged property interest, let alone justify the "fiscal and administrative burdens" those hypothetical procedures would entail. *See Mathews*, 424 U.S. at 334-35.

Otherwise, the face of the Complaint shows that the IRS followed all required procedures in § 7609 with respect to the Coinbase summons. The IRS sought an ex parte order permitting it to serve the summons, as required by § 7609(f) and (h)(2), and the court determined that the IRS satisfied § 7609(f). Complaint ¶ 38; *Coinbase*, 2017 WL 5890052, at *1. When Coinbase

declined to comply with the summons, the IRS properly petitioned to enforce it. Complaint ¶ 46;

§ 7604(b). The matter was fully litigated, and the court enforced a narrowed version of the

summons. Complaint ¶ 52; *Coinbase*, 2017 WL 5890052, at *8. That Order found that the

*Powell* factors were satisfied, including that the administrative steps required by the Internal

Revenue Code had been followed. Nothing more was required. Plaintiff's disagreement with the

merits decisions in *Coinbase* is not a due process violation.

Due process does not "invariably require a hearing before the [government] can interfere

with a protected property interest." *Gonzalez-Droz v. Gonzalez-Colon*, 660 F.3d 1, 14 (1st Cir.

2011). Plaintiff has not alleged that post-deprivation procedures are inadequate, and it is well-

settled in the tax context that a post-deprivation remedy satisfies due process. *Phillips v.*

*Comm'r*, 283 U.S. 589, 596-97 (1931). Especially on the facts of this case, Plaintiff cannot

credibly claim entitlement to additional procedures before the IRS obtained his information

when, based on his signing an amicus brief, he had actual notice of the Coinbase summons but

did not attempt to intervene under Fed. R. Civ. P. Rule 24 (as others did).

All told, Plaintiff's meritless due process claim should be dismissed.

**D.      Count III Fails to State a Claim of a Violation of § 7609(f)**

Finally, Plaintiff's claim in Count III for violation of § 7609(f) should be dismissed for

both lack of statutory standing and failure to identify any statutory requirement that was not met.

Count III fails at the outset because § 7609(f) does not provide a taxpayer with any cause

of action. The statute merely imposes procedural requirements on the IRS when issuing third-

party summonses. It does not allow for a suit or remedy for violations of those procedures, nor

does it give unnamed persons standing to enforce anything relating to third-party summonses.

Taxpayers cannot participate in the ex parte proceeding, and only persons entitled to notice under

§ 7609(a) have a statutory right to intervene in an enforcement proceeding (§ 7604(b)) or file a

petition to quash the summons (§ 7609(b)(1)-(2)).[10] Plaintiff thus lacks statutory standing to pursue Count III. *Vander Luitgaren v. Sun Life Assur. Co. of Canada*, 765 F.3d 59, 62 (1st Cir. 2014) (statutory standing addresses "whether Congress has accorded this injured plaintiff the right to sue the defendant [under a particular statute] to redress his injury.").

Plaintiff appears to hold the erroneous view that matters determined in the § 7609(f) ex parte proceeding remain at issue after that proceeding is over. *See* Complaint ¶ 53 (disagreeing with judge's analysis in *Coinbase* summons-enforcement case). But a court's determination under § 7609(f) is not open to collateral attack in a later enforcement action. *See United States v. John G. Mutschler & Assocs., Inc.*, 734 F.2d 363, 366 (8th Cir. 1984); *United States v. Samuels, Kramer & Co.*, 712 F.2d 1342, 1346 (9th Cir. 1983); *Matter of Does*, 688 F.2d 144, 145-46, 148-49 (2d Cir. 1982). Further, and contrary to taxpayer's assertion that § 7609(f) imposes a "heightened" standard for enforcement of John Doe summonses (Complaint ¶ 53), the § 7609(f) factors required to support the issuance of a John Doe summons do not "expand beyond the *Powell* criteria the substantive grounds on which a record-keeping taxpayer can resist *enforcement* of a summons." *Samuels, Kramer & Co.*, 712 F.2d at 1346; *see also Matter of Does*, 688 F.2d at 149; *United States v. Pittsburgh Trade Exch. Inc.*, 644 F.2d 302, 306 (3d Cir. 1981) ("There is no indication that Congress intended a broader substantive protection of unknown than of known taxpayers."). By the same token, a John Doe summons should not be subject to collateral attack in a later post-enforcement suit like this one that is brought in another district.

To the extent the Court reaches it, Plaintiff's substantive argument in Count III is also meritless. The Complaint alleges (¶ 143) that the Coinbase summons did not satisfy § 7609(f)(1), requiring that "the summons relates to the investigation of a particular person or ascertainable

---

[10] Note that the United States opposed the motions to intervene in the *Coinbase* summons enforcement proceeding on this basis, but the court allowed the motions over that objection.

group or class of persons." The United States' argument for why § 7609(f)(1) was satisfied is at pages 11-13 of its brief in support of the petition in the ex parte proceeding (Ex. 2). In sum, the argument was that this requirement was met because the ascertainable class was "United States persons who, at any time during the period January 1, 2013, through December 31, 2015, conducted transactions in a convertible virtual currency as defined in IRS Notice 2014-21." *Id.* at 11.[11] The court accepted the argument, and no collateral attack on the court's conclusion as to § 7609(f)(1) should be heard. *See In re Tax Liabilities of John Does, All Unknown Employees of Boundary Waters Restaurant v. United States*, 866 F.2d 1015, 1018 (8th Cir. 1989). The Complaint does not allege that § 7609(f)(2) or (3) were not met.

## IV.    Conclusion

For the foregoing reasons, this case should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Respectfully Submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General
U.S. Department of Justice,
Tax Division

/s/ Edward J. Murphy
EDWARD J. MURPHY
RYAN D. GALISEWSKI
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C.  20044
Tel: (202) 307-6064 / (202) 305-3719
Fax: (202) 514-5238
Edward.J.Murphy@usdoj.gov
Ryan.D.Galisewski@usdoj.gov

---

[11] The class was subsequently narrowed during the course of the enforcement proceeding to limit it to certain transaction types and to have a $20,000 annual transaction value floor.

Certificate of Service

I certify that on January 10, 2023, I electronically filed the foregoing Brief in Support of

Renewed Motion to Dismiss for Failure to State a Claim via the Court's CM/ECF system and

thereby served the following attorneys for plaintiff who are registered to receive ECF notices for

this case:

Jared Joseph Bedrick
Champions Law
170 West Road
Suite 6d
Portsmouth, NH 03801
jared@champions.law

Aditya Dynar
New Civil Liberties Alliance
1225 19th Street NW
Ste 450
Washington, DC 20036
aditya.dynar@gmail.com

Caleb Kruckenberg
New Civil Liberties Alliance
1225 19th Street NW
Ste 450
Washington, DC 20036
ckruckenberg@pacificlegal.org

Richard Samp
New Civil Liberties Alliance
1225 19th Street NW
Ste 450
Washington, DC 20036
rich.samp@ncla.legal

*/s/ Edward J. Murphy*
EDWARD J. MURPHY
Trial Attorney, Tax Division
U.S. Department of Justice