## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

JAMES HARPER,                               :
       Plaintiff,                :
                                 :
    v.                                 :        Civil Action No. 1:20-cv-00771-JL
                                 :
CHARLES P. RETTIG, in his official          :
capacity as Commissioner of the             :        ORAL ARGUMENT REQUESTED
Internal Revenue Service, *et al.*,         :
       Defendants.               :

_____

### PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

Richard A. Samp (*pro hac vice*); VA Bar #33856
Sheng Li
NEW CIVIL LIBERTIES ALLIANCE
1225 19th Street NW, Suite 450
Washington, DC 20036
202-869-5210
rich.samp@ncla.legal
sheng.li@ncla.legal


Jared Bedrick, #20438
CHAMPIONS LAW
170 West Road, Suite 6D
Portsmouth, NH 03801
603-436-8100
jared@champions.law

February 7, 2023

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.     PLAINTIFF HAS STATED A CLAIM FOR VIOLATION OF 26 U.S.C. § 7609(f) . . . . . . . . . . . . . 7

       A.     Harper Has "Statutory Standing" to Assert His § 7609(f) Claim . . . . . . . . . . . . . 11

       B.     The Magistrate's Findings in *Coinbase I* Have No Preclusive Effect . . . . . . . . . . . 12

II.    PLAINTIFF HAS STATED A CLAIM FOR VIOLATION OF THE DUE PROCESS CLAUSE . . . . . 13

III.   PLAINTIFF HAS STATED A CLAIM FOR VIOLATION OF THE FOURTH AMENDMENT . . . . . . 18

       A.     IRS Seized and Searched Harper's Personal Papers . . . . . . . . . . . . . . . . . . . . . . . . 19

       B.     The "Third-Party Doctrine" Does Not Apply to the Textual, Property-Based
              Fourth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

       C.     Harper Had a Reasonable Expectation of Privacy in His Personal Financial
              Papers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

       D.     IRS's Seizure of Harper's Records Was Unreasonable . . . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases:**

*Air Sunshine, Inc. v. Carl,*
663 F.3d 27 (1st Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
403 U.S. 388 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Board of Regents of State Colleges v. Roth,*
408 U.S. 564 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Boyd v. United States,*
116 U.S. 616 (1886) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23, 24

*Carpenter v. United States,*
484 U.S. 19 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Carpenter v. United States,*
138 S. Ct. 2206 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 20, 21, 23

*Church of Scientology of Cal. v. United States,*
506 U.S. 9 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Entick v. Carrington,*
19 How. St. Tr. 1029 (1765) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Florida v. Jardines,*
569 U.S. 1 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22

*Griswold v. Connecticut,*
381 U.S. 479 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Harper v. Rettig,*
46 F.4th 1 (1st Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 18

*Hooper v. Willey,*
2017 WL 11700643 (D.N.H. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Katz v. United States,*
389 U.S. 347 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
572 U.S. 118 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Loretto v. Teleprompter Manhattan CATV Corp.,*
458 U.S. 419 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Mathews v. Eldridge,*
424 U.S. 319 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16, 17

*Matter of Does,*
688 F.2d 144 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13, 14, 17

*Matter of Tax Liabilities of John Does ("Coinbase I"),*
No. 3:16-cv-06658 (N.D.Cal., Nov. 30, 2016), ECF-7 . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 13

*Miller v. United States,*
425 U.S. 435 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19, 20

*Payne v. Taslimi,*
998 F.3d 648 (4th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Perrier-Bilbo v. United States,*
954 F.3d 413 (1st Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**Page(s)**

*Presley v. United States,*
  895 F.3d 1284 (11th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Ramie v. City of Hedwig Village,*
  765 F.2d 490 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Resol. Tr. Corp. v. Walde,*
  18 F.3d 943 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 23

*Riley v. California,*
  573 U.S. 373 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Tiffany Fine Arts, Inc. v. United States,*
  469 U.S. 310 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7, 13

*United States v. Ackerman,*
  831 F.3d 1292 (10th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Allee,*
  888 F.2d 208 (1st Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Bisceglia,*
  420 U.S. 141 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 10, 24

*United States v. Brigham Young Univ.,*
  679 F.2d 1345 (10th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14, 17

*United States v. Burgos-Montes,*
  786 F.3d 92 (1st Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Coinbase, Inc. ("Coinbase II"),*
  No. 3:17-cv-01431, 2017 WL 3035164 (N.D. Cal., July 18, 2017) . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Coinbase, Inc. ("Coinbase III"),*
  No. 3:17-cv-01431, 2017 WL 5890052 (N.D. Cal., Nov. 28, 2017) . . . . . . . . . . . . . . . . . . . . . . 1, 5

*United States v. Dauphin Deposit Tr. Co.,*
  385 F.2d 129 (3d Cir. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Gertner,*
  65 F.3d 963 (1st Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11, 12, 15, 17

*United States v. Gratkowski,*
  964 F.3d 307 (5th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Harrington,*
  388 F.2d 520 (2d Cir. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. John G. Mutschler & Assocs. Inc.,*
  734 F.2d 363 (8th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Jones,*
  565 U.S. 400 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 22

*United States v. Powell,*
  379 U.S. 48 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 24

*United States v. Ritchie,*
  15 F.3d 592 (6th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 17

*United States v. Samuels, Kramer and Co.,*
  712 F.2d 1342 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13, 17

*United States v. Theodore,*
  479 F.2d 749 (4th Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 24

**Page(s)**

*United States v. Warshak,*
  631 F.3d 266 (6th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
*Vander Luitgaren v. Sun Life Assur. Co. of Canada,*
  765 F.3d 59, 62 (1st Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
*Walls v. City of Petersburg,*
  895 F.2d 188 (4th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15


**Statutes and Constitutional Provisions:**

U.S. Const., amend. IV . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 5, 6, 7, 15, 16, 19, 20, 21, 22, 23, 24, 25

U.S. Const., amend. V (Due Process Clause) . . . . . . . . . . . . . . . . . . . . . . .  2, 5, 6, 7, 14, 15, 16, 17, 18

New Hampshire Constitution, Part I, Article 2-b. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15, 16

Administrative Procedure Act (APA) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 11, 12
  5 U.S.C. § 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
  5 U.S.C. § 704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Anti-Injunction Act, 26 U.S.C. § 7421 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

FTC Act § 5, 15 U.S.C. § 45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

Taxpayer First Act, P.L. 116-25 (2019), § 1204 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4, 10

Tax Reform Act of 1976, P.L. 94-455 (1976), § 1205(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 10

15 U.S.C. § 45(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

26 U.S.C. § 7602(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

26 U.S.C. § 7604(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

26 U.S.C. § 7609(b)(1) & (2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

26 U.S.C. § 7609(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

26 U.S.C. § 7609(f)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8, 9

26 U.S.C. § 7609(f)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8, 9

26 U.S.C. § 7609(f)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

**Page(s)**

26 U.S.C. § 7609(h)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 13

N.H. Rev. Stat § 359-C:20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22


**Miscellaneous:**

ACLU, *New Documents Suggest IRS Reads Emails Without a Warrant* (April 10, 2013) . . . . . . . . . . . . 20

Cato Institute/YouGov, *Cato Institute 2022 Financial Privacy National Survey* (Aug. 17-23, 2022),
   available at https://www.cato.org/sites/cato.org/files/2022-09/Toplines_Financial
   %20Privacy_2022.pdf . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

FTC, *Privacy and Security Enforcement* (2023), available at: https://www.ftc.gov/news-events/
   topics/protecting-consumer-privacy-security/privacy-security-enforcement . . . . . . . . . . . . . . . 22

Jim Harper, *Kerr Defends the Third-Party Doctrine*, Cato at Liberty (May 21, 2008),
   available at: https://www.cato.org/blog/kerr-defends-third-party-doctrine. . . . . . . . . . . . . . . . 20

IRS Office of Chief Counsel, Search Warrant Handbook 59 (2009), available at:
   https://www.aclu.org/legal-document/search-warrant-handbook?redirect=
   national-security/search-warrant-handbook . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Owen Kerr, *The Case for the Third-Party Doctrine*,
   107 Mich. L. Rev. 561 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

C. Claiborn Ray, *The Weight of Memory*, N.Y. Times (Oct. 24, 2011) . . . . . . . . . . . . . . . . . . . . . . 22

H.R.Rep. 94-658, 1975 WL 12389 (Leg. Hist.), (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9, 10

H.R.Rep. 116-39(I), 2019 WL 1649873 (2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 10

S.Rep. 94-938 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed.R.Civ.P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fed.R.Civ.P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 18

## INTRODUCTION

In November 2016, the Internal Revenue Service issued a summons to Coinbase, Inc., a large cryptocurrency exchange, demanding that Coinbase turn over the financial records of hundreds of thousand of its customers. IRS did not know whether any individual Coinbase customer had failed to properly report his income; indeed, it did not know who those customers were. But based on IRS speculation that many taxpayers fail to report taxable cryptocurrency transactions, IRS concluded that the summons would assist with its tax-information-gathering efforts.

Coinbase initially resisted enforcement of the summons. But a magistrate judge ultimately ordered Coinbase to comply in substantial part. *United States v. Coinbase, Inc.*, No. 3:17-cv-01431, 2017 WL 5890052 (N.D. Cal., Nov. 28, 2017) ("*Coinbase III*"). Coinbase thereafter turned over to IRS a trove of documents that included not only customer identification information but also records of customer account activity and periodic statements of account. Coinbase customers were not notified of the summons and were provided no opportunity to contest its propriety.

Plaintiff James Harper, a New Hampshire resident, was among the victims of this IRS fishing expedition. IRS's motion to dismiss concedes what Harper alleged in the complaint: that IRS obtained from Coinbase a large number of his financial records and continues to hold them to this day. Before obtaining the records, IRS made no effort to ascertain his identity, notify him of the summons, or provide him an opportunity to contest the summons. On August 9, 2019, IRS sent a threatening form letter to Harper stating, "We have information that you have or had one or more accounts containing virtual currency but may not have properly reported your transactions involving virtual currency." But the threat was apparently an empty one: in the ensuing 3-1/2 years, Harper has received no follow-up correspondence. IRS's silence is unsurprising, given that Harper's 2013-2015 income tax returns properly reported his cryptocurrency transactions.

Harper's suit claims that IRS violated his statutory and Fifth Amendment rights by seizing his financial records without providing him any opportunity to contest the seizure. The suit further claims that IRS violated his Fourth Amendment rights by seizing his documents without probable cause to believe he had under-reported his income or failed to pay tax.

IRS's motion to dismiss argues that the complaint fails to state a claim upon which relief can be granted. The motion is without merit. Indeed, Congress amended the tax code on two separate occasions to prevent IRS from engaging in precisely the sort of fishing expedition at issue here.

## STATEMENT OF THE CASE

A federal statute states that IRS may serve a summons on any person, without prior judicial approval, if the information sought is necessary to ascertain that person's tax liability. 26 U.S.C. § 7602(a). Whether that statutory authority extended to information regarding taxpayers unknown to IRS was long a matter of dispute. In *United States v. Bisceglia*, 420 U.S. 141 (1975), the Supreme Court upheld IRS's authority under § 7602(a) to issue such "John Doe" summonses.[1] The Court held that IRS could require a bank to disclose the identity of an individual who had deposited $20,000 in dilapidated $100 bills, on the theory that the depositor might have failed to report income on transactions relating to those $100 bills. *Id.* at 149-50. The Court acknowledged that such broad summons authority "may be abused" and "could be used to conduct 'fishing expeditions' into the private affairs of bank depositors." *Id.* at 150-51. But it noted that any such abuse could be checked by federal district courts, which were authorized to hear challenges to summonses raised by third-party record-keepers. *Ibid.*

In direct response to the *Bisceglia* decision, Congress added 26 U.S.C. § 7609(f) to the Internal Revenue Code, to impose strict limits on IRS's use of John Doe summonses. *Tiffany Fine Arts, Inc. v.*

---

[1] A John Doe summons is a direction to a third party to surrender information concerning taxpayers whose identity is unknown to IRS.

*United States*, 469 U.S. 310, 315-17 (1985) ("§ 7609(f) was a response to concerns that our decision in *Bisceglia* did not provide sufficient restraints, in the John Doe context, on the IRS's exercise of its summons power."). Congress determined that *Bisceglia* "might 'unreasonably infringe on the civil rights of taxpayers, including *the right to privacy*.'" *Id.* at 316 (quoting S.Rep. 94-938, at 368; H.R.Rep. 94-658, at 307) (emphasis added). As adopted in 1976, § 7609(f) provided that a John Doe summons is improper unless it meets three prerequisites:

> (I) the summons relates to the investigation of a particular person or ascertainable group or class of persons;
>
> (ii) there is a reasonable basis for believing that such persons or group or class of persons may fail or may have failed to comply with any provision of the internal revenue law, and
>
> (iii) the information sought to be obtained from the examination of the records (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.

Congress realized that John Doe taxpayers will generally be unaware that IRS is seeking their records from a third-party record-keeper and thus will not be in a position to contest the summons. The Tax Reform Act of 1976 therefore also provided that IRS may not issue a John Doe summons without first satisfying a federal court, in an *ex parte* proceeding, that it has met the three statutory prerequisites listed above. 26 U.S.C. §§ 7609(f), 7609(h)(2).

After the events giving rise to this action, Congress concluded that despite the constraints imposed by § 7609(f), IRS was continuing to employ John Doe summonses in a manner that "at times potentially exceeded its intended purpose." H.R.Rep. 116-39(I), 2019 WL 1649873 at *41 (2019). In order to "clarify" the limited scope of IRS's John Doe summons powers, Congress added the following language to § 7609(f) in 2019:

> The Secretary shall not issue any [John Doe] summons ... unless the information sought to be obtained is *narrowly tailored* to information that pertains to the failure (or potential failure) of the person or group or class of persons referred to in paragraph (2) to comply with one or more provisions of the internal revenue law.

3

Taxpayer First Act, P.L. 116-25 (2019), § 1204 (emphasis added).

**The Coinbase Summons.** In November 2016, IRS filed an *ex parte* petition in the Northern District of California for an order permitting it to serve a John Doe summons on Coinbase. The proposed summons sought detailed financial records for 2013-2015 for *every* Coinbase customer (numbering in the millions) with ties to the U.S. "who conducted transactions in a convertible virtual currency." IRS claimed to be investigating under-reporting of taxable income and asserted that "United States persons who, at any time during the period January 1, 2013, through December 31, 2015, conducted transactions in a convertible virtual currency" constituted "an ascertainable group" of people within the meaning of § 7609(f). Def. Br., Exh. 2, at 11. After conducting an *ex parte* review of IRS's petition, a magistrate judge on November 30, 2016, signed an order (prepared by IRS counsel) stating that the government satisfied the three § 7609(f) prerequisites and authorizing IRS to serve the subpoena. Def. Br., Exh. 3 ("*Coinbase I*").

Coinbase did not comply with the summons, prompting IRS to seek enforcement. Harper read news reports about the action. Although he joined an *amicus* brief arguing against IRS's position, he did not attempt to intervene in light of IRS's position that John Doe intervention is not permitted and his belief that IRS had narrowed its summons to cover only the few Coinbase users (not including Harper) with individual transactions valued at $20,000 or greater.[2] The magistrate declined to hear a challenge to her prior, *ex parte* decision that the IRS summons met the requirements of § 7609(f). Concluding that the summons was broader than necessary to achieve its legitimate purposes, she ordered enforcement of a narrowed version of the summons. *Coinbase III*, 2017 WL 5890052 at *6-*8. As a result, Coinbase disclosed to IRS detailed financial information for more than 10,000 account holders. *Ibid.*

---

[2] Harper's involvement or non-involvement in the Coinbase summons enforcement action is irrelevant to IRS's motion to dismiss. IRS does not assert that this action should be dismissed on the ground that Harper could have, or in fact did, become involved in the enforcement action.

Harper learned that his financial records were likely among those disclosed by Coinbase when he received IRS's August 9, 2019 letter described above. First Amended Complaint ("Complaint") ¶¶ 67-69, ECF-3. Based on the letter, he concluded that IRS must have received his personal financial records from at least one of the three cryptocurrency exchanges with which he has conducted business: Coinbase, Abra, and Uphold. Compl. ¶ 70. IRS's motion to dismiss confirms that it received Harper's financial records from Coinbase alone.

**Harper's Claims.** Harper filed this suit in July 2020, alleging that Defendants gained access to his private financial records in violation of his rights under the Fourth and Fifth Amendments and 26 U.S.C. § 7609(f). The Complaint sought injunctive and declaratory relief, as well as damages from John Does 1 through 10.

In March 2021, Judge Joseph DiClerico granted Defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(1) and 12(b)(6). ECF-17 ("Order"). He held that the Anti-Injunction Act, 26 U.S.C. § 7421, deprived the Court of subject matter jurisdiction over Harper's claims against IRS and its Commissioner for injunctive and declaratory relief. Order at 6-15. He dismissed Harper's claims for monetary relief under Rule 12(b)(6), ruling that the cause of action recognized by *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), should not be extended to the facts of this case. Order at 15-23.[3]

The First Circuit reversed. *Harper v. Rettig*, 46 F.4th 1 (1st Cir. 2022). The appeals court held that the Anti-Injunction Act bars only suits that seek to restrain "the assessment or collection of any tax," not suits such as Harper's that challenge IRS information gathering. *Id.* at 7-8. It vacated the judgment of dismissal and remanded the case to this Court. *Id.* at 9. On January 10, 2023, Defendants filed a

---

[3] Harper did not appeal from the *Bivens* ruling. Judge DiClerico did not address Defendants' additional argument that Harper failed to state a claim under the Fourth and Fifth Amendments. Defendants did not make a Rule 12(b)(6) argument with respect to Harper's § 7609(f) claim.

second Rule 12(b)(6) motion, seeking dismissal of all claims for failure to state a claim upon which relief can be granted.

## SUMMARY OF ARGUMENT

The Complaint alleges that IRS—by seizing Harper's personal financial records without seeking to ascertain his identity, without notifying him of the summons, and without providing him an opportunity to contest the summons—violated his rights under 26 U.S.C. § 7609(f) and the Fourth and Fifth Amendments to the U.S. Constitution. For purposes of this motion to dismiss, all of the Complaint's factual allegations must be accepted as true. Those allegations more than suffice to render plausible his three claims. The motion to dismiss should be denied.

Section 7609(f) imposes several requirements that IRS must fulfill before it may obtain documents from a third-party record-keeper using a John Doe summons. The Complaint sets out factual allegations demonstrating that IRS failed to satisfy those three prerequisites, including failure to show that the Coinbase summons related to an "ascertainable group or class of persons" and that the information it sought "is not readily available from other sources." IRS's principal argument is that Harper and other John Doe taxpayers lack "statutory standing" to raise a § 7609(f) claim. Motion at 23-24. That argument is without merit. Congress's sole reason for adopting § 7609(f) was to protect the rights of John Doe taxpayers like Harper, and the Administrative Procedure Act grants them a cause of action to enforce those rights. IRS also errs in asserting that *Coinbase I*'s *ex parte* finding that IRS demonstrated compliance with the § 7609(f) requirements collaterally estops Harper from challenging compliance. None of the case law cited by IRS supports its assertion. Harper was not a party to the *ex parte* proceedings and thus cannot be estopped from raising his § 7609(f) claim.

The Complaint also states a claim for violation of Harper's rights under the Fifth Amendment's Due Process Clause. Harper possesses both property interests in his financial records and liberty

6

interests in the privacy of those records. If IRS wishes to deprive him of those interests, it must provide Harper with an opportunity to contest that deprivation. The Complaint alleges that IRS neither notified Harper of the summons nor provided him an opportunity to contest it. IRS argues that it was unable to do so because it did not know his identity. There was a simple means by which IRS could have notified Harper: it could have used a John Doe summons to obtain his contact information from Coinbase, then issued a summons either directly to him or to Coinbase (with notice to him). By relying on a John Doe summons to seize all his financial records, IRS denied him an opportunity to raise the objections routinely available to taxpayers whose identity is known to IRS.

The Complaint states a claim for violation of Harper's Fourth Amendment rights against unreasonable search and seizure of his papers. IRS's contention that seizure of Harper's records was not a Fourth Amendment search under the third-party doctrine fails for two reasons. *First*, that *privacy*-based doctrine (derived from the "reasonable expectation of privacy" test) is inapplicable to determining whether a *property*-base search occurred. *Second*, that doctrine does not apply where the government seeks from a third-party information that "provides an intimate window into a person's life." *Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018). Harper's personal financial records contain a history of his transactions over a three-year period and fall within that category. IRS's argument in the alternative that its search was reasonable under the Fourth Amendment is also unavailing because the Coinbase summons was not supported by probable cause or information satisfying any reasonable legal standard.

## ARGUMENT

### I.   PLAINTIFF HAS STATED A CLAIM FOR VIOLATION OF 26 U.S.C. § 7609(f)

Congress adopted 26 U.S.C. § 7609(f) in 1976 to protect John Doe taxpayers from IRS overreach. *Tiffany*, 469 U.S. at 317; *United States v. Gertner*, 65 F.3d 963, 971 (1st Cir. 1995) ("Congress passed section 7609(f) specifically to protect the civil rights, *including the privacy rights*, of taxpayers

subjected to the IRS's aggressive use of third-party summonses") (emphasis added). The Complaint alleges that IRS engaged in precisely the sorts of overreach that Congress sought to guard against.

IRS does not contest that § 7609(f) imposes constraints on IRS's authority to issue John Doe summonses, including requirements that the summons relates to the investigation of a particular "person or ascertainable group or class of persons." § 7609(f)(1) & (2). The Complaint (¶ 143) alleges that IRS failed to satisfy the (f)(1) and (2) requirements before issuing the John Doe summons to Coinbase. IRS's motion to dismiss makes no argument in response to that allegation and thereby has waived the claim. Its only response to the allegation is to refer to arguments made in its 2016 *ex parte* petition to issue the Coinbase summons. Def. Br. 25. "Arguments incorporated into a brief solely by reference to [earlier] court filings are deemed waived." *United States v. Burgos-Montes*, 786 F.3d 92, 111 (1st Cir. 2015).[4]

The Coinbase summons purported to identify the relevant "ascertainable group or class of persons" as any "United States persons who, at any time during the period January 1, 2013, through December 31, 2015, conducted transactions in a convertible virtual currency as defined in IRS Notice 2014-21." Def. Br., Exh.2 at 45. Such an amorphous group, potentially consisting of millions of taxpayers, does not satisfy § 7609(f)'s "ascertainable group" requirement. "Ascertainable group or class of persons" denotes a relatively small, similarly situated group (*e.g.*, the partners in a partnership). It does not refer to a large, non-cohesive collection of individuals with little in common except that they have all at some point engaged in one category of financial transaction.

The legislative history of § 7609(f) supports Harper's construction of the phrase "ascertainable group or class of persons." The House Report on what became the Tax Reform Act of 1976 gave

---

[4] As this Court has explained: "It is incumbent on counsel to present arguments within the four corners of their memoranda, not on the court to dig through the record in pursuit of arguments presented earlier. ... If counsel desires our consideration of a particular argument, the argument must appear within the four corners of the brief filed in this court." *Hooper v. Willey*, 2017 WL 11700643 at *1 n.2 (D.N.H. 2017) (Laplante, J.) (citation omitted).

precisely one example of what Congress meant by that phrase: use of a "John Doe summons to obtain the names of corporate shareholders involved in a taxable reorganization which had been characterized by the corporation (in a letter to its shareholders) as a nontaxable transaction." H.R. Rep. 94-658, 1975 WL 12389 (Leg. Hist.), at *311 (1975). The Report said that in this "and similar situations, where there are unusual (or possibly suspicious) circumstances, ... use of the John Doe summons may be appropriate." *Ibid.* The allegedly "ascertainable group" identified by IRS in the Coinbase summons bears no resemblance to the groups Congress had in mind when it authorized John Doe summonses.

The IRS summons also fails to satisfy the prerequisite that "the information sought to be obtained from examination of the records or testimony (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources." § 7609(f)(3). Even if § 7609(f)(1) and (f)(2) did not preclude issuance of the summons altogether, § 7609(f)(3) mandates that IRS limit its summons to seeking the identity of Coinbase's customers. Once IRS obtained Harper's name and contact information, his financial information was "readily available" from Harper himself—thereby precluding use of a John Doe summons to obtain that financial information from Coinbase. If IRS for some reason could not obtain that information from Harper, it could issue a summons to Coinbase expressly seeking Harper's records. 26 U.S.C. § 7602(a). By seeking Harper's records via a John Doe summons rather than discovering his identity and proceeding with a summons that identified him by name, IRS deprived Harper of any ability to contest the summons or to raise defenses available to identified taxpayers. *See United States v. Powell*, 379 U.S. 48, 57-58 (1964).[5]

The legislative history of the Tax Reform Act of 1976 confirms that Congress, by adopting § 7609(f)(3), sought to limit IRS use of John Doe summonses to efforts to uncover the *identity* of

---

[5] The Complaint, by alleging that IRS violated § 7609(f), is fairly read as a claim that IRS violated all three of § 7609(f)'s requirements, including § 7609(f)(3)'s "not readily available" requirement. Alternatively, Harper requests leave to amend the complaint to allege that claim more explicitly.

taxpayers, not to obtain their financial records. As noted above, it was the Supreme Court decision in *Bisceglia*, 420 U.S. 141, that raised congressional concerns over IRS abuse of John Doe summonses and led Congress to adopt § 7609(f). And the John Doe summons at issue in *Bisceglia* was limited to a request for the identity of a single taxpayer: IRS demanded that a bank disclose the identity of the person who had deposited $20,000 in cash with the bank. *Id.* at 149-50. Every example cited by the House Report as a proper use of a John Doe summons involved a summons that sought nothing more than the identity of one or more specified taxpayers. H.R. Rep. 94-658, at *311. The Report expressed Congress's extreme wariness of John Doe summonses that seek more than identification information:

> [T]he committee does not intend that the John Doe summons is to be available for purposes of enabling [IRS] to engage in a possible 'fishing expedition.' ... [IRS] must convince the court that it has made a good faith, reasonable effort to explore other methods of investigation, and that use of the John Doe summons is the only practical means of obtaining the information needed by [IRS].

*Id.* at 311-12.

As part of the Taxpayer First Act, Pub. L. 116-25, § 1204 (2019), Congress amended § 7609(f) to "clarify" the limited scope of IRS's summons authority, after determining that IRS was continuing to misuse that authority. *See* H.R. 116-39(I), 2019 WL 1649873 at *41-42 (2019). It added to § 7609(f) a provision stating that any John Doe summons must be "narrowly tailored." Importantly, in describing the limitations on IRS's John Doe summons authority imposed by § 7609(f) as initially enacted, the House Report stated, "IRS is able to issue a summons (referred to as a 'John Doe' summons) *to learn the identity* of the taxpayer." *Id.* at *41 (emphasis added.) In other words, the 2019 Congress construed § 7609(f) as all along mandating use of John Doe summonses for taxpayer-identification purposes only.

In the years following adoption of § 7609(f), IRS apparently shared that understanding of its limited John Doe summons authority.  Many of its John Doe summonses sought only taxpayer-identification information. *See, e.g., United States v. Brigham Young Univ.*, 679 F.2d 1345 (10th Cir. 1982)

(John Doe summons to obtain names of individuals who donated property other than securities to a university); *Matter of Does*, 688 F.2d 144 (2d Cir. 1982) (names of tax-shelter investors); *United States v. Samuels, Kramer and Co.*, 712 F.2d 1342 (9th Cir. 1983) (same); *United States v. Ritchie*, 15 F.3d 592 (6th Cir. 1994) (names of clients who made cash payments exceeding $10,000 to law firm); *Gertner*, 65 F.3d 693 (same). Indeed, after a Coinbase customer identified himself and sought to intervene in IRS's suit to enforce the Coinbase summons, IRS withdrew its summons for that customer's financial records. "The IRS explained that because it now knew [the customer's] name, it no longer needed his records." *United States v. Coinbase, Inc.*, 2017 WL 3035164 at *2 (N.D. Cal., July 18, 2017) ("*Coinbase II*").[6]

IRS now claims a far more expansive John Doe summons authority. But the text and legislative history of § 7609(f) refute that claim.

### A. Harper Has "Statutory Standing" to Assert His § 7609(f) Claim

Although § 7609(f) itself does not *expressly* create a private right of action, IRS cannot seriously contend that the limitations imposed on IRS by the statute are not judicially enforceable. Anyone harmed by IRS wrongdoing is entitled to relief under the APA. 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."); 5 U.S.C. § 704 ("[F]inal agency action for which there is no other adequate remedy in a court [is] subject to judicial review.").

Instead, IRS asserts that Harper lacks "statutory standing" to assert his § 7609(f) claim. Def. Br. at 24. That assertion is insubstantial. "Statutory standing" is a question of statutory interpretation: Does the plaintiff fall within the class of plaintiffs to which the applicable statutes (here, § 7609(f) and the APA) have conferred a right of action? *Vander Luitgaren v. Sun Life Assur. Co. of Canada*, 765 F.3d 59, 62

---

[6] Because IRS withdrew its request for financial records, it succeeded in preventing intervention—the motion to intervene became moot. In light of that gambit, IRS cannot plausibly explain why it did not limit its Coinbase summons to a request for customer identification information.

(1st Cir. 2014). The Supreme Court has explained that two canons of statutory construction are relevant in deciding that question. First, courts "presume that a statutory cause of action extends only to plaintiffs whose interests fall within the zone of interest protected by the law invoked." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014). Second, courts "generally presume that a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute." *Id.* at 132.

Both canons strongly support a finding that Harper possesses statutory standing. First, John Doe taxpayers such as Harper are the precise group whose interests Congress intended to benefit when it adopted § 7609(f). *Gertner*, 65 F.3d at 971. Second, IRS cannot seriously dispute that Harper's injuries were proximately caused by IRS's alleged violations of § 7609(f); the government's seizure of his private financial records was the direct result of IRS's issuance of a John Doe summons to Coinbase. Indeed, if Harper lacks "statutory standing" to sue to enforce the restrictions imposed on IRS by § 7609(f), it is unlikely that *anyone* would possess such standing. IRS's motion fails to identify any such person. In other words, IRS's "statutory standing" claim is simply a backhanded means of arguing that Congress barred *any* private enforcement of § 7609(f), an argument precluded by the clear language of the APA.

## B. The Magistrate's Findings in *Coinbase I* Have No Preclusive Effect

Finally, IRS asserts that tax statutes specify that the *ex parte* proceeding mandated by § 7609(h)(2) is the sole forum in which IRS compliance with § 7609(f) can be challenged, and thus that Harper may not "collateral[ly] attack" the magistrate's *Coinbase I* determination that the Coinbase summons complied with § 7609(f). Def. Br. 24. But IRS cites no statutory language imposing a "sole forum" rule, and there is none.[7] Harper was not a party to the *ex parte Coinbase I* proceeding (indeed, no one other than IRS

---

[7] Section 7609(f) states that a John Doe summons "may be served only after a court proceeding in which the Secretary establishes" the prerequisites set out in § 7609(f). Section 7609(h)(2) states that the judge's determination in the specified court proceeding "shall be made ex parte and shall be made

was) and thus is not bound by the ruling of that non-Article III magistrate judge. Congress adopted § 7609(f) to *increase* privacy protections for John Doe taxpayers. It is illogical to conclude that the same statute *sub silentio* stripped John Doe taxpayers of all ability to assert those privacy rights, particularly because Congress in 1976 simultaneously adopted rules granting *identified* taxpayers the right to receive notice of third-party IRS summonses and the right to challenge enforcement of those summonses. *See Tiffany*, 469 U.S. at 728. Congress may have concluded that the *ex parte* hearing provision would assist IRS with the speedy issuance of summonses. But a desire to facilitate speedy issuance of summonses is fully consistent with a desire to permit those whom § 7609(f) was designed to protect (John Doe taxpayers), to bring subsequent challenges alleging IRS noncompliance with the statute.

IRS cites several decisions from other circuits in support of its "sole forum" argument. Def. Br. at 24 (citing *Samuels* (9th Cir.), *Matter of Does* (2d Cir.), and *United States v. John G. Mutschler & Assocs. Inc.*, 734 F.2d 363 (8th Cir. 1984)). Each of those decisions is inapposite. Each addressed whether a *third-party record-keeper* is entitled to challenge the *ex parte* determination that a John Doe summons complied with § 7609(f).[8] Even if Congress did not intend to permit such challenges (an issue on which Harper takes no position), that says nothing about whether Congress intended to permit statutory challenges by John Doe taxpayers themselves, the very parties for whose benefit Congress adopted § 7609(f).

## II.    PLAINTIFF HAS STATED A CLAIM FOR VIOLATION OF THE DUE PROCESS CLAUSE

When an individual's liberty or property interests are at stake, "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."

---

solely on the [IRS's] petition and supporting affidavits."

[8] Moreover, IRS's motion neglects to inform the Court that the circuit courts are divided on this issue. The Tenth Circuit has held that third-party record-keepers challenging enforcement of a John Doe summons may do so based on a claim that IRS failed to comply with § 7609(f)'s requirements. *Brigham Young Univ.*, 679 F.2d at 1347-48.

*Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). The Complaint alleges that IRS deprived Harper of privacy and property interests in his financial records without notice and without providing him an opportunity to challenge the deprivation. Complaint ¶¶ 81, 105, 129, 142. IRS's motion does not dispute the lack of notice and does not point to any opportunity available to Harper to contest IRS's summons to Coinbase for his financial records. Indeed, IRS even insists that Harper may not raise a post-deprivation challenge by asserting a claim under 26 U.S.C. § 7609(f). The Complaint thus states a claim for violation of Harper's rights under the Fifth Amendment's Due Process Clause.

To state a procedural due process claim, a plaintiff must (1) identify a protected liberty or property interest, and (2) allege that the defendant deprived him of that interest without constitutionally adequate process. *Air Sunshine, Inc. v. Carl*, 663 F.3d 27, 34 (1st Cir. 2011). The Complaint alleges that Harper possesses a protectable *property* interest in his private papers held for him by Coinbase, an allegation more fully explained *infra*. IRS mistakenly relies on *Miller v. United States*, 425 U.S. 435 (1976), to argue that Harper lacked a property interest in his own financial records stored at Coinbase. Def. Br. at 21. *Miller* merely analyzed a person's Fourth Amendment *privacy* interest in records conveyed to a third party. 425 U.S. at 443. It did not hold that such conveyance somehow extinguished *property* interests, especially where, as here, Coinbase specifically agreed to safeguard Harper's records.

Harper also possesses a substantial *liberty* interest in maintaining the privacy of his financial records.[9] IRS's motion to dismiss makes no attempt to dispute that privacy interest. Harper's liberty interest in maintaining privacy is protected by a federal statute (26 U.S.C. § 7609(f)) and by the U.S. and

---

[9] As the First Circuit has explained, "the term 'liberty' 'denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized ... as essential to the orderly pursuit of happiness by free men.'" *Perrier-Bilbo v. United States*, 954 F.3d 413, 434 (1st Cir. 2020) (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 (1972)).

New Hampshire Constitutions. As the First Circuit recognizes, "Congress passed section § 7609(f) specifically to protect civil rights, *including the privacy rights*, of taxpayers subjected to the IRS's aggressive use of third-party summonses." *Gertner*, 65 F.3d at 971 (emphasis added).

The U.S. Supreme Court has held repeatedly that "the right of privacy" is "a legitimate one" that merits constitutional protection. *Griswold v. Connecticut*, 381 U.S. 479, 485 (1965). Multiple federal appeals court decisions have recognized that the liberty interest in privacy includes "information within an individual's reasonable expectations of privacy—*including financial information*." *Payne v. Taslimi*, 998 F.3d 648, 657 (4th Cir. 2021) (emphasis added); *Walls v. City of Petersburg*, 895 F.2d 188, 194 (4th Cir. 1990) (holding that financial information required by employment questionnaire implicated plaintiff's right to privacy). The Constitution "protects individuals against invasion of their privacy by the government" and "[t]he liberty interest in privacy encompasses ... the freedom from being required to disclose personal matters to the government.." *Ramie v. City of Hedwig Village*, 765 F.2d 490, 492 (5th Cir. 1985). Harper's privacy interests also arise from Part I, Article 2-b of the New Hampshire Constitution, which states: "An individual's right to live free from governmental intrusion in private or personal information is natural, essential, and inherent."

Some government invasions of personal privacy are so severe that they are always prohibited by the Fourth Amendment or other constitutional provisions, regardless of the government's rationale for its conduct. But even when the government's intrusion on liberty or property interests does not implicate substantive due process, it is still subject to procedural due-process constraints. The facts alleged in the Complaint suffice to demonstrate that IRS deprived Harper of his liberty and property interests without constitutionally adequate process. *Air Sunshine*, 663 F.3d at 34. Procedural due process requires "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 33. Harper had no opportunity to be heard.

15

IRS concedes as much but seeks to justify the absence of notice and an opportunity to be heard by stating, "prior notice to John Does is 'not possible' because their identities are unknown to the IRS when it issues the summons." Def. Motion at 22. That argument ignores a simple means by which IRS could have notified Harper: it could have issued a John Doe summons to Coinbase that sought only the names and contact information for Coinbase's customers. Once it obtained Harper's contact information from Coinbase, IRS could have examined his tax returns and then decided whether it still wished to gain access to Harper's financial records. If so, it could either have issued a summons for financial records to Harper or directed the summons to Coinbase (requesting that Coinbase produce Harper's records). Under either scenario, Harper would receive the "opportunity to be heard" promised by *Mathews* and the Due Process Clause. *See* 26 U.S.C. § 7604(b) (granting the target of an IRS summons a hearing in which to contest enforcement); 26 U.S.C. § 7609(b)(1) & (2) (if IRS seeks to obtain the records of an identified taxpayer by means of a third-party summons, the taxpayer may file a motion to quash the summons or move to intervene in a summons enforcement proceeding).

IRS has offered no explanation suggesting why proceeding in this manner would be unduly burdensome or materially interfere with tax enforcement activity. Indeed, this is the manner in which it routinely operated after Congress adopted § 7609(f) in 1976. IRS would issue John Doe summonses seeking the names and contact information for John Doe taxpayers—and only after obtaining that information would IRS decide whether to seek additional information regarding the now-identified taxpayers. *See, e.g., Brigham Young Univ.*, 679 F.3d 1345; *Matter of Does*, 688 F.2d 144; *Samuels Kramer*, 712 F.2d 1342; *Ritchie*, 15 F.3d 592; *Gertner*, 65 F.3d 693. IRS apparently now finds it more convenient to engage in fishing expeditions by hauling in the financial records of thousands (perhaps millions) of taxpayers with a single fishing net. But the Due Process Clause bars such short-cut practices when the result (as here) denies taxpayers all opportunity to be heard regarding the propriety of a summons.

The denial of a hearing has severely prejudiced Harper. It has prevented him from challenging the propriety of IRS gaining access to his confidential financial information. IRS argued in the appeals court that Harper could to challenge the summons if and when it imposes a tax deficiency based on his 2013-2015 cryptocurrency transactions. IRS Br. 39. But if such hearing ever takes place, it would not constitute a hearing "at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333. A hearing that may or may not occur in the distant future cannot meaningfully address the *present-day* violation of Harper's privacy and property rights.

The Complaint alleges facts demonstrating that there is virtually no chance that there ever will be such a hearing. IRS's August 9, 2019 letter to Harper was a form letter identical to one it sent to more than 10,000 other Coinbase customers, and IRS has sent him no follow-up letter in the ensuing 3-1/2 years. Compl. ¶ 82. IRS's silence is unsurprising, given that Harper's 2013-2015 income tax returns reported all his cryptocurrency sales transactions handled by Coinbase. *Id.* ¶¶ 30, 31, 33, 37, 99, 123, 140.

Harper is also harmed by IRS's continued possession of his private financial records. Its retention of those records raises serious security concerns for Harper and his family. Holders of cryptocurrency are uniquely in danger of violent crime should third parties become aware of their holdings and trading activities.  Many owners of cryptocurrency maintain their assets on home computers or devices and thus must be on guard against criminal attacks on their households, such as home invasion and kidnapping. Such attacks are disturbingly common. IRS's continued retention of Harper's financial records increases the risk that those records will be accessed by hackers, inviting attacks by criminals who believe, even erroneously, that Harper holds significant crypto assets.

In sum, Harper has adequately alleged that IRS violated his due-process rights by depriving him of protected liberty and property interests (his right to privacy in his financial information) without

providing him any opportunity to contest the deprivation. Should the Court conclude that the Complaint somehow does not allege facts adequate to support the due process claim, Harper requests leave to file an amended complaint to correct the deficiency.[10]

## III.  PLAINTIFF HAS STATED A CLAIM FOR VIOLATION OF THE FOURTH AMENDMENT

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const., amend. IV. IRS's seizure of Harper's records was a "seizure" within the meaning of the Fourth Amendment, and its review of the records was a "search." The seizure and search were unreasonable because they were not supported by a probable-cause warrant, much less one particularly describing its objects. IRS went on a "'rambling exploration' of a third party's files." *United States v. Theodore*, 479 F.2d 749, 754 (4th Cir. 1973).

The Supreme Court has articulated two approaches to determining whether a "search" has occurred under the Fourth Amendment: (1) the textual, property-based approach, which asks whether the government has trespassed upon certain types of a person's property to gather information; and (2) the privacy-based approach, which asks whether the government has intruded on a person's reasonable

---

[10] The allegation that Harper reported all the Coinbase sales transactions on his tax returns is a *factual* allegation that must be accepted as true for purposes of the motion to dismiss. IRS's motion alleges that Harper's 2013-2015 tax returns "did not disclose the full proceeds of [the] transactions" shown on the financial records obtained from Coinbase. Def. Br. 5. That allegation is false, and Harper will prove its falsity at trial. More importantly, IRS's allegation is a highly improper effort to inject into a Rule 12(b)(6) motion prejudicial "facts" that are not contained in the Complaint—as is its allegation that it sent the form letter to Harper after comparing the data it received from Coinbase with Harper's tax returns. *Id.* IRS notes that Judge DiClerico, in the course of his opinion dismissing the complaint for lack of subject matter jurisdiction, opined in *dicta* that Harper's allegation that he reported all cryptocurrency transactions was "not well pled" and should be disregarded. Order at 13. The First Circuit vacated Judge DiClerico's dismissal, 46 F.4th at 9, and thus his *dicta* regarding the adequacy of the pleadings should be disregarded. If the Court concludes that the Complaint does not adequately allege that Harper reported all transactions, he requests leave to amend to supplement the factual allegations. In any event, the adequacy of each of Harper's three claims does not depend on demonstrating that his cryptocurrency transactions were properly reported.

expectation of privacy. *United States v. Jones*, 565 U.S. 400, 405-06 (2012). IRS's seizure and search of Harper's financial records implicates both approaches.

### A.    IRS Seized and Searched Harper's Personal Papers

The Complaint alleges facts demonstrating that IRS seized and searched Harper's financial records, which are "papers" and "effects" protected by the Fourth Amendment—without regard to the medium in which the records were maintained. In *Riley v. California*, 573 U.S. 373, 399, 401 (2014), the Court referred to "digital files" stored on a smartphone as "private effects." *United States v. Ackerman*, 831 F.3d 1292 (10th Cir. 2016), treated email files and images as papers or effects, and the Sixth Circuit recognized emails were papers in *United States v. Warshak*, 631 F.3d 266, 268 (6th Cir. 2010). IRS's distinction between "physical intrusions" (probably meaning "tangible") and seizure of digital data, *see* Def. Br. at 19, is thus not supported by Fourth Amendment law.[11] Harper's property right to his own financial records is not extinguished simply because Coinbase stored those records on his behalf.  *See Carpenter*, 138 S. Ct. 2206, 2269 (Gorsuch, J., dissenting) ("Just because you entrust your data—in some cases, your modern-day papers and effects—to a third party may not mean you lose any Fourth Amendment interest in its contents.").[12] Customers continue to enjoy Fourth Amendment protection to digital data stored at a company if such "customers have substantial legal interest in this information, including at least some right to include, exclude, and control its use." *Id.* at 2272.

---

[11] Nor do the laws of physics support such a distinction because digital data is not some metaphysical ideal that exists only in the spiritual realm. Rather, data stored at Coinbase consists of configurations of physical matter over which Harper had a property interest. *See* C. Claiborn Ray, *The Weight of Memory*, N.Y. Times (Oct. 24, 2011) (explaining that digitally stored data is composed of matter and has mass).

[12] It is of no moment that, as IRS points out, "the majority in *Carpenter* did not adopt [Justice Gorsuch's] bailment theory." Def. Br. at 19. That theory was not adopted for the simple reason that "Mr. Carpenter forfeited perhaps [t]his most promising line of argument," by failing to assert it. *Carpenter*, 138 S. Ct. at 2272 (Gorsuch, J., dissenting). In contrast, Harper vigorously asserts a property-based argument in support of his Fourth Amendment claim. Compl. ¶ 88-89.

Here, Harper had the all-important property right to exclude others from financial papers stored with Coinbase. *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982) (calling right to exclude "one of the most treasured strands" of the property rights bundle). Harper's contract with Coinbase, *see* Compl. ¶¶ 25-28, consistently referred to Harper's personal information by using the possessive pronoun, "your," because it was Harper's information. Coinbase is liable under state and federal law if it fails to adequately protect Harper's data, *see, e.g.*, 15 U.S.C. § 45(a)(1);[13] N.H. Rev. Stat § 359-C:20 (requiring notifications of customer data breaches). The contract sharply curtailed Coinbase's power to share Harper's information with others; it limited dissemination only to strictly necessary needs and purposes. In sharp contrast with the copious protection afforded Harper, Coinbase would have had no cause to complain if Harper shared or wantonly broadcast his own financial information. Because the information is his.

Of necessity, Harper's contract with Coinbase granted the latter permission to share information when Coinbase is "compelled to do so by a subpoena, court order, or similar legal procedure." IRS appears to believe that any procedure, valid or not, satisfies this condition and vitiates Harper's property interests as well as his expectation of privacy. But reading Coinbase's contractual obligation that way would render the contract language nugatory, violating the surplusage canon of statutory construction, because it would offer Harper no protection. The language has meaning only if it requires legal procedures to be legally valid. Under IRS's reading, it would make no difference if the language were excised.

---

[13] The Federal Trade Commission routinely brings enforcement actions under Section 5 of the FTC Act and other federal privacy-protection laws against companies that fail to maintain security of customer data. *See Privacy and Security Enforcement*, FTC (2023), available at: https://www.ftc.gov/news-events/topics/protecting-consumer-privacy-security/privacy-security-enforcement.

Harper's property right to exclude others from his personal financial information is the same as *The Wall Street Journal*'s property right recognized by the Supreme Court in *Carpenter v. United States*, 484 U.S. 19 (1987). There, the Court found the *Journal* had a property right in confidential financial information developed for an investment-news column; it held that defendants' misappropriation of that information deprived the *Journal* of "money or property" for purposes of the mail and wire fraud statutes. *Id.* at 25-26.

Harper had a property interest in his papers that supports his Fourth Amendment claim.

**B.    The "Third-Party Doctrine" Does Not Apply to the Textual, Property-Based Fourth Amendment**

IRS invokes the "third-party doctrine" articulated in *United States v. Miller*, 425 U.S. 435 (1976), to argue that, "Plaintiff had no Fourth Amendment privacy interest in the financial information held by Coinbase." Def. Br. at 15. IRS has a history of abusing *Miller*'s third-party doctrine, including using it as an excuse to snoop on private emails without a warrant.[14] And, "In the years since its adoption, countless scholars [and Justices Gorsuch and Sotomayor] have come to conclude that the 'third-party doctrine is not only wrong, but horribly wrong.'" *Carpenter*, 138 S. Ct. at 2262 (Gorsuch J., dissenting) (quoting Kerr, *The Case for the Third-Party Doctrine*, 107 Mich. L. Rev. 561, 563 n.5, 564 (2009)); *see Jones*, 132 S. Ct. at 957 (Sotomayor, J., concurring) (calling third-party doctrine "ill suited to the digital age"). Harper agrees with that sharp criticism of *Miller*.[15] But the Court need not reject *Miller* in order to deny

---

[14] *See New Documents Suggest IRS Reads Emails Without a Warrant*, ACLU (April 10, 2013). IRS's 2009 Search Warrant Handbook, for instance, instructed agents that "the Fourth Amendment does not protect communications held in electronic storage, such as email messages stored on a server, because internet users do not have a reasonable expectation of privacy." IRS Office of Chief Counsel, Search Warrant Handbook 59 (2009), available at: https://www.aclu.org/legal-document/search-warrant-handbook?redirect=national-security/search-warrant-handbook.

[15] *See* Jim Harper, *Kerr Defends the Third-Party Doctrine*, Cato at Liberty (May 21, 2008), available at: https://www.cato.org/blog/kerr-defends-third-party-doctrine.

IRS's motion, because the third-party doctrine is irrelevant to Harper's claim to a property-based Fourth Amendment interest in his personal financial information.

The third-party doctrine is an outgrowth of "reasonable expectation of privacy" doctrine, *Miller*, 425 U.S. at 443, and would not exist without it. The Supreme Court has said that expectations of privacy are irrelevant in determining whether a *property*-based search has occurred. *Florida v. Jardines*, 569 U.S. 1, 11 (2013) ("[It] is unnecessary to consider [expectations of privacy] when the government gains evidence by physically intruding on constitutionally protected areas."). "One virtue of the Fourth Amendment's property-rights baseline is that it keeps easy cases easy." *Id.* This is an easy case: private financial records are a person's "dearest property," which has been jealously protected since well before the Fourth Amendment was written. *Boyd v. United States*, 116 U.S. 616, 638 (1886) (*citing Entick v. Carrington*, 19 How. St. Tr. 1029 (1765)), to conclude that Treasury's power to issue subpoena for non-criminal revenue actions was "unconstitutional and void."). IRS's seizure of such papers is a Fourth Amendment seizure.

C.      **Harper Had a Reasonable Expectation of Privacy in His Personal Financial Papers**

*Miller* notwithstanding, IRS *also* conducted a privacy-based Fourth Amendment search because Harper had a reasonable expectation of privacy in his seized personal financial records. Under the "reasonable expectation of privacy" test, a search occurs when one's privacy is violated. *See Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). Harper's contract with Coinbase to protect his personal financial information is one of many ways he evinces a subjective expectation of privacy.

That expectation is objectively reasonable. *Miller*'s nearly 50-year-old assertion that people do not expect privacy in personal financial information that becomes known to a third party is antiquated. *See* Cato Institute/YouGov, *Cato Institute 2022 Financial Privacy National Survey* (Aug. 17-23, 2022), available   at   https://www.cato.org/sites/cato.org/files/2022-

09/Toplines_Financial%20Privacy_2022.pdf. In our electronic age, it is virtually impossible for individuals, as they conduct their day-to-day affairs, to prevent such information from becoming known to third parties. For example, anyone who carries a cell phone constantly discloses his physical location to his cell-service provider. But as *Carpenter* explained, cell-phone users nonetheless maintain a reasonable expectation of privacy in their location information; they can reasonably expect that the government will not demand access to cell-service data to pinpoint their movements for an extended period of time. 138 S. Ct. at 2216-19. *Miller* should be overruled.

Harper recognizes that the Court lacks authority to ignore binding Supreme Court precedent, no matter how antiquated it has become. But the Court is certainly empowered to distinguish *Miller* in the same manner that *Carpenter* distinguished *Miller*. The Fourth Amendment unequivocally protects personal financial papers. *Boyd*, 116 U.S. at 638; *see also Resol. Tr. Corp. v. Walde*, 18 F.3d 943, 949 (D.C. Cir. 1994) (Fourth Amendment privacy interest required interpreting statute to prohibit agency from inspecting personal financial records absent articulable suspicion of wrongdoing). Harper's personal papers contain detailed financial information over a three-year span (2013-2015) that, when aggregated, "provided an intimate window into a person's life." *Carpenter*, 138 S. Ct. at 2217. *Carpenter* dictates that when, as here, an individual has done all he can to protect his strong privacy interests, the third-party doctrine is inapplicable. *Ibid.*

IRS relies on *United States v. Gratkowski*, 964 F.3d 307, 312 (5th Cir. 2020), cited at Def. Br. at 17-18, to argue against Harper's expectation of privacy. That thinly reasoned opinion (which does not address any property-based Fourth Amendment argument) is internally inconsistent. On the one hand, the court found that access to Coinbase records "provides only information about a person's virtual currency transactions." *Id.* On the other, it recognized that Coinbase records reveal a customer's full transaction history, including when, with whom, for what, and for how much he transacted virtual

currency. *Id.* at 309 ("Open source tools and private software products can be used to analyze a [bitcoin] transaction."). *Carpenter* held that tracking historical movement for a mere seven days "'provided an intimate window into a person's life.'" 138 S. Ct. at 2217. IRS sought and got *three years* of Harper's financial transaction history.

### D. IRS's Seizure of Harper's Records Was Unreasonable

The Supreme Court has repeatedly held that "in the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." *Carpenter*, 138 S. Ct. at 2221. IRS has cited no "specific exception to the warrant requirement" that would render reasonable its failure to obtain a warrant for its seizure of Harper's financial records.

IRS cites *United States v. Powell*, 379 U.S. 48 (1964), in support of its assertion that its seizure and search of Harper's financial records without a warrant was "reasonable" and thus did not violate the Fourth Amendment. Def. Br. at 14. But *Powell* is a statutory interpretation case that made no mention of the Fourth Amendment. Subsequent cases mistakenly cite *Powell* for the proposition that IRS is exempt from the warrant requirement, that a lesser Fourth Amendment standard applies to IRS seizures and searches. *See, e.g.*, *Theodore*, 479 F.2d at 754; *United States v. Harrington*, 388 F.2d 520, 523 (2d Cir. 1968).

This Court should hold that the Fourth Amendment requires more than the statutory standards at issue in *Powell*. Harper urges the Court instead to follow the approach adopted by the Third Circuit in *United States v. Dauphin Deposit Tr. Co.*, 385 F.2d 129, 131 (3d Cir. 1967). The Third Circuit explicitly recognized that statutory restrictions on IRS summonses are "rooted in the Fourth Amendment protection against unreasonable searches and seizures." *Ibid.* It refused to enforce a portion of an IRS summons that called upon a bank to produce a wide array of customer records covering a three-year

period—ruling that the summons was too "indefinite" and thus violated restrictions barring the IRS

from going on "a fishing expedition through Appellant's records." *Ibid.*

None of the authorities IRS relies on comes close to the boundless scope of the Coinbase

summons,[16] which sought historical financial data for everyone who "conducted transactions in a

convertible virtual currency" from 2013 to 2015. Def. Br., Exh. 2 at 45. This scattershot demand fails

the Fourth Amendment's particularity requirement and thus constitutes an unreasonable search. IRS

must either return or destroy the improperly seized data. *Church of Scientology of Cal. v. United States*, 506

U.S. 9, 15 (1992).

## CONCLUSION

The motion to dismiss for failure to state a claim should be denied.

Respectfully submitted,

 /s/ Jared Bedrick                          /s/ Richard A. Samp
Jared Bedrick, #20438                       Richard A. Samp (*pro hac vice*); VA Bar #33856
CHAMPIONS LAW                               Sheng Li
170 West Road, Suite 6D                     NEW CIVIL LIBERTIES ALLIANCE
Portsmouth, NH 03801                        1225 19th Street NW, Suite 450
603-436-8100                                Washington, DC 20036
jared@champions.law                         202-869-5210
                                            rich.samp@ncla.legal
                                            sheng.li@ncla.legal

February 7, 2023

---

[16] *United States v. Allee*, 888 F.2d 208 (1st Cir. 1989), cited at Def. Br. at 14, concerned a single taxpayer who had not filed tax returns for over a decade. *Presley v. United States*, 895 F.3d 1284 (11th Cir. 2018), cited at Def. Br. at 14, concerned a lawyer, his firm, and its associates.

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 7, 2023, I electronically filed the foregoing document with the

U.S. District Court for the District of New Hampshire, using the CM/ECF system. Counsel for all

parties are registered users of the CM/ECF system. They will be served by the CM/ECF system on the

following counsel for Defendants:

Edward J. Murphy
Edward.J.Murphy@usdoj.gov

Ryan D. Galisewski
Ryan.D.Galisewski@usdoj.gov


 /s/Richard A. Samp
Richard A. Samp