UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

<u>James Harper</u>

     v.

<u>Charles P. Rettig, in his official
capacity as Commissioner, Internal
Revenue Service, et al.</u>

Civil No. 1:20-cv-00771-JL
Opinion No. 2023 DNH 066P

**<u>MEMORANDUM ORDER</u>**

This case concerns the constitutionality of the Internal Revenue Service's utilization of its "John Doe" summons procedure to obtain a taxpayer's account information from Coinbase, a virtual currency exchange. Following the issuance and enforcement of such a summons, the IRS collected account information and records from Coinbase. Some of the records it collected belonged to Plaintiff James Harper, who bought and sold bitcoin through Coinbase. Through this lawsuit, Harper seeks an injunction requiring the IRS to expunge, destroy, or return his Coinbase records and an order declaring the statute that authorized the issuance of the John Doe summons, 26 U.S.C. § 7609(f), unconstitutional.

Harper alleges that the IRS's actions constituted a seizure and search that violated the Fourth Amendment of the United States Constitution as well as his procedural due process rights under the Fifth Amendment. He further claims that the IRS violated § 7609(f) in obtaining his records. The IRS moves to dismiss for failure to state a claim upon which relief can be granted.

This court has jurisdiction over Harper's claims under 28 U.S.C. § 1331 because the claims present federal questions. After considering the parties' submissions and hearing oral argument, the court grants the motion. Harper does not have protectable Fourth or Fifth Amendment interests in the records produced by Coinbase in response to the John Doe summons. Even assuming that he did, the IRS's actions satisfied the Fourth Amendment's reasonableness requirement and provided him constitutionally adequate process under the Due Process Clause. As for Harper's statutory claim, the statute at issue does not expressly or impliedly provide taxpayers with a private right to sue the IRS for purported statutory violations. Also, a different court has already determined that the IRS satisfied the statutory requirements for a John Doe summons, and that determination is not subject to a later collateral attack. Finally, even if the court's decision was subject to collateral attack, Harper's complaint fails to state a claim that the IRS did not satisfy the elements of § 7609(f).

## I.    <u>Applicable legal standard</u>

To defeat a Rule 12(b)(6) motion, Harper must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Martinez v. Petrenko, 792 F.3d 173, 179 (1st Cir. 2015). This standard "demands that a party do more than suggest in conclusory terms the existence of questions of fact about the elements of a claim." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 81 (1st Cir. 2013). In ruling on such a motion, the court accepts as true all well-pleaded facts set forth in the complaint and draws all reasonable inferences in

Harper's favor.  See Martino v. Forward Air, Inc., 609 F.3d 1, 2 (1st Cir. 2010).  The court may also consider judicially noticed documents, information attached to or incorporated into the complaint, matters of public record, and documents introduced by Harper in his objection to the motion to dismiss or concessions in that objection, without converting the Rule 12(b)(6) motion into a motion for summary judgment.  See Lyman v. Baker, 954 F.3d 351, 360 (1st Cir. 2020).

## II.   Background

**Factual background**.  The court draws the relevant factual background from Harper's First Amended Complaint,[1] documents attached to that complaint, and other matters of public record.  In 2013, Harper opened an account with "Coinbase," an entity that "facilitates transactions in virtual currencies such as bitcoin."[2]  Coinbase provided terms of agreement alongside its account, stating, in relevant part, that "Coinbase takes reasonable precautions, as described herein, to protect your personal information from loss, misuse, unauthorized access, disclosure, alteration, and destruction."[3]  Coinbase warned its users, however, that it "may share [their] personal information with . . . [l]aw enforcement, government officials, or other third parties when: [w]e are compelled to do so by a subpoena, court order or similar legal procedure[.]"[4]

---

[1] Doc. no. 3.

[2] Id. at ¶ 18.

[3] Id. at ¶ 25.

[4] Id. at ¶ 28.

In 2013 and 2014, Harper deposited bitcoin into his Coinbase account.  Harper primarily received the bitcoin as income from consulting work.  Harper alleges that he declared the transactions on his 2013 and 2014 tax returns and that he declared all "appropriate income from bitcoin payments," including capital gains tax.[5]  Harper further alleges that he paid "appropriate capital gains on any bitcoin income for tax years 2015 and 2016."[6]  Harper began liquidating his holdings in the Coinbase account in 2015.  By 2016, Harper no longer held any bitcoin in the Coinbase account.[7]

In 2016, the IRS petitioned ex parte under 26 U.S.C. §§ 7609(f) and 7609(h)(2) in the United States District Court for the Northern District of California for leave to serve a "John Doe" summons on Coinbase.[8]  "A 'John Doe' summons is, in essence, a direction to a third party to surrender information concerning taxpayers whose identity is currently unknown to the IRS."  Tiffany Fine Arts, Inc. v. United States, 469 U.S. 310, 313, n.4

---

[5] Id. ¶¶ 30-33; see also id. ¶¶ 75, 99, 123, 140 (alleging that he "has accurately reported his virtual currency transactions for all applicable tax years").

[6] Id. at ¶ 37.

[7] Id. at ¶ 36.  From 2016 to the date of his complaint (August 2020), Harper and his wife also "liquidated bitcoin through" the virtual currency exchanges "Abra" and "Uphold."  Id. at ¶ 56.

[8] 2016 Petition (doc. on. 30-3).  The court can consider the Coinbase summons petition and other court documents relating to the enforcement of that summons when deciding this motion, without converting it to motion for summary judgment.  See Fritz v. Brown, No. 06-cv-469-PB, 2007 WL 2585083, at *1 (D.N.H. Aug. 29, 2007) (Barbadoro, J.) (Items "susceptible to judicial notice" include "matters of public record such as documents from prior court proceedings."); Giragosian v. Ryan, 547 F.3d 59, 66 (1st Cir. 2008) ("A court may consider matters of public record in resolving a Rule 12(b)(6) motion to dismiss.").  Through the petition, the IRS was trying "to determine the correct federal income tax liabilities for taxable years 2013-2015 of United States taxpayers who have conducted transactions in a 'convertible virtual currency'" on Coinbase.  Id.

(1985) (quoting <u>In re Tax Liabilities of John Does</u>, 671 F.2d 977, 978 (6th Cir. 1982)). As further detailed below, under § 7609(f), the IRS may only serve a John Doe summons after a court proceeding in which the IRS establishes that: (1) the summons relates to the investigation of a particular person or ascertainable group of persons; (2) there is a reasonable basis for believing that such persons may fail or may have failed to comply with any provision of any internal revenue law; and (3) the information sought to be obtained, and the identity of the subject persons, is not readily available from other sources.  <u>See</u> § 7609(f)(1)-(3).

Based on a review of the petition and supporting documents, the court granted the petition, determining that the John Doe summons to Coinbase:

> relat[ed] to the investigation of an ascertainable group or class of persons, that there [wa]s a reasonable basis for believing that such group or class of persons has failed or may have failed to comply with any provision of any internal revenue laws, and that the information sought to be obtained from the examination of the records or testimony (and the identities of the persons with respect to whose liability the summons is issued) [wer]e not readily available from other sources.[9]

The IRS served the summons on Coinbase, which did not comply.

The IRS then filed a separate summons-enforcement petition against Coinbase in March 2017.[10]  Coinbase opposed the petition, and at least one John Doe successfully intervened as well.[11]  Other third parties filed amicus briefs opposing the summons,

---

[9] Order Granting Petition (doc. no. 30-5) at 1-2.

[10] 2017 Petition (doc. no. 30-6).  The same judge who oversaw the 2016 summons petition – Judge Jacqueline Scott Corley – presided over the 2017 summons-enforcement action.

[11] Motions to Intervene (doc. no. 30-8); <u>see also</u> doc. no. 3 at ¶¶ 41, 48.

including Harper, who signed an amicus brief filed by the Competitive Enterprise

Institute.[12]  During the enforcement proceeding, the IRS agreed to narrow the scope of its

summons.[13]  Ultimately, after oral argument, the court granted the petition in part and

denied it in part and ordered Coinbase to comply with a narrowed version of the

summons.  See United States v. Coinbase, Inc., No. 3:17-cv-01431, 2017 WL 5890052,

at *1 (N.D. Cal. Nov. 28, 2017) (finding that the narrowed IRS summons "serves the

IRS's legitimate purpose of investigating Coinbase account holders who may not have

paid federal taxes on their virtual currency profits").  The narrowed summons sought

documents and various categories of information from Coinbase "accounts with at least

the equivalent of $20,000 in any one transaction type (buy, sell, send, or receive) in any

one year during the 2013 to 2015 period."  Id. at *8-*9.[14]

Coinbase produced account holder documents and information to the IRS in

response to the narrowed summons, including information about Harper's Coinbase

account from 2013 to 2015.  Following its receipt of Harper's Coinbase account

information, the IRS sent Harper a letter in 2019 entitled "Reporting Virtual Currency

Transactions."[15]  As relevant here, the IRS told Harper the following:

---

[12] Competitive Enterprise Institute Amicus Brief (doc. no. 30-10); see also doc. no. 3 at ¶ 51.

[13] Notice of Narrowed Summons (doc. no. 30-7); see also doc. no. 3 at ¶ 41.

[14] See also doc. no. 3 at ¶ 54.  No party appealed the summons issuance or summons
enforcement orders.  Id. at ¶ 55.

[15] Doc. no. 3 at ¶ 67; see also doc. 3-6 at 1.  Harper also alleges, upon information and belief,
that IRS agents "issued an informal demand" to Abra and Coinbase for his financial records with
those entities.  He believes that Abra or Coinbase complied with that informal demand, further
prompting the 2019 letter.  See id. at ¶ 76.  The IRS has subsequently stated in sworn

> We have information that you have or had one or more accounts containing virtual currency but may not have properly reported your transactions involving virtual currency, which include cryptocurrency and non-crypto virtual currencies.[16]

The IRS stated that if Harper had failed to properly report his "virtual currency transactions" then he "may be subject to future civil and criminal enforcement activity."[17]

**Procedural history**.  Harper filed suit in August 2020 against the IRS, its then Commissioner in his official capacity, and ten "John Doe" IRS agents.  Harper's complaint contains three counts: (1) violation of the Fourth Amendment; (2) violation of the Fifth Amendment; and (3) declaratory judgment/violation of 26 U.S.C. § 7609(f).  As relief for the alleged Constitutional violations in Counts 1 and 2, Harper seeks money damages from the defendants, as well as injunctive and declaratory relief.  Specifically, Harper requests an order: (i) declaring § 7602, et seq., unconstitutional as applied to him under the Fourth and Fifth Amendments; (ii) requiring the IRS to expunge Harper's financial records; and (iii) prohibiting the IRS and John Does 1 through 10 from seizing financial records from "virtual currency exchanges" under § 7602, et seq., in the future.  In Count 3, Harper requests a declaratory judgment that the IRS is violating § 7609(f)

---

interrogatory answers that it sent the 2019 letter to Harper based only on its review of documents and information produced by Coinbase in response to the narrowed John Doe summons, and not based on receipt of documents or information from Abra, Coinbase, or Uphold in response to an informal IRS demand.  See IRS Interrogatory Answers (doc. no. 30-11) at 5.  The court does not rely on these interrogatory answers for purposes of resolving the pending motion to dismiss.  It simply notes – and the parties agree – that Harper's claims now only relate to the judicially issued and enforced Coinbase summons.

[16] Doc. no 3 at ¶ 68; see also doc. 3-6 at 1.

[17] Doc. no. 3 at ¶ 69; see also doc. 3-6 at 1.

and, like Counts 1 and 2, requiring the IRS to expunge[18] his financial records and prohibiting the IRS and John Does 1 through 10 from seizing similar financial records through § 7609(f) in the future.

The IRS initially moved to dismiss the complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief could be granted.  The court (DiClerico, J.) granted the motion and dismissed (for varying reasons) all of Harper's claims for damages and declaratory and injunctive relief.[19]  Harper appealed the dismissal of his injunctive and declaratory relief claims, but not his damages claim.  A First Circuit Court of Appeals panel reversed, finding that the Anti-Injunction Act "does not bar [Harper's] suit and the district court's judgment of dismissal under Federal Rule of Civil Procedure 12(b)(1) must be vacated."  Harper v. Rettig, 46 F.4th 1, 9 (1st Cir. 2022).  On remand, the case was assigned to the undersigned judge after Judge DiClerico passed away in April 2022.  The parties agree that only Harper's claims for declaratory and injunctive relief remain.

**III.    Analysis**

Harper first contends that the IRS's acquisition of his Coinbase records through a John Doe summons was an unreasonable seizure and search of his private papers (in which he held both property and privacy interests) that violated the Fourth Amendment.

---

[18] At its core, Harper's request for declaratory or injunctive relief seeks to compel the IRS to return or destroy the records it received from Coinbase relating to his account.

[19] See Order (doc. no. 17) (DiClerico, J.).

He next contends that because he possesses both property and liberty interests in his Coinbase records, the Due Process Clause of the Fifth Amendment afforded him notice and an opportunity to be heard before the IRS attempted to deprive him of those interests. Finally, Harper argues that § 7609(f) is unconstitutional as applied to him, and even if not unconstitutional, the IRS violated the statute by failing to satisfy several prerequisites for issuance of a John Doe summons. The court addresses the IRS's challenges to each claim in turn, beginning with the Fourth Amendment claim.

### A.        Fourth Amendment claim

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. The IRS raises two primary challenges to Harper's Fourth Amendment claim. It first argues that Harper had no protectable Fourth Amendment interest in the Coinbase records. It also argues that even if the IRS's acquisition of the Coinbase records constituted a Fourth Amendment search or seizure, its actions were reasonable and probable cause is not required to issue a John Doe summons. The court agrees with the IRS on both points.

### 1.        Protectable Fourth Amendment interest

Courts have utilized a property-based or "common-law trespass" approach as well as a privacy-based approach to determining whether Fourth Amendment interests are

implicated.  Carpenter v. United States, 138 S. Ct. 2206, 2213 (2018) (citations omitted).

For example, "[w]hen 'the Government obtains information by physically intruding' on

persons, houses, papers, or effects, 'a 'search' within the original meaning of the Fourth

Amendment' has 'undoubtedly occurred.'" Florida v. Jardines, 569 U.S. 1, 5 (2013)

(quoting United States v. Jones, 565 U.S. 400, 406, n.3 (2012)).  In addition, a "Fourth

Amendment search [also] occurs when the government violates a subjective expectation

of privacy that society recognizes as reasonable." Kyllo v. United States, 533 U.S. 27, 33

(2001).  Whether Harper's complaint states a claim for violating the Fourth Amendment

therefore first turns on whether he has a protectable privacy or property interest in the

Coinbase records.

     **Privacy interest**.  The Supreme Court of the United States has long held that "a

person has no legitimate expectation of privacy in information he voluntarily turns over

to third parties." Smith v. Maryland, 442 U.S. 735, 743-44 (1979).  Smith involved

information conveyed to a telephone company, but courts have applied the third-party

doctrine in other contexts, most notably to bank records and customer information held

by financial institutions.  See United States v. Miller, 425 U.S. 435, 440, 444 (1976)

(finding a depositor had "no Fourth Amendment interests" in a bank's records of his

accounts or transactions).  In Miller – a case involving subpoenas to banks for

investigating tax evasion by bank customers – the Court found that the customer's

canceled checks, deposit slips, and monthly statements were "not confidential

communications but negotiable instruments to be used in commercial transactions" and

contained information "exposed to [bank] employees in the ordinary course of business."

Id. at 442.  Thus, the customer had "take[n] the risk, in revealing his affairs to another, that the information [would] be conveyed by that person to the Government."  Id. at 443.

In Carpenter, the Court declined to apply the third-party doctrine to "cell-site location information" maintained by wireless telephone carriers.  Prosecutors obtained court orders under the Stored Communications Act to collect the CSLI relating to several robbery suspects from wireless providers.  The question before the Court was whether the CSLI was entitled to Fourth Amendment protection and if so, whether the government unlawfully searched the data without a warrant supported by probable cause.  The Supreme Court answered both questions in the affirmative.

The Court reasoned that, like GPS information, but unlike "telephone numbers and bank records," the "time-stamped [CSLI] data provides an intimate window into a person's life, revealing not only his particular movements, but also his 'familial, political, professional, religious, and sexual associations.'"  Id. (quoting Jones, 565 U.S. at 415 (Sotomayor, J., concurring)).  Thus, the Court held that "an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI."  Id. at 2217.

Harper asks this court to find, as in Carpenter, that account information held by a virtual currency exchange provides an intimate window into a person's life and is thus protected under the Fourth Amendment.  The court declines to do so.  Harper's "Coinbase records are more akin to the bank records in Miller than the CSLI in Carpenter."  United States v. Gratkowski, 964 F.3d 307, 312 (5th Cir. 2020).  As the Fifth Circuit Court of Appeals aptly put it,

> Coinbase is a financial institution, a virtual currency exchange, that provides Bitcoin users with a method for transferring Bitcoin. The main difference between Coinbase and traditional banks, which were at issue in Miller, is that Coinbase deals with virtual currency while traditional banks deal with physical currency. But both are subject to the Bank Secrecy Act as regulated financial institutions. Both keep records of customer identities and currency transactions.

Id. (citations omitted).  The Carpenter Court was concerned about the surveillance aspect of CSLI; the data provided "a detailed chronicle of a person's physical presence compiled every day, every moment, over several years," which "implicate[d] privacy concerns far beyond those considered in Smith and Miller."  138 S. Ct. at 2220.  Coinbase and other virtual currency exchange records do not reveal similarly intimate details about a user's life.  The records instead provide information that a person uses a particular exchange and "information about a person's virtual currency transactions."  Gratkowski, 964 F.3d at 312.  Thus, both qualitatively and quantitatively, Harper's virtual currency exchange account information is closely analogous to the bank records in Miller.[20]

The CSLI in Carpenter also lacked the voluntary disclosure quality of bank records and other information normally subject to the third-party doctrine.  "[T]ransacting [b]itcoin through Coinbase or other virtual currency exchange institutions requires an 'affirmative act on the part of the user.'"  Gratkowski, 964 F.3d at 312 (quoting Carpenter, 138 S. Ct. at 2220).  Indeed, to open a bank account – or a Coinbase account –

---

[20] Harper does not explain what intimate life details his Coinbase records reveal.  Even if the records incidentally showed his occasional location information (and Harper does not argue that they did), Carpenter would not require this court to recognize a privacy interest in the records. See Carpenter, 138 S. Ct. at 2220 ("Nor do we address other business records that might incidentally reveal location information.").

a user must provide his personal information to the third party.  And to use the bank's or

Coinbase's services, a user must provide additional information to the third party.  In the

case of CSLI, however, the location information was "not truly 'shared' as one normally

understands the term."  Carpenter, 138 S. Ct. at 2220.  Instead, the wireless carrier

collected it (perhaps without the user even realizing it) as soon as the user turned his

phone on.  Id.  By electing to buy, sell, and store virtual currency through Coinbase, and

providing personal information to Coinbase to utilize its "technical expertise," users like

Harper "sacrifice some privacy" and thus lack a protectable "privacy interest in the

records of [their] [b]itcoin transactions on Coinbase" or other virtual currency exchanges.

Id. at 312-13.[21]

      Harper's "contract" with Coinbase does not compel a different result.  The

Supreme Court "has held repeatedly that the Fourth Amendment does not prohibit" the

government from obtaining information revealed to third parties, "even if the information

is revealed on the assumption that it will be used only for a limited purpose and the

confidence placed in the third party will not be betrayed."  Miller, 425 U.S. at 443 (citing

cases).  And Coinbase warned Harper in its privacy policy that it may share his personal

information with "[l]aw enforcement, government officials, or other third parties" when

---

[21] The nature of bitcoin and other virtual currencies allows individuals to buy, sell, or transfer the
bitcoin directly to others without third party intervention.  Harper chose to use a government-
regulated, third party to execute these types of transactions.

"compelled to do so by subpoena, court order or similar legal procedure," further reducing any privacy interest he may have held in the records.[22]

Moreover, no court has adopted Harper's broad reading of Carpenter in the context of virtual currency exchange records.  Several courts have rejected it.  See, e.g., Gratkowski, 964 F.3d at 311-12 (holding that Coinbase user had no reasonable expectation of privacy in Coinbase records of his bitcoin transactions and in information held in the bitcoin blockchain); Zietzke v. United States, 426 F. Supp. 3d 758, 768-69 (W.D. Wash. 2019) ("Because Bitstamp's records do not implicate the privacy concerns at issue in Carpenter, Petitioner lacks a legitimate expectation of privacy in those records. Consequently, the IRS's request for those records does not infringe upon Petitioner's Fourth Amendment rights."); Zietzke v. United States, No. 19-cv-03761, 2020 WL 264394, at *13 (N.D. Cal. Jan. 17, 2020), report and recommendation adopted, 2020 WL 6585882 (N.D. Cal. Nov. 10, 2020) ("Carpenter is not applicable here because Carpenter's holding is narrowly limited to facts different from this case, because location data is not at issue here, and because it is undisputed that Petitioner voluntarily exposed the requested data to Coinbase.").

Of course, the court cannot grant Harper's request that it overrule Miller.  See Obj. at 23.  Miller and the third-party doctrine remain good law even after Carpenter, and this court is bound to apply them.  Carpenter, 138 S. Ct. at 2220 (finding that the Court's

---

[22] Doc. no. 3 at ¶ 28.

holding did "not disturb the application of Smith and Miller" and noting that "the third-party doctrine [still] applies to telephone numbers and bank records").

**Property interest**.  Citing Boyd v. United States, 116 U.S. 616 (1886), Harper also argues that he has a property interest in the Coinbase records because those records constitute his personal or "private papers."  The court is not persuaded.  In Miller, the Court distinguished Boyd and found that a bank customer could "assert neither ownership nor possession" of his account records.  425 U.S. at 440.  The "documents subpoenaed" were not the customer's "private papers," but instead were "the business records of the banks."  Id.  Similarly, in Donaldson v. United States, the Court found that a taxpayer had "no proprietary interest of any kind" in his former employer's "routine business records."  400 U.S. 517, 531 (1971).[23]  As discussed above, the records the IRS obtained from Coinbase are analogous to a customer's account records with a bank.  Thus, Miller's holding that a bank customer has neither a property interest nor a reasonable expectation of privacy in the bank's records for his account applies with equal force to Harper's Coinbase account records.

While the initial summons to Coinbase sought copies of third-party agreements, passports and drivers' licenses, bitcoin (or other virtual currency) wallet addresses, public keys for all accounts/wallets/vaults, and correspondence between Coinbase and users and third parties with access to the accounts, the court-enforced summons was far narrower.

---

[23] Donaldson, which addressed a taxpayer's right to intervene in a third-party IRS summons proceeding, led to Congress' passage of § 7609(b).

The court ultimately ordered Coinbase to produce, for a limited group of account holders, the following information to the IRS: (1) the taxpayer ID number; (2) name; (3) birth date; (4) address; (5) "records of account activity including transaction logs or other records identifying the date, amount, and type of transaction (purchase/sale/exchange), the post transaction balance, and the names of counterparties to the transaction"; and (6) all periodic statements of account or invoices or equivalent documents.  Coinbase, 2017 WL 5890052, at *8-9.

From a property rights perspective, this information is "no different from the many other kinds of business records the Government has a lawful right to obtain by compulsory process," because the account holder does "not own, possess, control, or use the records." Carpenter, 138 S. Ct. at 2224 (Kennedy, J., dissenting); see also id. at 2235 ("By obtaining the [CSLI], the Government did not search Carpenter's property.  He did not create the records, he does not maintain them, he cannot control them, and he cannot destroy them.") (Thomas, J., dissenting).  While Harper may have had a proprietary interest in the bitcoin itself, the IRS did not seek to dispossess him of that property. Thus, the IRS did not seize or search anything over which Harper could assert ownership or control.[24]  The court concludes that Harper did not have a protectable Fourth

---

[24] Harper quotes from Justice Gorsuch's solo dissent in Carpenter to bolster his criticism of Miller and the third-party doctrine.  Doc. no. 32 at 19.  He also relies on that dissent to advance a "bailment" theory of property rights to support his argument that he holds a property interest in the Coinbase records.  Under this theory, if one entrusts his papers and effects to a third party, that third party "owes a legal duty to keep the item safe."  Carpenter, 138 S. Ct. at 2268 (Gorsuch, J., dissenting).  If the third party "uses the item in a different way than he's supposed to, or against the bailor's instructions," the third party is "liable for conversion."  Id. at 2269. One of the problems with this theory as applied to Harper's Coinbase records (beyond the fact that it comes from a non-controlling dissenting opinion), is that it starts with the premise that a

Amendment interest in the account records and information produced by Coinbase in response to the IRS summons.

### 2. Reasonableness

The IRS also argues that, even if the Coinbase summons implicated Harper's Fourth Amendment rights, its seizure and search of the records were reasonable and thus did not violate the Fourth Amendment.  "The fundamental inquiry under the Fourth Amendment is whether a particular search or search procedure is 'reasonable' in the circumstances."  McCabe v. Life-Line Ambulance Serv., Inc., 77 F.3d 540, 544 (1st Cir. 1996) (quoting Cady v. Dombrowski, 413 U.S. 433, 439-40 (1973)).  "Reasonableness," in turn, depends on "balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion."  Id. at 546-47 (quoting O'Connor v. Ortega, 480 U.S. 709, 719 (1987)).  A warrantless search is normally "reasonable only if it falls within a specific exception to the warrant requirement."  Carpenter, 138 S. Ct. at 2221.

The IRS does not claim that its third-party summons procedure is an exception to the warrant requirement per se.  Instead, it argues that so long as it complies with the requirements of United States v. Powell in obtaining and enforcing the summons, the Fourth Amendment reasonableness standard is met.  In other words, the Powell

_____

person has given his "papers and effects" to a third party.  Here, however, as the court has already found, Harper's Coinbase account information is not considered his papers and effects for purposes of the Fourth Amendment.  The bailment theory might work if the IRS attempted to seize Harper's bitcoin, which he entrusted to Coinbase to secure, without a warrant.  But that did not occur.

requirements, while not an "exception" to the warrant requirement, exempt the IRS from making any probable cause showing that would otherwise be required to support a warrant.  See United States v. Powell, 379 U.S. 48, 57 (1964) (holding that "the Commissioner need not meet any standard of probable cause to obtain enforcement of his summons"); see also Presley v. United States, 895 F.3d 1284, 1293 (11th Cir. 2018) (recognizing that a "basic distinction between administrative summonses of business records and actual searches of things in which citizens hold a reasonable expectation of privacy means a separate Fourth Amendment standard applies to each circumstance") (quoting Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 204 (1946)).

The case law supports the IRS's argument.  For example, in United States v. Allee, the First Circuit Court of Appeals found – albeit in dicta – that the "Fourth Amendment is not violated as long as the IRS has complied with the requirements of United States v. Powell[.]"  888 F.2d 208, 213 n.3 (1st Cir. 1989); see also Standing Akimbo, LLC v. United States, 955 F.3d 1146, 1166 (10th Cir. 2020) ("The IRS has met the Powell factors establishing the Fourth Amendment reasonableness of the Standing Akimbo summons. The Taxpayers have failed to rebut this showing, so the IRS does not need probable cause."); Presley, 895 F.3d at 1293 ("In other words, when it comes to the IRS's issuance of a summons, compliance with the Powell factors satisfies the Fourth Amendment's reasonableness requirement."); United States v. Silkman, 543 F.2d 1218, 1220 (8th Cir. 1976) ("The summons in question is not a general warrant prohibited by the Fourth Amendment, but instead only seeks those records needed to establish his tax liabilities for 1973 and 1974.  It has long been settled that the enforcement of a validly

drawn Internal Revenue summons does not violate the Fourth Amendment.") (citations omitted); Harris v. U.S.I.R.S., 758 F.2d 456, 457 (9th Cir. 1985) ("Such summonses issued to a third party recordkeeper do not violate the Fourth Amendment.").

Powell resolved a circuit split "on the standards the [IRS] must meet to obtain judicial enforcement of its" summonses under § 7602 and § 7604. 379 U.S. at 50-51. Thus, the Powell requirements and the statute itself provide, to the extent required, the necessary Fourth Amendment protections to taxpayers subject to IRS summons proceedings. As the Supreme Court recognized, § 7601 gives the IRS "a broad mandate to investigate and audit persons who may be liable for taxes" and § 7602 "provides the power to examine any books, papers, records, or other data which may be relevant . . . (and to summon) any person having possession . . . of books of account . . . relevant or material to such inquiry." United States v. Bisceglia, 420 U.S. 141, 145-46 (1975) (quotations omitted). The IRS's statutory investigative authority is, "[o]f necessity," "not limited to situations in which there is probable cause, in the traditional sense, to believe that a violation of the tax laws exists." Id. at 146. To ensure that the IRS does not abuse this power, however, "[s]ubstantial protection is afforded by the provision that an Internal Revenue Service summons can be enforced only by the courts." Id. (citing 26 U.S.C. § 7604(b)). In the context of John Doe summonses, the § 7609(f) similarly protects taxpayer rights through the "requirement of judicial preapproval," which "permits the district court to act as a surrogate for the unnamed taxpayer and to 'exert[] a restraining influence on the IRS.'" United States v. Gertner, 65 F.3d 963, 971 (1st Cir. 1995) (quoting Tiffany, 469 U.S. at 321). "What § 7609(f) does is to provide some guarantee

that the information that the IRS seeks through a summons is relevant to a legitimate investigation, albeit that of an unknown taxpayer." Tiffany, 469 U.S. at 321.

Judge Corley has already found that the IRS satisfied both § 7609(f) and the Powell requirements in obtaining and enforcing the John Doe Coinbase summons. See doc. no. 30-5; Coinbase, 2017 WL 5890052, at *7. This court will not disturb those findings. Accordingly, even if the court found that Harper had a protectable Fourth Amendment interest in his account records (a finding which the court does not make), the IRS's compliance with § 7609(f) and Powell satisfies the Fourth Amendment's reasonableness requirement. The IRS's motion to dismiss Harper's Fourth Amendment claim is granted.

**B.      Fifth Amendment Procedural Due Process claim**

 "Procedural due process guarantees that 'before a significant deprivation of liberty or property takes place at the state's hands, the affected individual must be forewarned and afforded an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Perrier-Bilbo v. United States, 954 F.3d 413, 433 (1st Cir. 2020) (quoting González-Droz v. González-Colón, 660 F.3d 1, 13 (1st Cir. 2011)); see also Mathews v. Eldridge, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."). "To state a valid procedural due process claim, [Harper] must (1) identify a protected liberty or property interest[;] and (2) allege that the defendants . . . deprived

[him] of that interest without constitutionally adequate process." Air Sunshine, Inc. v. Carl, 663 F.3d 27, 34 (1st Cir. 2011) (cleaned up).

The IRS argues that Harper has failed to identify a protected liberty or property interest.  It further argues that even if he had a protected liberty or property interest in the Coinbase records, the IRS used constitutionally adequate process to deprive him of those interests.  The court agrees with the IRS.

### 1.    Identifiable property or liberty interest

For the reasons discussed above, Harper does not have a property interest in the records and information produced by Coinbase in response to the IRS's summons.  See supra, § III, A., 1; see also Miller, 425 U.S. at 440; Donaldson, 400 U.S. at 531; United States v. Schutterle, 586 F.2d 1201, 1204-05 (8th Cir. 1978) ("Absent a protectible liberty or property interest, the protections of procedural due process do not attach. The Schutterles clearly have no property interest in the business records of the bank.").

Harper nevertheless argues that he has a "liberty interest in maintaining the privacy of his financial records"[25] that is protectable under the Fifth Amendment.  This argument falters for several reasons.  First, it mischaracterizes the interest at stake.  The financial records belong to Coinbase, not Harper.  Second, it finds no support in precedent.  No court has recognized a protectable liberty interest in maintaining the privacy of financial records held and created by a third-party financial institution.  Third, "privacy" in the context of liberty interests relates to the "most personal and deep-rooted

---

[25] Doc. no. 32 at 14.

expectations of privacy," and not necessarily account records maintained by regulated financial institutions.  Payne v. Taslimi, 998 F.3d 648, 658 (4th Cir. 2021).

"The constitutional right to privacy does extend to . . . 'the individual interest in avoiding disclosure of personal matters.'"  Walls v. City of Petersburg, 895 F.2d 188, 192 (4th Cir. 1990) (citing Whalen v. Roe, 429 U.S. 589, 599-600 (1977)). [26]  But that "right to privacy" protects "only information with respect to which the individual has a reasonable expectation of privacy."  Id. at 193.  As discussed above, Harper did not have a reasonable expectation of privacy in Coinbase's records of his account and accordingly does not have a protectable liberty interest for purposes of the Due Process Clause of the Fifth Amendment.

### 2. Deprivation of interest without constitutionally adequate process

Even if Harper held a liberty or property interest in the Coinbase records, the summons procedure utilized here adequately protected those interests.  "No rigid taxonomy exists for evaluating the adequacy of state procedures in a given case; rather, 'due process is flexible and calls for such procedural protections as the particular

---

[26] Courts, including the First Circuit Court of Appeals, "look to the Supreme Court's interpretation of 'liberty' in the Fourteenth Amendment for guidance" in determining whether a protectable liberty interest exists for procedural due process purposes.  Perrier-Bilbo, 954 F.3d at 434.  Liberty in the Fourteenth Amendment context refers to two types of interests: "one is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions."  Whalen, 429 U.S. at 599–600. Personal matters include matters relating to marriage, Loving v. Virginia, 388 U.S. 1 (1967); procreation, Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535 (1942); contraception, Eisenstadt v. Baird, 405 U.S. 438 (1972); family relationships, Prince v. Massachusetts, 321 U.S. 158 (1944); and child rearing and education, Pierce v. Society of Sisters, 268 U.S. 510 (1925). One's interest in avoiding disclosure of account records maintained by third party financial institutions does not fit within these categories of "personal matters."

situation demands.'" Gonzalez-Droz v. Gonzalez-Colon, 660 F.3d 1, 13 (1st Cir. 2011)

(quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).  "In order to determine both

when a pre-deprivation hearing is compulsory and what process is due, an inquiring court

must balance a myriad of factors, including the private and public interests involved, the

risk of an erroneous deprivation inherent in the procedures employed by the state, and the

likely benefit that might accrue from additional procedural protections." Id. (citing

Mathews, 424 U.S. at 335).

     Harper contends that he received neither notice nor an opportunity to be heard at a

meaningful time and manner before being deprived of his alleged interests in the

Coinbase records.  The court disagrees.  "[D]ue process does not invariably require a

hearing before the state can interfere with a protected property interest." Gonzalez-Droz,

660 F.3d at 14.  Instead, "some form of hearing" must be provided "before an individual

is finally deprived of [the] interest." Mathews, 424 U.S. at 333 (emphasis supplied).  But

while the opportunity to be heard before the seizure is usually expected, "this is not

always feasible." Herwins v. City of Revere, 163 F.3d 15, 18 (1st Cir. 1998).  Here,

because the IRS does not know the identity of John Doe summons recipients prior to

obtaining a court order issuing the summons and the process for obtaining the summons

is necessarily ex parte, providing notice to Harper would not have been feasible.

     Moreover, the reviewing court provides the necessary protection to the unnamed

taxpayer by requiring the IRS to satisfy the requirements of § 7609(f) and obtain a court

order before serving the summons.  See Gertner, 65 F.3d at 971 (the district court "act[s]

as a surrogate for the unnamed taxpayer . . . to 'exert[] a restraining influence on the

IRS"); United States v. Samuels, Kramer and Co., 712 F.2d 1342, 1346 (9th Cir. 1983)

("Section 7609's criteria thus constitute a procedural safeguard which Congress created

to provide extra protection to unknown target taxpayers to whom the IRS cannot give

notice.").

Further, meaningful opportunities to contest the summons arise after its issuance.

For example, once the summons issued here, Coinbase refused to comply and made the

IRS satisfy additional procedural hurdles in an enforcement proceeding.  See Bisceglia,

420 U.S. at 146 ("[s]ubstantial protection is afforded" to taxpayers when "a summons can

be enforced only by the courts").  Harper participated in the enforcement proceeding

through the amicus brief he filed.  And he could have moved to intervene in the

enforcement proceeding to obtain party status, and thus attain an even more meaningful

opportunity to be heard.  He did not do so.

Lastly, the IRS's interests in swift receipt and enforcement of investigative

summonses, as well as its interest in rooting out citizens who do not pay their obligated

share of taxes, outweigh any benefit that might accrue from additional procedural

protections.

Harper acknowledges that the IRS John Doe summons procedure is necessarily ex

parte and it would have been impossible to provide him notice prior to issuing the

original summons.  He argues instead that the IRS should have followed a different

procedure.  Specifically, Harper asserts that the IRS should have first sought a John Doe

summons to Coinbase for account holder names only.  Presuming it obtained his name

from this summons, Harper then expected the IRS to send summonses to the individual

account holders with notice, providing them an opportunity to contest the summons.

Harper believes that the IRS could have utilized this optional procedure to get the

information it wanted but simultaneously preserve his due process rights.  Whether to

utilize Harper's proposed procedure is discretionary for the IRS, and "a benefit is not a

protected entitlement if government officials may grant or deny it in their discretion."

Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005).  Due process therefore does

not compel the IRS to undertake the purely optional procedure of Harper's choice.

### C.    Statutory claim

In Count 3, Harper seeks a declaratory judgment that the IRS violated 26 U.S.C. §

7609(f) in obtaining his account information from Coinbase and an injunction requiring

the IRS to expunge his records.  The IRS lodges several grounds for dismissal.  First, it

argues that Harper lacks standing to bring a claim for violation of § 7609(f) because the

statute contains no private right to sue.  Second, it contends that even if Harper had

standing, a different court has already determined that the IRS satisfied the statute in

obtaining the Coinbase records and that determination is not subject to collateral attack.

Third, it asserts that even if the prior orders were subject to a later collateral challenge,

the IRS fully met its obligations under the statute.  Harper contests each argument and

further asserts that he has standing to challenge the IRS's actions under the

Administrative Procedure Act.[27]  The court agrees with the IRS.

---

[27] Harper's counsel argued in passing at oral argument that because the IRS did not initially
move to dismiss his statutory claim under Rule 12(b)(6), that portion of its current motion is
foreclosed by Rule 12(g).  Harper's counsel later seemed to concede that the First Circuit Court
of Appeals' opinion and remand order allows this court to consider any Rule 12(b)(6) arguments

1.      **Standing**

Harper concedes that the text of § 7609(f) confers no private right on a taxpayer to sue the IRS for damages and injunctive relief arising out of an alleged violation of the statute.  He instead contends that because he is within the "zone of interests" that the statute is intended to protect, he has an implicit right to sue under § 7609(f).  He also argues that the APA allows him to challenge the IRS's alleged compliance with § 7609(f).  Neither argument persuades the court.

**Implied right of action**.  Harper cites Vander Luitgaren v. Sun Life Assur. Co. of Canada, 765 F.3d 59 (1st Cir. 2014) and Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014) as supporting his "zone of interests" theory of statutory standing.  The statutes at issue in those cases, however, contained express authorization for some person or group of persons to sue.  See, e.g., Vander Luitgaren, 765 F.3d at 62 (The statutory standing inquiry "turns on whether the appellant "falls within the class of plaintiffs whom Congress has authorized to sue under.") (emphasis added); Lexmark Int'l, 572 U.S. at 127 ("Whether a plaintiff comes within [a statute's] 'zone of interests' is an issue that requires [courts] to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim.") (emphasis added).  The question in those cases was whether

---

on remand, regardless of whether the IRS raised them initially.  To be clear, the Court of Appeals' mandate to this court is to "consider, in the first instance, whether [Harper] has stated a claim on which relief can be granted."  Harper, 46 F.4th at 9.  That includes consideration of the IRS's arguments for dismissal of Harper's statutory claim.

those groups included the plaintiffs.  Section 7609(f) contains no express private right of action, so those cases are therefore inapposite to Harper's theory of statutory standing.

Harper nonetheless seeks to expand the concept of statutory standing to confer a private right of action on anyone the statute is arguably designed to protect, even when (as here) the statute is devoid of a legislatively conferred cause of action.  Neither Lexmark nor Vander Luitgaren compel this result.  Harper has not cited, and the court's research has not uncovered, any decision where a court allowed a taxpayer to bring a separate, later claim (in a different court) for violation of § 7609(f) after the reviewing court had already allowed, issued, and enforced the summons.

Harper also does not cite cases or develop arguments under the more conventional implied right of action rubric.  Under that doctrine, courts have "held that '[t]he question whether Congress . . . intended to create a private right of action [is] definitively answered in the negative' where [as here] a 'statute by its terms grants no private rights to any identifiable class.'"  Gonzaga Univ. v. Doe, 536 U.S. 273, 283-84 (2002) (quoting Touche Ross & Co. v. Redington, 442 U.S. 560, 576 (1979)).  "[F]or a statute to create such private rights, its text must be 'phrased in terms of the persons benefitted.'"  Id. at 284 (quoting Cannon v. University of Chicago, 441 U.S. 677, 692, n.13 (1979)).

Congress phrased § 7609(f) not in terms of the persons benefitted, but with an eye towards proper enforcement by the IRS.  Section 7609(f) is thus "regulatory in nature — and private rights of action should rarely be implied where a statute's core function is to furnish directives to a federal agency."  Bonano v. E. Caribbean Airline Corp., 365 F.3d 81, 85 (1st Cir. 2004).  And "even where a statute is phrased in such explicit rights-

creating terms, a plaintiff suing under an implied right of action still must show that the statute manifests an intent 'to create not just a private <u>right</u> but also a private <u>remedy</u>.'" Id. (quoting Alexander v. Sandoval, 532 U.S. 275, 286 (2001)) (emphases in original). Section 7609(f) creates neither a right nor a remedy for a taxpayer.

Harper is correct that courts have recognized that "Congress passed section 7609(f) specifically to protect the civil rights, including the privacy rights, of taxpayers subjected to the IRS's aggressive use of third-party summonses." Gertner, 65 F.3d at 971. But the mechanism for protecting those taxpayer rights is not a right to sue or a separate remedy, but the "requirement of judicial preapproval." Id. at 972. Not only is judicial preapproval an "important component of the statutory scheme," it "permits the district court to act as a surrogate for the unnamed taxpayer and to 'exert[] a restraining influence on the IRS.'" Id. (quoting Tiffany, 469 U.S. at 321). "What § 7609(f) does is to provide some guarantee that the information that the IRS seeks through a summons is relevant to a legitimate investigation, albeit that of an unknown taxpayer." Tiffany, 469 U.S. at 321. What it does not do is impliedly afford taxpayers the right to sue the IRS for allegedly violating the statute after a different court has already found otherwise. Harper's complaint thus fails to state a claim for violation of § 7609(f) because the statute provides him no private right to sue.

APA. Harper also argues that he can challenge the IRS's compliance with the statute under the APA because the IRS's act of pursuing the summons is a "final agency action." 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial

review" under the APA).  The IRS responds that Harper is not challenging agency action, but rather the district court's decisions in the Coinbase summons matters.  It further argues that the Coinbase summons proceedings were an "adequate remedy in court," precluding review under the APA.  5 U.S.C. § 704.  And it contends that review is prohibited under the APA because § 7609(f) "impliedly forbids the relief which is sought."  5 U.S.C. § 702(2).  The IRS's arguments have superficial appeal, but because the court assumes, without deciding, that Harper has standing to challenge the IRS's compliance with § 7609(f) in this lawsuit (and, as discussed below, finds for the IRS on the merits), it need not decide the APA question.[28]

### 2.      Collateral challenge to prior orders

Assuming arguendo that Harper has an implied right of action under § 7609(f) or a right to assert a claim for alleged violations of § 7609(f) under the APA, he has failed to show that prior district court orders issuing and enforcing John Doe summonses are subject to subsequent collateral challenges in a different district court.  Harper asserts that Judge Corley's rulings in the Coinbase summons cases have no preclusive effect on this suit.  He further asserts that he was not required to challenge those rulings in the same court that issued and enforced the summons.

The IRS counters that it is not raising a collateral estoppel argument.  It simply contends, correctly, that unappealed § 7609(f) determinations are not subject to later challenges as a matter of procedure.  See, e.g., United States v. Allee, 888 F.2d 208, 211

---

[28] Harper's complaint does not cite or otherwise rely on the APA.

(1st Cir. 1989) ("When, as in this case, an enforcement order is unappealed from, a contempt proceeding (as well as any subsequent appeal from a finding of contempt), begins with acceptance of the validity of the prior enforcement order.  The earlier order may not be impeached, avoided or attacked in the later proceedings and no relief can be sought against its command.") (emphasis added); Tax Liabilities of: John Does, All Unknown Emps. of Boundary Waters Rest. v. United States, 866 F.2d 1015, 1018 (8th Cir. 1989) ("Applying that holding to the present case, the district court's determination that the summons relates to the investigation of a particular ascertainable group of persons, 26 U.S.C. § 7609(f)(1), was not open to collateral attack[.]"); accord Samuels, Kramer & Co., 712 F.2d at 1346 ("But the three factual determinations that a district court must make under section 7609(f) before issuing its ex parte authorization of a John Doe summons may not be challenged. There is, therefore, no reason why these factual determinations should be subject to de novo review at an enforcement hearing.").[29]

Judgment entered in the Coinbase summons matters, and neither Harper nor any party, intervenor, or amici appealed the court's orders, moved for relief from judgment, or moved to re-open those matters.  As a result, Harper has no additional procedural

---

[29] The one decision cited by Harper in support of his argument that ex parte § 7609(f) determinations are subject to later collateral challenges – United States v. Brigham Young University – is readily distinguishable because there, the Tenth Circuit Court of Appeals merely held that a summons recipient could challenge a § 7609(f) determination in a later enforcement proceeding relating to the same summons.  679 F.2d 1345, 1348 (10th Cir. 1982).  Here, however, Harper seeks to challenge Judge Corley's § 7609(f) determination in an entirely separate proceeding, well after resolution of an enforcement proceeding.  Moreover, the Supreme Court vacated the Tenth Circuit Court of Appeals' decision.  See Brigham Young Univ. v. United States, 459 U.S. 1095 (1983).

avenue to argue that Judge Corley's findings under § 7609(f) and Powell were incorrect. Allee, 888 F.2d at 212 ("Challenges to the issuance of the IRS summons and to the validity of the order enforcing that summons can, and must, be raised by timely appeal from the date of issuance of the enforcement order.").  The IRS's motion to dismiss Count 3 of Harper's complaint is accordingly granted for this reason as well.

### 3.     Merits

Even if Harper had a private right of action to assert a violation of § 7609(f) and this court could review – notwithstanding Judge Corley's prior orders – whether the IRS satisfied the requirements of § 7609(f), the court finds that Harper has failed to state a claim that the IRS violated the statute.  In an action seeking the issuance of a John Doe summons, the IRS must establish that:

> (1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,
> (2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and
> (3) the information sought to be obtained from the examination of the records or testimony (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.

§ 7609(f).  Harper contends that the IRS failed to establish that its summons to Coinbase related to the investigation of an "ascertainable group or class or persons" and that the information sought was "not readily available from other sources[.]" §§ 7609(f)(1), (f)(3).[30]  He also argues that because he has "accurately reported his virtual currency

---

[30] Doc. no. 32 at 8-9.

transactions for all applicable tax years,"[31], the IRS failed to establish that it had a

reasonable basis for believing the group of persons "may fail or may have failed to

comply with any provision of any internal revenue law."  § 7609(f)(2).  None of Harper's

arguments has merit.[32]

    **Ascertainable group of persons**.  Harper asserts that the Coinbase summons fails

to identify an "ascertainable group or class of persons" because "ascertainable group"

means a small, similarly situated group, not a group of the size covered by the subject

summons.  He cites no case law supporting that reading of the statute.  Instead, he relies

only on the statute's legislative history, which purportedly cites smaller groups of persons

such as "corporate shareholders" as examples of an ascertainable group.  The court agrees

with the IRS that the plain and ordinary meaning of "ascertainable" is well understood

from the text of the statute as referring to something that can be determined with

certainty.[33]  Nothing in the language of the statute imposes a size limitation on the class

or group, and reference to the legislative history is therefore unnecessary.  See Stauffer v.

IRS, 939 F.3d 1, 8 (1st Cir. 2019) ("Because the term 'authorized' is unambiguous within

its statutory context, our examination of its meaning stops here, and we need not proceed

to examine § 6511(h)(2)(B)'s legislative history."); see also Greebel v. FTP Software,

---

[31] Doc. no. 3 at ¶ 140

[32] See doc. no. 30-5.  The IRS supported its ex parte petition for leave to serve a John Doe summons on Coinbase with a detailed memorandum of law and a declaration from an IRS Senior Revenue Agent.  Id.

[33] See IRS Reply (doc. no. 34) (quoting Merriam Webster Dictionary, "Ascertain", available at https://www.merriam-webster.com/dictionary/ascertainable).

Inc., 194 F.3d 185, 192 (1st Cir. 1999) ("The words of the statute are the first guide to

any interpretation of the meaning of the statute . . . if the meaning is plain.").

In addition, courts have approved summonses to broad groups of John Does and

found such groups "ascertainable."  See, e.g., In re Tax Liabilities of Does, Case No. 20-

mc-32, 2021 WL 4556392, at *2 (D. Minn. Sept. 3, 2021) (group of taxpayers who used a

company's services over a seven year period); In re Tax Liabilities of Does, No. 1:00-

CV-3919, 2000 WL 34538137, at *1 (S.D. Fla. Oct. 30, 2000) ("American Express and

MasterCard signatories whose charge, debit, or credit cards were issued by or through, or

paid for from funds drawn on, banks in Antigua and Barbuda, the Bahamas, or the

Cayman Islands during 1998 and 1999").[34]  By contrast, no court has limited the meaning

of "ascertainable" to a small, similarly situated group of people, as Harper requests.  The

Coinbase summons, as both originally requested and in its narrowed form, relates to the

investigation of an ascertainable group or class of persons and therefore satisfies

§ 7609(f)(1).

**Reasonable basis**.  Harper argues that the IRS could not satisfy § 7609(f)(2) when

it sought issuance of the Coinbase summons because he allegedly "reported [all of] his

virtual currency transactions for all applicable tax years."[35]  This ignores the fact that the

IRS sought a summons for records of a group of unidentified people that it believed had

violated or would violate the internal revenue laws.  The statute does not require the IRS

---

[34] See also doc. 30-4 at 11-13 (citing cases).

[35] Doc. no. 3 at ¶ 140.

to show that each person in the ascertainable group violated the law.  If it suspects that members of the group "may" have violated the law and the information sought may reasonably suggest that the correct tax liability may not have been reported, § 7609(f)(2) is satisfied.  The IRS's petition and supporting documentation established that taxpayers utilizing Coinbase may have failed to report – or under-reported – income and other information required under the internal revenue laws.  In fact, the IRS alleged that not only did it have suspicion that the John Doe class included taxpayers who were not complying with the law, but it knew that members of the class violated the tax laws in the past, all of which was sufficient to satisfy § 7609(f)(2).[36]

**Availability from other sources**.  Harper lastly argues that the summons fails to satisfy the third statutory requirement regarding the unavailability of the records from other sources.  Under his reading of the statute, John Doe summonses must be limited to taxpayer identities only, so the IRS should have limited the initial John Doe summons to Coinbase to customer identities.  No court has adopted Harper's reading of § 7609(f)(3).  In making this argument, he ignores the text of the statute and again purportedly relies on its legislative history and purpose.  The statutory language – "(3) the information sought to be obtained from the examination of the records or testimony (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources" – flatly contradicts Harper's interpretation as requiring summonses only for identifying taxpayers.  By its plain terms, the statute provides that

---

[36] See doc. no. 30-4 at 13-14.

both the information sought and the subject's identity must not be readily available from other sources.  The court cannot ignore this text and adopt Harper's policy-based construction.

Moreover, the statute does not require the IRS to adopt Harper's two-step approach of first seeking a John Doe summons for taxpayer identifying information only and then later summonsing the taxpayer directly, with notice, for their account information.  That such an entirely optional procedure may be available to the IRS does not suggest that the information obtained from the Coinbase summons was available from other sources.  Harper has failed to state a claim that the IRS did not satisfy the requirements of § 7609(f)(3).

The IRS made the required showing under § 7609(f) and followed the required procedures.  As the First Circuit Court of Appeals has recognized, "under section 7609(f) form is substance."  Gertner, 65 F.3d at 972 (emphasis in original).  The IRS's motion to dismiss Count 3 of Harper's complaint is granted for this additional reason.

## IV.   **Conclusion**

As the Supreme Court recently reaffirmed, "[t]o pursue unpaid taxes and the people who owe them, 'Congress has granted the Service broad latitude to issue summonses.'"  Polselli v. Internal Revenue Serv., No. 21-1599, 2023 WL 3511532, at *2 (U.S. May 18, 2023).  The IRS's actions at issue in this case fall squarely within that broad latitude, and Harper is not entitled to protection or relief beyond the existing Congressionally and judicially imposed "safeguards" and checks on the IRS's powers.

Id. For the reasons set forth above, the defendants' motion to dismiss[37] is GRANTED.

The clerk shall enter judgment accordingly and close the case.

      **SO ORDERED**.

                         Joseph N. Laplante
                         United States District Judge

Dated:  May 26, 2023

cc:    Richard Samp, Esq.
       Jared Joseph Bedrick, Esq.
       Edward J. Murphy, Esq.
       Thomas P. Cole, Esq.
       Ryand D. Galisewski, Esq.

---

[37] Doc. no. 30.